IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SAMUEL RONAN, *et al.*,

        Plaintiffs,

    v.

FRANK LAROSE, *et al.*,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:

Case No. 2:26-cv-343
Chief Judge Sarah D. Morrison
Magistrate Judge S. Courter M. Shimeall

## ORDER

This matter came before the Court for a telephonic discovery conference on March 24, 2026.  All parties appeared and were represented by counsel.  Nonparties the Ohio Republican Party ("ORP") and the Franklin County Republican Party ("FCRP") also appeared and were represented by counsel.  This Order memorializes the conference.

## I.  BACKGROUND

Plaintiff Samuel Ronan was a ballot-qualified candidate for the Ohio Republican Party's May 5, 2026 primary election for Ohio's 15th Congressional District.  (ECF No. 1, PAGEID # 2.)  On February 20, 2026, Republican voter Marc A. Schare filed a protest to Plaintiff Ronan's candidacy to the Franklin County Board of Elections ("BOE").  (*Id.*)  The BOE is a four-member board that, among other things, hears protests to the candidacy of individuals for elections.

Defendant Meredith Freedhoff ("Freedhoff") is a member of the BOE.  (*Id.* at PAGEID # 4.)  Plaintiff Ronan moved to disqualify Defendant Freedhoff from the March 6, 2026 hearing on the protest against him, but Defendant Freedhoff rejected this motion.  (*Id.* at PAGEID # 5.)  Plaintiff Ronan also moved to dismiss the protest against him.  (*Id.*)  At the March 6, 2026 hearing on the protest, the BOE tied 2 to 2 on Plaintiff Ronan's motion with Defendant Freedhoff voting

against.  (*Id.* at PAGEID # 6.)  The vote was then forwarded to Defendant Secretary of State Frank LaRose.  (*Id.*)

On March 10, 2026, Mr. Schare's lawyers told Plaintiff Ronan that ORP was paying the legal fees for Mr. Schare's protest.  (*Id.*)  That same day, Plaintiff Ronan informed Secretary LaRose of ORP's involvement in the protest and moved Secretary LaRose to disqualify Defendant Freedhoff.  (*Id.* at PAGEID # 7.)  Secretary LaRose voted against the motion to deny the protest, resulting in Plaintiff Ronan's removal from the ballot.  (*Id.*)

Thereafter, on March 20, 2026, Plaintiff Ronan brought this election action against the BOE's four members and Secretary LaRose.  The Court issued a Temporary Restraining Order that same day, requiring Defendants to identify Mr. Ronan as a candidate on the primary and setting this matter for a preliminary injunction hearing on April 2, 2026.  (ECF No. 10.)  Discovery is proceeding on an expedited basis, and Plaintiffs requested this conference to compel the depositions and limited document production of Defendant Freedhoff and nonparty ORP Chairman Alex Triantafilou ("Chairman Triantafilou") prior to that hearing.

## II. <u>LEGAL STANDARD</u>

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted).  "It is well established that the scope of discovery is within the sound discretion of the trial court."  *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)).

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1). "*Relevance* is construed very broadly for discovery purposes," but is not unlimited.  *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018) (emphasis in

original) (citing *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). Indeed, "[t]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses." *Doe*, 2018 WL 1373868, at *2 (citations omitted). Information that is "negligibly relevant [or] minimally important in resolving the issues" will not satisfy the standard. *Id.* (citation omitted) (alteration in original).

Despite being construed broadly, "discovery is not without limits", and the Court is "given wide discretion in balancing the needs and rights" of the parties. *Frohn v. Life*, No. 1:19-cv-713, 2020 WL 13832151, at *2 (S.D. Ohio Oct. 14, 2020) (internal citations and quotations omitted). Accordingly, "[w]hile a plaintiff should 'not be denied access to information necessary to establish her claim,' a plaintiff may not be 'permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" *Presidio, Inc. v. People Driven Tech., Inc.*, No. 2:21-CV-5779, 2023 WL 3304964, at *2 (S.D. Ohio May 8, 2023) (citing *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (further citations omitted)); *see also Gallagher v. Anthony*, No. 16-cv-00284, 2016 WL 2997599, at *1 (N.D. Ohio May 24, 2016) ("[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.").

### III. ANALYSIS

Two main discovery issues are before the Court: (1) whether Defendant Freedhoff's deposition is precluded by the "judicial mental process privilege"; and (2) whether nonparty ORP Chairman Triantafilou is required to sit for a deposition. At the discovery conference, nonparty FCRP also briefly challenged document production on behalf of Defendant Freedhoff to the extent Plaintiffs sought documents or other information in her capacity beyond that of a BOE member.

### A. <u>Deposition of Defendant Freedhoff</u>

Counsel for Defendant Freedhoff seeks to bar the deposition of Defendant Freedhoff, arguing that the judicial mental process privilege absolutely protects her from being deposed absent a showing of bad faith or improper behavior.[1]  Plaintiffs' Counsel contended that he does not seek to inquire into Defendant Freedhoff's decision-making process; rather, only objective facts relating to her connections with FCRP, ORP, and the campaign of Plaintiff Ronan's competitor, Mike Carey.

The judicial mental process privilege is "a strong but not absolute bar to discovery about the mental processes of certain decisionmakers in administrative agencies as long as they are performing quasi-judicial functions." *Libertarian Party of Ohio v. Husted*, 33 F. Supp. 3d 914, 920 (S.D. Ohio 2014), *objections overruled*, No. 2:13-CV-953, 2014 WL 12648252 (S.D. Ohio July 24, 2014).  A party seeking to overcome the privilege must make a "strong showing of bad faith or improper behavior." *See id.* (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).  Notably, the privilege itself "does not act as an absolute bar to deposing decisionmakers in an administrative proceeding." *Id.* (citing *Citizens to Preserve Overton Park*, 401 U.S. at 420).  In *Husted*, this Court found that, even where the judicial mental process privilege applies, a deposition may proceed where the questions would not pertain exclusively to the subject of how the protected deponent reached a decision. *Id.* at 924–25.  Put another way, a deponent who claims the judicial mental process privilege may still be questioned on topics outside the protected sphere of her internal deliberations.

---

[1] The Defendants have only clearly invoked the "judicial mental process privilege" as to Defendant Freedhoff.  To the extent that Defendants seek to assert privileges other than the judicial mental process privilege, if any, they have not sufficiently presented them here.

4

Here, the parties do not dispute that Defendant Freedhoff may claim the judicial mental process privilege.  Plaintiffs do not attempt to overcome the privilege by alleging bad faith or misbehavior.  Rather, as noted above, Plaintiffs' Counsel has represented to the Court that he does not intend to inquire into Defendant Freedhoff's mental processes.  Plaintiffs' Counsel represented that he seeks *only* to inquire into topics outside the sphere of Defendant Freedhoff's protected mental processes, specifically, Defendant Freedhoff's connections with the FCRP, Carey's campaign, and ORP.

Defendants argue that (1) Defendant Freedhoff should enjoy absolute immunity from questioning because, unlike the hearing officer in *Husted*, she acted as a final adjudicator in the administrative proceeding; and (2) there are no relevant areas of inquiry that can be separated from Defendant Freedhoff's mental process.  But Defendant Freedhoff's status as a voting member of an administrative board does not immunize her from questioning on topics unrelated to her mental processes on the protest vote.  Purely factual topics that do not probe into a deponent's internal mental processes are not protected by the privilege.  *See Husted*, 33 F. Supp. 3d at 924–25.  And, as discussed above, Plaintiffs' Counsel represented to the Court that he has relevant areas of inquiry for Defendant Freedhoff unrelated to her mental process.

Thus, because the case law establishes that the mental process privilege does not act as an absolute bar, the Court will allow the deposition of Defendant Freedhoff to proceed based on Plaintiffs' Counsel's representations that he will be able to narrowly tailor questions that go beyond Defendant Freedhoff's mental processes.

This deposition is not without its limits in scope, and a few additional points of guidance are in order.

There is not an extensive body of case law in this Circuit defining the contours of the judicial mental process privilege.  Indeed, "[f]ew courts have addressed the mental processes privilege" at all.  *See United States v. Lake Cty. Bd. of Comm'rs*, 233 F.R.D. 523, 527 (N.D. Ind. 2005).  Those that have spoken to it have provided some high-level guidance.  *See generally Husted*, 33 F. Supp. 3d 914; *see also Lake Cty. Bd. of Comm'rs*, 233 F.R.D. at 527.  The Court need not address in depth the mental process privilege law and its contours at this point in the litigation.  It's enough to say for now that the privilege exists, that it is not an absolute bar on sitting for a deposition, and that it hinges on a context-specific inquiry that should be allowed to play out.  Nevertheless, given the above-noted ambiguity in the law, and given the time constraints the Court and the parties are under, the Court emphasizes that its decision is limited to the case at bar.

Moreover, permitting the deposition to proceed does not mean that there is no privilege to be asserted during the deposition, nor does it mean that the Court is taking a definitive position as to the validity of certain lines of questioning.  Instead, if disputes arise as to whether the privilege was properly asserted, the Court will consider the matter in context, and determine whether the privilege was properly invoked.  While that process may prove to be cumbersome, on balance, the Court finds that Plaintiffs should be permitted to make their record about various matters that, they assert, would not fall within the privilege's sphere of protection.

The Court will hold Plaintiffs' Counsel to his representations that he will not ask Defendant Freedhoff questions which intrude into her mental processes.  To that end, much as in *Husted*:

> At the deposition, should [Defendant Freedhoff] be asked questions which intrude into h[er] mental processes, [counsel] may be entitled to invoke the judicial mental processes privilege and direct h[er] not to answer such questions. In light of this ruling, Plaintiffs may reconsider their intent to depose h[er] unless they have process-related questions to ask, or unless they wish to preserve the record with respect to the application of the judicial mental process privilege by making clear,

at a deposition, what questions they want to have answered about the decision-making process. But they are entitled to make that record, and a deposition seems the best way to permit them to do so.

*Husted*, 33 F. Supp. 3d at 925.

Accordingly, Plaintiffs' motion to compel the deposition of Defendant Freedhoff is **GRANTED** and Defendant Freedhoff's motion to quash is **DENIED**. In making this ruling, the Court cautions Plaintiffs' Counsel about the scope of this deposition. Plaintiffs' Counsel is strongly advised that the deposition must be narrow and adhere to the topics of inquiry Plaintiffs' Counsel identified to the Court. The Court further notes that Defendants have offered to stipulate to various facts that would seem to significantly limit the need to seek additional information from Defendant Freedhoff. Additionally, at least some of the information Plaintiffs' Counsel has represented that he seeks from Defendant Freedhoff seems like it could be obtained through Chairman Triantafilou. Plaintiffs' Counsel would be wise to further narrow the deposition in light of Defendants' offered stipulations and the Court's ruling below as to the deposition of Chairman Triantafilou.

**B. Deposition of Nonparty ORP Chairman Alex Triantafilou**

Counsel for nonparty ORP seeks to quash the subpoena issued to Chairman Triantafilou on the grounds that the subpoena is unduly burdensome and runs "directly afoul of the attorney-client privilege." In the alternative they seek a protective order. Counsel for Plaintiffs argues that Chairman Triantafilou's deposition is relevant and necessary to understand the relationship, if any, among ORP, Defendant Freedhoff, and his competitor's campaign, and is not for purposes of seeking privileged information.

Nonparty subpoenas are governed by Rule 45 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 45. Rule 45 permits parties in legal proceedings to command a non-party to attend

a deposition, produce documents, and/or permit inspection of premises. Fed. R. Civ. P. 45(a)(1). In considering relevance, a Rule 45 subpoena is subject to the same general relevancy standard as applied to discovery sought under Federal Rule of Civil Procedure 26(b)(1). *Swisher v. Apex Mktg. Mgmt. Inc.*, No. 2:25-CV-00434, 2025 WL 2450700, at *7 (S.D. Ohio Aug. 26, 2025) (citations omitted). Rule 45 requires that parties issuing subpoenas "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Moreover, "[w]hen a nonparty challenges a subpoena on grounds that the request is over-burdensome, the party seeking the discovery must establish that the information sought is relevant." *Ohio Dep't of Ins. v. RPM Mortg., Inc.*, No. CV 2:20-MC-43, 2020 WL 6778212, at *1 (S.D. Ohio Nov. 18, 2020) (citations omitted).

But "[w]hat constitutes an 'undue burden' is assessed on a case-by-case basis." *Swisher*, 2025 WL 2450700, at *6 (citations omitted). "Factors considered include 'relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, and the particularity with which the documents are described and the burden imposed.'" *In re Risner*, 338 F.R.D. 380, 382 (S.D. Ohio 2021) (citing *In re: Mod. Plastics Corp.*, 890 F.3d 244, 250–51 (6th Cir. 2018)). "Ultimately, '[i]f the subpoenaed nonparty asserts that disclosure would subject it to undue burden under Rule 45(d)(3)(A), it must show that disclosure will cause it a clearly defined and serious injury.'" *Meyer v. Bank of Am., N.A.*, No. 2:18-CV-218, 2018 WL 6436268, at *4 (S.D. Ohio Dec. 7, 2018) (citation omitted).

Rule 45 also requires that a court quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). But blanket assertions of privilege are generally insufficient. *See Meyer*, 2018 WL 6436268, at *3.

Finally, in this district, "protective orders totally prohibiting a deposition should be rarely granted absent extraordinary circumstances." *In re Peyton*, No. 1:24-MC-0010, 2024 WL 4581247, at *2 (S.D. Ohio Oct. 25, 2024) (quoting *Libertarian Party of Ohio v. Husted*, 302 F.R.D. 472, 479 (S.D. Ohio 2014) (further citations omitted)).

Upon consideration of the parties' arguments, the Court find that this situation does not present the sort of extraordinary circumstances that would be sufficient to quash the subpoena. First, at the conference, Plaintiffs explained that the testimony of Chairman Triantafilou could provide relevant information to support their constitutional claims. Moreover, the Court finds nonparty ORP's general assertions that compliance with the subpoena will impose an undue burden, due to the time and expense, insufficient to demonstrate a clearly defined and serious risk of injury. *See, e.g.*, *Swisher*, 2025 WL 2450700, at *6–7 (S.D. Ohio Aug. 26, 2025) (declining to quash a nonparty subpoena because the parties' assertions that the subpoenas would "by their nature, require overly burdensome production" were too conclusory). Indeed, nonparty ORP did not identify specific harm beyond the potential of attorney-client privilege issues.

Which leads the Court to nonparty's second argument. After hearing the parties' positions, the Court is not convinced that the only avenues of questioning in this matter would require disclosure of privileged information. The attorney-client privilege protects communications, not the underlying facts. *See, e.g.*, *League of United Latin Am. Citizens v. Abbott,* 342 F.R.D. 227, 232 (W.D. Tex. 2022) (finding a political party chairperson wrongfully asserted privilege over exclusively factual questions, process-related inquiry, and political strategy, and citing *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)). Here, Plaintiffs' Counsel assured the Court that he would not be asking questions regarding communications between the protestor and his counsel or about litigation strategy of either ORP or the protestor—and the Court will hold him to that.

9

Based on Plaintiffs' Counsel's assertions, the Court does not find a protective order is necessary at this juncture either.

On balance, after consideration of Plaintiffs' right to access relevant information in contrast to nonparty ORP's risk of being unduly burdened, the Court finds that the deposition of ORP Chairman Triantafilou is permitted to go forward. Accordingly, nonparty ORP's motion to quash is **DENIED**, and Plaintiffs' motion to compel is **GRANTED**.

### C. Challenged Document Production

At the hearing, nonparty FCRP briefly challenged document production on behalf of Defendant Freedhoff to the extent Plaintiffs sought documents or other information in her capacity beyond that of a BOE member. Nonparty FCRP identified no privilege that would preclude Plaintiffs from seeking such documents from Defendant Freedhoff and the Court is aware of none. To the extent any privilege concerns arise with respect to specific documents, nonparty FCRP may raise those challenges when appropriate. Put differently, if Defendant Freedhoff has relevant, non-privileged information regarding her knowledge of the protestor's sponsorship by ORP, or other information relevant to Plaintiffs' claims, that information is discoverable regardless of where that information is located (i.e., on her BOE email or FCRP email). That being said, the general scope of this inquiry must be narrow, and the information sought must relate to Defendant Freedhoff's role as a BOE member.

Finally, the Court remains cognizant of the expedited timelines in this action and cautions the parties to make a good faith effort to narrowly tailor document production to the topics at issue.

Accordingly, nonparty FCRP's motion to quash is **DENIED**, and Plaintiffs' motion to compel is **GRANTED**.

## IV. CONCLUSION

For the reasons stated herein, Plaintiffs' motions to compel the deposition testimony and document production of Defendant Freedhoff and nonparty ORP Chairman Triantafilou are **GRANTED**, and Defendants' and non-parties' motions to quash are **DENIED**.

Should the questioning start to delve into potentially privileged information, which the Court trusts it will not, the appropriate remedy is to object to the line of questioning.  To that end, the Court instructs the parties to work out any disputes that arise during the deposition amongst themselves in good faith; however, given the expedited nature of the discovery timeline and pending preliminary injunction hearing, the Court will make itself available to referee should the parties truly reach an impasse.  But the parties are instructed to only call Chambers as a last resort.

**IT IS SO ORDERED.**

_/s/ S. Courter M. Shimeall_
**S. COURTER M. SHIMEALL**
**UNITED STATES MAGISTRATE JUDGE**

11