## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| SAMUEL RONAN and ANA CORDERO, : | |
| : | **Case No. 2:26-cv-343** |
| **Plaintiffs,** : | |
| : | |
| **v.** : | **Chief Judge Sarah D. Morrison** |
| : | |
| FRANK LAROSE, in his official capacity : | |
| as Secretary of State or Ohio, *et al.*, : | **Mag. Judge S. Courter M. Shimeall** |
| : | |
| **Defendants.** : | |

---

### DEFENDANT FRANK LAROSE'S MOTION TO DISMISS

---

Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Frank LaRose

respectfully moves this Court to dismiss the claims against him. A more detailed explanation of

the reasons for this Motion can be found in the attached Memorandum in Support.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069792)*
*Counsel of Record*
MARK TUCKER (0036855)
STEPHEN P. TABATOWSKI (0099175)
GREGORY A. RUSTICO (0104103)
TYLER W. BLAIR (0095595)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Julie.Pfeiffer@OhioAGO.gov
Mark.Tucker@OhioAGO.gov
Stephen.Tabatowski@OhioAGO.gov

Gregory.Rustico@OhioAGO.gov
Tyler.Blair@OhioAGO.gov

*Counsel for Defendant Frank LaRose*

**MEMORANDUM IN SUPPORT**

**TABLE OF CONTENTS**

Table of Contents ................................................................................................................. iii

Table of Authorities ............................................................................................................. vi

Background ............................................................................................................................. 2

Law and Argument ............................................................................................................... 4

A.   Motions under Rule 12(b)(6) and facial attacks under Rule 12(b)(1) employ
the same legal standard. ........................................................................................... 4

B.   Because Plaintiffs' claims against Secretary LaRose are premised on the
construction of state statutes, the Court should abstain under *Pullman*. ............................ 4

Summary: *Pullman* abstention is warranted because Plaintiffs' federal constitutional claims against Secretary LaRose turn on unsettled questions of Ohio election law. Under *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941), federal courts should avoid unnecessary constitutional rulings when state-law clarification could resolve or substantially alter the dispute. Here, Ohio law on good-faith candidacy declarations is unsettled and best resolved by Ohio courts. *See Morrison v. Colley*, 467 F.3d 503 (6th Cir. 2006); *Jolivette v. Husted*, 694 F.3d 760 (6th Cir. 2012); *State ex rel. Morris v. Stark Cnty. Bd. of Elections*, 143 Ohio St. 3d 507 (2015). This Court's recent application of *Pullman* in *Stein v. LaRose*, No. 2:24-cv-04042 (S.D. Ohio Oct. 23, 2024), is particularly on point. A state-court determination of whether Ohio law requires good faith could eliminate the need for a constitutional ruling altogether: (1) if there is a good-faith requirement, the dispositive question becomes whether Ronan demonstrated good faith, which is itself a state-law question; (2) if there is no good-faith requirement, then Ronan's disqualification was a state-law violation, and there is no need to reach the constitutional question. This is precisely the situation *Pullman* is intended to address.

C.   Regardless, this Court lacks jurisdiction to enjoin Secretary LaRose from
violating state statutes regulating elections ...................................................................... 11

Summary: Under *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984), federal courts lack jurisdiction to grant injunctive or declaratory relief against state officials for alleged violations of state law. *See also Ladd v. Marchbanks*, 971 F.3d 574 (6th Cir. 2020); *Otte v. Kasich* (*In re Ohio Execution Protocol Litig.*), 709 F. App'x 779, 782 (6th Cir. 2017). Here, as in *Stein v. LaRose*,

No. 2:24-cv-04042 (S.D. Ohio Oct. 25, 2024), Plaintiffs' asserted federal claims are merely "disguised state-law claims," because their core argument is that the Secretary imposed a good-faith requirement not required by Ohio law. Thus, any challenge to the Secretary's application of Ohio law must be pursued, if at all, through mandamus in the Supreme Court of Ohio. *Pennhurst* strips this Court of jurisdiction over these state-law claims.

D. Count I fails to state a claim because Ohio's declaration of candidacy requirements satisfy *Anderson-Burdick* on their face and as applied to Plaintiffs. ............................................................................................................... 13

Summary: Plaintiffs' ballot-access challenge fails under the *Anderson-Burdick* framework. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992). Ohio's declaration-of-candidacy requirements, found in Ohio Revised Code § 3513.07, impose only minimal burdens, consistent with cases such as *Morrison v. Colley*, 467 F.3d 503 (6th Cir. 2006), which upheld similar disaffiliation requirements as reasonable, nondiscriminatory regulations. Because political parties possess a First Amendment right to exclude non-members from their candidate-selection processes, *California Democratic Party v. Jones*, 530 U.S. 567 (2000), and because primaries in Ohio select actual party nominees, *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008), the State's interests in party integrity, ballot clarity, and orderly elections outweigh any alleged burden—interests repeatedly recognized in *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997); *Mays v. LaRose*, 951 F.3d 775 (6th Cir. 2020); and *Jolivette v. Husted*, 694 F.3d 760 (6th Cir. 2012). Here, any burden on Plaintiffs caused by the requirement to affiliate in good faith was slight. Plaintiffs' as-applied theory also fails because it turns on unresolved issues of state law warranting abstention. For these reasons, this Court should dismiss Count I.

1. Section 3513.07 is not facially unconstitutional. ......................................... 13

2. As applied to Plaintiffs, Ohio's declaration of candidacy requirements satisfy *Anderson-Burdick*. ........................................................................ 20

    a. Plaintiffs' as-applied challenge alleges unresolved questions of state law this Court should abstain from deciding. ......................................... 20

    b. Plaintiffs' as-applied challenge fails under *Anderson-Burdick*. ............................. 21

E. Count II fails to state a claim because Plaintiffs do not have a right to sue for a violation of the Elections Clause. Regardless, § 3513.07 is within the State's authority to regulate the "Manner" of primary elections. ...................................... 22

Summary: Count II fails as a matter of law because the Elections Clause, U.S. Const. art. I, § 4, creates no private right of action and confers no individual "rights, privileges, or immunities" enforceable under 42 U.S.C. § 1983. *See Cannon v.*

*University of Chicago*, 441 U.S. 677 (1979); *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320 (2015); *Lance v. Coffman*, 549 U.S. 437 (2007); *Lindsey v. Whitmer*, 124 F.4th 408 (6th Cir. 2020). Regardless, Plaintiffs failed to plead a violation of the Elections Clause. Because § 3513.07's good-faith-declaration requirement sorts candidates onto proper ballots, prevents fraud and confusion, and protects electoral integrity, it fits within the State's constitutional authority to regulate the "Manner" of elections. *See Smiley v. Holm*, 285 U.S. 355 (1932); *United States Term Limits v. Thornton*, 514 U.S. 779 (1995); *Cook v. Gralike*, 531 U.S. 510, 523–24 (2001); *Burdick v. Takushi*, 504 U.S. 428 (1992); *Morrison v. Colley*, 467 F.3d 503 (6th Cir. 2006); *Jolivette v. Husted*, 694 F.3d 760 (6th Cir. 2012). Thus, this Court should dismiss Count II.

1. The Elections Clause provides neither a private right of action nor any "rights, privileges, or immunities" that an individual can vindicate through § 1983. ..................................................................................... 22

2. Regardless, Plaintiffs failed to plead a violation of the Elections Clause: § 3513.07 regulates the "Manner" of elections. ........................................... 23

Conclusion ........................................................................................................ 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Celebrezze,*
460 U.S. 780 (1983)..................................................................................................13, 21

*Armstrong v. Exceptional Child Ctr., Inc.,*
575 U.S. 320 (2015)..........................................................................................................22

*Bognet v. Sec'y Pa.,*
980 F.3d 336 (3d Cir. 2020..............................................................................................22

*Bullock v. Carter,*
405 U.S. 134 (1972)..........................................................................................................25

*Burdick v. Takushi,*
504 U.S. 428 (1992)................................................................................................. *passim*

*California Democratic Party v. Jones,*
530 U.S. 567 (2000)....................................................................................................15, 16

*Cannon v. Univ. of Chicago,*
441 U.S. 677 (1979)..........................................................................................................22

*Cartwright v. Garner,*
751 F.3d 752 (6th Cir. 2014) .............................................................................................4

*Citizens United v. Fed. Election Comm'n,*
558 U.S. 310 (2010)..........................................................................................................21

*City of Detroit v. Sec'y of Commerce,*
4 F.3d 1367 (6th Cir. 1993) ..............................................................................................22

*Cook v. Gralike,*
531 U.S. 510 (2001)..............................................................................................23, 24, 25

*Corrigan v. City of Newaygo,*
55 F.3d 1211 (6th Cir. 1995) ............................................................................................16

*Daunt v. Benson,*
956 F.3d 396 (6th Cir.2020) .............................................................................................17

*Eu v. San Francisco County Democratic Cent. Comm.,*
489 U.S. 214 (1989)..........................................................................................................15

*State ex rel. Ferrara v. Trumbull Cnty. Bd. of Elections*,
    166 Ohio St. 3d 64 (2021)...........................................................................................8

*Glob. Tech., Inc. v. Yubei (Xinxiang) Power Steering Sys. Co.*,
    807 F.3d 806 (6th Cir. 2015) ....................................................................................4

*GTE North, Inc. v. Strand*,
    209 F.3d 909 (6th Cir. 2000) ....................................................................................5

*State ex rel. Guest v. Husted*,
    153 Ohio St. 3d 630 (2018)........................................................................................9

*Harris Cnty. Comm'rs Ct. v Moore*,
    420 U.S. 77 (1975)...........................................................................................4, 5, 11

*Hawaii Housing Auth. v. Midkiff*,
    467 U.S. 229 (1984)..................................................................................................4

*Hunter v. Hamilton County Bd. of Elections*,
    635 F.3d 219 (6th Cir. 2011) ....................................................................................6

*Jolivette v. Husted*,
    694 F.3d 760 (6th Cir. 2012) ............................................................................. *passim*

*Jolivette v. Husted*,
    886 F. Supp. 2d 820 (S.D. Ohio 2012) ...................................................................19

*Jones v. Coleman*,
    848 F.3d 744 (6th Cir. 2017) ................................................................................5, 17

*Keweenaw Bay Indian Cmty. v. Rising*,
    477 F.3d 881 (6th Cir. 2007) ..................................................................................22

*Kishore v. Whitmer*,
    972 F.3d 745 (6th Cir. 2020) ..................................................................................13

*Kowall v. Benson*,
    18 F.4th 542 (6th Cir. 2021) .......................................................................13, 16, 19

*Ladd v. Marchbanks*,
    971 F.3d 574 (6th Cir. 2020) ..................................................................................12

*Lance v. Coffman*,
    549 U.S. 437 (2007) (per curiam)............................................................................22

*Libertarian Party of Ohio v. Blackwell*,
    462 F.3d 579 (6th Cir. 2006) ..................................................................................18

*Lichtenstein v. Hargett,*
    83 F.4th 575 (6th Cir. 2023) ...................................................................................13

*Lindsey v. Whitmer,*
    124 F.4th 408 (6th Cir. 2020) ..................................................................................22

*State ex rel. Livingston v. Miami Cnty. Bd. of Elections,*
    196 Ohio App. 3d 263 (Ohio Ct. App. 2011) ..........................................................10

*Mays v. LaRose,*
    951 F.3d 775 (6th Cir. 2020) ..................................................................................19

*Mays v. LaRose,*
    951 F.3d at 792–93 .................................................................................................21

*Moore v. Hosemann,*
    591 F.3d 741 (5th Cir. 2009) ....................................................................................6

*State ex rel. Morris v. Stark Cnty. Bd. of Elections,*
    143 Ohio St.3d 507 (2015)........................................................................................9

*Morrison v. Colley,*
    467 F.3d 503 (6th Cir. 2006) ......................................................................... *passim*

*N.Y. State Bd. of Elections v. Lopez Torres,*
    552 U.S. 196 (2008)................................................................................................15

*Norman v. Reed,*
    502 U.S. 279 (1992)................................................................................................25

*Ohio Council 8 Am. Fed'n of State Cnty. & Mun. Emps. v. Husted,*
    814 F.3d 329 (6th Cir. 2016) ..................................................................................19

*Otte v. Kasich (In re Ohio Execution Protocol Litig.),*
    709 F. App'x 779 (6th Cir. 2017) ...........................................................................12

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U. S. 89 (1984).................................................................................1, 11, 12, 13

*Project Vote v. Madison County Bd. of Elections,*
    No. 1:08-cv-2266, 2008 U.S. Dist. LEXIS 74016 (N.D. Ohio Sep. 29, 2008).........6

*Railroad Comm'n v. Pullman Co.,*
    312 U.S. 496 (1941)...................................................................................... *passim*

*Rosario v. Rockefeller,*
    410 U.S. 752 (1973)................................................................................................24

*Smiley v. Holm,*
    285 U.S. 355 (1932)..................................................................................................23, 24

*Snowden v. Hughes,*
    321 U.S. 1 (1944)..........................................................................................................16

*State ex rel. Trumbull Cnty. Bd. of Elections,*
    157 Ohio St.3d 280, 284 (2019).....................................................................................9

*Stein v. LaRose,*
    No. 2:24-cv-04042 (S.D. Ohio Oct. 23, 2024)........................................... *passim*

*Stein v. LaRose,*
    No. 2:24-cv-04042, slip op. (S.D. Ohio Oct. 25, 2024)...................................11, 12

*Stein v. LaRose,*
    No. 24-3923, 2024 U.S. App. LEXIS 27810 (6th Cir. Nov. 1, 2024) .......................7

*State ex rel. Stevens v. Fairfield Cnty. Bd. of Elections,*
    152 Ohio St.3d 584 (2018)............................................................................................7

*Thompson v. DeWine,*
    959 F.3d 804 (6th Cir. 2020) (per curiam)...................................................................14

*Timmons v. Twin Cities Area New Party,*
    520 U.S. 351 (1997).....................................................................................................19

*Tyler v. Collins,*
    709 F.2d 1106 (6th Cir. 1983) ................................................................................4, 11

*United States Term Limits v. Thornton,*
    514 U.S. 779 (1995).....................................................................................................23

*Washington State Grange v. Washington State Republican Party,*
    552 U.S. 442 (2008)...............................................................................................17, 20

*Wise v. Circosta,*
    978 F.3d 93 (4th Cir. 2020) ..........................................................................................6

**Statutes**

Ohio Rev. Code § 3501.04.................................................................................................8

Ohio Rev. Code § 3501.38(J) ............................................................................................8

Ohio Rev. Code § 3513.01(A) .........................................................................................17

Ohio Rev. Code § 3513.04..................................................................................................14

Ohio Rev. Code § 3501.05....................................................................................................8

Ohio Rev. Code § 3513.07.............................................................................................10, 14

Ohio Rev. Code § 3513.13.............................................................................................19, 25

Ohio Rev. Code § 3513.191............................................................................................7, 11

Ohio Rev. Code § 3513.261..............................................................................................10

## Other Authorities

U.S. Const. Art. I, § 4 .......................................................................................................22

**INTRODUCTION**

The claims against Secretary LaRose rest on a flawed premise: Plaintiffs seek federal adjudication of claims that turn on unresolved questions of Ohio law. Although Plaintiffs style their allegations as federal constitutional violations, their claims depend on their assertion that Ohio law imposes no good-faith requirement on a candidate's declaration of party affiliation. That is a disputed—and unsettled—state-law question. Under *Pullman*, federal courts must refrain from resolving constitutional claims when doing so requires first interpreting unclear state statutes. Much like *Stein v. LaRose*, this case fits squarely within *Pullman*: a state-court determination about the scope of Ohio Revised Code § 3513.07 would either eliminate the need for any federal constitutional ruling or substantially modify the issues presented. This Court should stay its hand.

Even if the Court were to proceed past *Pullman*, the remaining defects in Plaintiffs' case are equally fatal. Under *Pennhurst*, this Court lacks jurisdiction to issue injunctive or declaratory relief against a state official for purported violations of state law, yet Plaintiffs' claims are, at their core, requests to remedy perceived state-law errors. Regardless, Plaintiffs' claims fail on the merits. As to Count I, Ohio's declaration-of-candidacy requirements satisfy *Anderson-Burdick* because any burden they impose, whether facially or as applied to Plaintiffs, is outweighed by Ohio's interest in preventing voter confusion, deterring electoral gamesmanship, and administering orderly elections. As to Count II, the Elections Clause confers no private right of action or individualized rights, but even if it did, § 3513.07 falls comfortably within the State's authority to regulate the "Manner" of primary elections.

At bottom, Plaintiffs seek federal intervention in a state-law dispute about candidacy requirements. This Court should decline that invitation and dismiss the claims against Secretary LaRose.

**BACKGROUND**

Plaintiff Samuel Ronan filed a declaration of candidacy to appear on the Republican Party primary ballot for the May 5, 2026, election for Ohio's 15th Congressional District.  Compl. ¶ 1, Dkt. 1 at PageID 1–2.  As part of that process, Ronan declared, "I am a member of the Republican Party" and "if elected to said office or position, I will qualify therefor, and that I will support and abide by the principles enunciated by the Republican Party."  Compl. ¶ 2, Dkt. 1 at PageID 2.  Based on Ronan's declaration of candidacy, the Franklin County Board of Elections certified Ronan as a qualified candidate on or about February 17, 2026.  Compl. ¶ 2, Dkt. 1 at PageID 2.

On February 20, 2026, a voter named Marc A. Schare filed a protest of Ronan's candidacy.  Compl. Ex. A, Dkt. 1 at PageID 18–22.  Schare alleged there was clear and convincing evidence that Ronan "is not in fact a Republican."  Comp. Ex. A, Dkt. 1 at PageID 18.  Schare argued Ronan "has a long history of denouncing the Republican party, its election leaders, and fundamental principles."  *Id.*  He alleged Ronan "is simply pretending to be a Republican as a tool to 'get a foot in the door.'"  *Id.*  Schare believed this was "precisely the type of 'opportunistic' maneuvering the primary rules are designed to prevent."  *Id.* (quoting *State ex rel. Bible v. Bd. of Elections of Hamilton Cnty.*, 22 Ohio St. 2d 57, 60 (1970)).  Schare argued Ronan's declaration that he would "support and abide by the principles enunciated by the Republican Party" was "false," and thus he should be disqualified from appearing on the primary ballot.  *Id.*

In support of his protest, Schare quoted statements made by Ronan about his party affiliation and his strategy of "run[ning] Democrats as Republicans."  *Id.* at PageID 19.  Schare argued the state has "legitimate interests in 'avoiding overcrowded ballots' and 'protect[ing] the integrity of its political processes from frivolous or fraudulent candidacies.'"  *Id.* at PageID 21 (quoting *Jolivette v. Husted*, 694 F.3d 760, 769 (6th Cir. 2012)).  Regulating ballot access would

2

"avoid confusion, deception, and even frustration of the democratic process at the general election." *Id.*

The Franklin County Board of Elections held a hearing on the protest on March 6, 2026. Compl. ¶ 6, Dkt. 1 at PageID 2. Ronan testified that his declarations of membership in the Republican Party and intent to abide the principles of the Republican Party were truthful. Compl. ¶ 12, Dkt. 1 at PageID 4.

The Board then voted two-to-two on the protest. Compl. ¶ 22, Dkt. 1 at PageID 6. On March 13, 2026, the issue was referred to Secretary LaRose for a tie-breaking vote under Ohio Rev. Code § 3501.11(X). Compl. ¶ 25, Dkt. 1 at PageID 6. Schare sent a post-hearing letter to the Board, which was forwarded to the Secretary, arguing for Ronan's disqualification. Compl. Ex. B, Dkt. 1 at PageID 24–27. Specifically, Schare objected to Ronan's argument that there is no good faith requirement to show party affiliation. *Id.* at PageID 26 (citing *State ex rel. Guest v. Husted*, 153 Ohio St. 3d 630, 634 (2018); *Jolivette*, 694 F.3d at 770; *Morrison v. Colley*, 467 F.3d 503, 511 (6th Cir. 2006)).

On March 19, 2026, Secretary LaRose broke the tie in favor of the protest and informed the Board that Ronan was no longer a certified candidate for the May 5, 2026, primary election. Compl. ¶ 29, Dkt. 1 at PageID 7.

On March 20, 2026, Ronan and one of his supporters filed this suit against Secretary LaRose and the members of the Franklin County Board of Elections. *See generally* Compl. Dkt. 1. They allege Defendants violated their "speech, associational and voting rights as guaranteed by the First and Fourteenth Amendments" and their "rights under the federal Elections Clause in Article I, § 4." Compl. ¶¶ 48, 52, PageID 11–12. Additionally, Plaintiffs allege Defendant Freedhoff violated his due process rights. Compl. ¶¶ 54–58, Dkt. 1 at PageID 13.

3

## LAW AND ARGUMENT

**A.      Motions under Rule 12(b)(6) and facial attacks under Rule 12(b)(1) employ the same legal standard.**

"A facial attack [under Rule 12(b)(1)] goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citation omitted). "This approach is identical to the approach used by the district court when reviewing a motion invoking Federal Rule of Civil Procedure 12(b)(6)." *Glob. Tech., Inc. v. Yubei (Xinxiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (citation omitted).

**B.      Because Plaintiffs' claims against Secretary LaRose are premised on the construction of state statutes, the Court should abstain under *Pullman*.**

"[W]hen a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state court an opportunity to settle the underlying state-law question, and thus avoid the possibility of unnecessarily deciding a constitutional question." *Harris Cnty. Comm'rs Ct. v Moore*, 420 U.S. 77, 83 (1975) (citing *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941)). In *Pullman*, the Supreme Court held that "[f]ew public interests have a higher claim upon discretion of a federal chancellor than the avoidance of needless friction with state policies." 312 U.S at 500. By abstaining in such cases, "federal courts will avoid [the] unnecessary adjudication of federal questions . . . ." *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 236 (1984) (citing *Pullman*, 312 U.S. at 500).

When determining whether to apply *Pullman* abstention, the Sixth Circuit has set forth two factors: (1) whether an unclear state law exists; and (2) the likelihood that a state court's construction of that law would "obviate the necessity for a decision of the federal constitutional question or substantially modify the constitutional issue." *Tyler v. Collins*, 709 F.2d 1106, 1108 (6th Cir. 1983) (citation omitted). "If the state courts would be likely to construe the statute in a

4

fashion that would avoid the need for a federal constitutional ruling or otherwise significantly modify the federal claim, the argument for abstention is strong." *Harris Cnty. Comm'rs Ct.*, 420 U.S. at 84 (citations omitted); *see also GTE North, Inc. v. Strand*, 209 F.3d 909, 921 (6th Cir. 2000).

Here, Plaintiffs' Complaint purports to assert only federal constitutional claims against Secretary LaRose: (1) violations of the First and Fourteenth Amendments; and (2) a violation of the Elections Clause. *See* Compl. ¶¶ 48, 52, Dkt. 1 at PageID 11–12.  But those claims require the resolution of issues of state law; they are necessarily bound up with the construction and application of state statutes governing the requirements for a candidate's declaration of candidacy. These unanswered state law questions should be resolved by Ohio courts.

Indeed, Plaintiffs acknowledge that the resolution of their federal claims depend upon "Ohio Law and Defendants' Interpretation of Ohio Law."  Compl. at 8, Dkt. 1 at PageID 8.  They allege that, "notwithstanding this Court's conclusion that Ohio law does not impose a subjective 'good faith' requirement on candidates who seek to change political parties to run in primaries," Defendants "interpreted § 3513.07 to require" one and found that Plaintiff Ronan did not meet that standard.  Compl. ¶ 38, Dkt. 1 at PageID 9.

"[T]he primary scenario for a district court's application of *Pullman* abstention is one in which the state-law question is an unsettled issue best decided by state courts." *Jones v. Coleman,* 848 F.3d 744, 750 (6th Cir. 2017) (citing *Moore*, 420 U.S. at 83–84).  Although Plaintiffs assert that state law is clear—that there is no good faith requirement in a candidate's declaration of party affiliation—Ohio law is far from settled on that issue.  And "when the state-law questions have concerned matters particularly within the province of the local courts, [the United States Supreme Court has] inclined towards abstention." *Moore*, 420 U.S. at 83–84.  The Sixth Circuit has held

5

that "it is within the province of the Ohio Supreme Court" to determine whether state officials have complied with state election law. *Hunter v. Hamilton County Bd. of Elections*, 635 F.3d 219, 239 (6th Cir. 2011) (citing *State ex rel. Painter v. Brunner*, 128 Ohio St. 3d 17, 21 (2011)); *see also Wise v. Circosta*, 978 F.3d 93, 101–02 (4th Cir. 2020) (finding *Pullman* abstention was appropriate where Plaintiffs asked "federal courts to determine whether the [State Elections] Board acted within the scope of its authority delegated by the Legislature"); *Moore v. Hosemann,* 591 F.3d 741, 745–46 (5th Cir. 2009) (finding district court should consider *Pullman* abstention in challenge to secretary of state's decision to leave the name of a presidential candidate off the state's ballot); *Project Vote v. Madison County Bd. of Elections*, No. 1:08-cv-2266-JG, 2008 U.S. Dist. LEXIS 74016, at *16 (N.D. Ohio Sep. 29, 2008) (finding *Pullman* abstention was appropriate because "the interpretation of Ohio election law is an area of sensitive social policy that, if possible, is best left for the Ohio Supreme Court to decide"). Accordingly, *Pullman* abstention is appropriate in this case.

Indeed, this Court recently considered *Pullman* abstention in a case involving candidates for President and Vice President of the United States. In *Stein v. LaRose*, No. 2:24-cv-04042 (S.D. Ohio Oct. 23, 2024) (Watson, J.), *vacated as moot*, 2024 U.S. App. LEXIS 30484 (6th Cir. Dec. 23, 2024), there was a dispute about whether the plaintiffs had withdrawn their candidacy. *Id.* slip op. at 1–2, attached as Ex. A. The plaintiffs asserted that Secretary LaRose's decision not to count votes for their presidential/vice presidential ticket violated the plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution. *Id.* at 1. This Court, however, concluded that the "case warrant[ed] *Pullman* abstention" because both prongs were met. *Id.* at 1. First, the question of whether a plaintiff had "effected a 'withdrawal' of her candidacy" was "unsettled under Ohio law." *Id.* at 2 (citing Ohio Rev. Code § 3513.30(D)). Second, resolving

whether the withdrawal was effective under Ohio law would "substantially alter the federal constitutional question[s]" at issue. *Id.* "If [the plaintiff] 'withdrew' her candidacy, then, under the *Anderson-Burdick* framework, Ohio's regulatory interests in not counting [the plaintiffs'] votes would be significantly greater than if [the plaintiff] did not 'withdraw' her candidacy." *Id.*

Stein sought emergency injunctive relief from the Sixth Circuit, which denied her request. She "ha[d] not shown that she is likely to succeed on the merits of her appeal" because "the district court was likely right that her suit should be adjudicated in state court, not federal." *Stein v. LaRose*, No. 24-3923, 2024 U.S. App. LEXIS 27810, at *4 (6th Cir. Nov. 1, 2024) (citing *Jones*, 848 F.3d at 750).

As in *Stein*, Plaintiffs' federal claims in this case would require the Court to resolve "unsettled question[s] of state law," namely, whether Ohio's statutes governing an individual's party identification and that individual's declaration of candidacy, include a requirement of good faith. While Plaintiffs correctly point out that "[p]arty affiliation in Ohio is purely a matter of self-identification, and that self-identification is subject to change," *State ex rel. Stevens v. Fairfield Cnty. Bd. of Elections*, 152 Ohio St.3d 584, 589 (2018) (citations omitted), no Ohio court has ever held that an individual may untruthfully declare, under penalty of election falsification, party affiliation in bad faith. Indeed, Ohio statutes suggest otherwise.

Ohio Revised Code § 3513.191(B) allows persons who do not hold an elective office to "be candidates for nomination of any political party at a party primary." Section 3513.07 sets the form for a candidate's declaration of candidacy and petition and seemingly imposes a good faith requirement by requiring party affiliation to be declared "under penalty of election falsification." That statute requires the candidate to indicate the office he seeks and to "declare under penalty of election falsification," that he is "a member of the _____ Party," and that he will, if elected,

"support and abide by the principles enunciated by the _____ Party." *Id.* The candidate's signature is then followed by this statement: "WHOEVER COMMITS ELECTION FALSIFICATION IS GUILTY OF A FELONY OF THE FIFTH DEGREE," which must be printed in "boldface capital letters." Ohio Rev. Code § 3501.38(J). Another provision, § 3513.19(B), which deals with challenges to a person's right to vote in a party primary based upon a lack of party affiliation, similarly requires the person to declare their affiliation "under penalty of election falsification."

Plaintiffs boldly assert that Ohio law, and specifically § 3513.07, imposes no requirement of "good faith" for a proposed candidate's statement of party affiliation in their declaration as a candidate of that party. Compl. ¶¶ 34, 38, Dkt. 1 at PageID 8–9. Plaintiffs further assert that election officials "cannot pass [on whether] . . . the candidate . . . did not act in good faith." Compl. ¶ 37, Dkt. 1 at PageID 9. Although Plaintiffs assert that this a settled matter of state law, no court—state or federal—has held that § 3513.07 permits a candidate to declare *in bad faith* that he or she is a member of a particular political party. And, in breaking the Board of Elections' tie vote, Secretary LaRose, the "the chief election officer of the state," Ohio Rev. Code § 3501.04,[1] determined that a candidate may not affiliate with a political party in bad faith. Compl. ¶¶ 38, 48, 52, Dkt. 1 at PageID 9, 11–12.

---

[1] As the Ohio's chief election officer, the Secretary possesses "such powers and duties relating to the registration of voters and the conduct of elections as are prescribed in Title XXXV of the Revised Code," Ohio Rev. Code § 3501.04, including, *inter alia,* "[i]ssu[ing] instructions by directives and advisories in accordance with section 3501.053 of the Revised Code to members of the boards [of elections] as to the proper methods of conducting elections," Ohio Rev. Code § 3501.05(B), "[c]ompel[ling] the observance by election officers in the several counties of the requirements of the election laws," Ohio Rev. Code § 3501.05(M), and "investigat[ing] the administration of election laws, frauds, and irregularities in elections." Ohio Rev. Code 3501.05(N)(1). Courts may consider the Secretary of State's interpretation of an ambiguous statute regarding elections. *State ex rel. Ferrara v. Trumbull Cnty. Bd. of Elections*, 166 Ohio St. 3d 64, 68–69 (2021).

In arguing that Ohio law on this matter is settled, Plaintiffs rely entirely on decisions dealing with an individual's disaffiliation with a political party when declaring their candidacy for office as an independent. Those cases generally hold that a person seeking to run as an independent candidate must claim party disaffiliation in good faith. *See, e.g.*, *Guest*, 153 Ohio St. 3d at 633 (upholding Secretary of State's determination that individual's "claim of disaffiliation from the Democratic Party was not made in good faith"). Although dicta in one of those cases suggested that there is no such good faith requirement for changing one's party affiliation, Compl. ¶ 34, Dkt. 1 at PageID 8 (citing *Jolivette v. Husted*, 886 F. Supp. 2d 820, 834 (S.D. Ohio 2012)), the Sixth Circuit's decision affirming the district court's judgment contained no similar statement, 694 F.3d 760 (6th Cir. 2012).

Moreover, the logic underpinning the disaffiliation cases supports the existence of an implicit good-faith requirement. For instance, in *Morrison*, the Sixth Circuit explained, "A candidate possessing ordinary intelligence and common sense would readily understand that the claim of independence must be made in good faith—otherwise there would be no reason for having the claim requirement, and none of the state interests animating the claim requirement would be served." 467 F.3d at 509. In much the same way, a candidate possessing ordinary intelligence and common sense would understand that a declaration of candidacy under § 3513.07 must be made in good faith—otherwise there would be no reason for having the requirement to declare under penalty of election falsification, and none of Ohio's interests animating the declaration requirement would be served.

Likewise, in *State ex rel. Morris v. Stark Cnty. Bd. of Elections*, 143 Ohio St.3d 507 (2015), the Supreme Court of Ohio held that "implicit" in the submission of a statement of candidacy and nominating petition as an independent candidate pursuant to Ohio Revised Code § 3513.257 is

9

"that he or she is independent; that declaration must be made in good faith." *Id.* at 512 (citations omitted); *see also State ex rel. Trumbull Cnty. Bd. of Elections*, 157 Ohio St.3d 280, 284 (2019). And that declaration is also made "under penalty of election falsification." Ohio Rev. Code § 3513.261.

Another example comes from *State ex rel. Livingston v. Miami Cnty. Bd. of Elections*, 196 Ohio App. 3d 263 (Ohio Ct. App. 2011). There, the court explained that a board of elections may reject a candidate's petitions "on a finding that the candidate's claim to have disaffiliated with a political party was not made in good faith because the candidate is not actually unaffiliated." *Id.* at 270. "A lack of good faith is shown by subsequent conduct that is materially inconsistent with the prior claim of unaffiliation. A lack of good faith may also be shown by evidence of prior conduct that portrays a subsequent claim of disaffiliation to be a sham or deceitful." *Id.* Again, the good faith requirement is implicit in the statute's requirement that the declaration be made "under penalty of election falsification." *See* Ohio Rev. Code § 3513.07.

The Sixth Circuit has also held that "§ 3513.257 requires a claim of independence to be made 'in good faith.'" *Jolivette*, 694 F.3d at 767 (quoting *Morrison*, 467 F.3d at 507). And significantly, the Court in *Morrison*—consistent with Secretary LaRose's tie-breaking vote in the matter now before this Court—expressly concluded that "[a] person of ordinary intelligence in the position of [the proposed candidate] is put on notice that 'claims' of party affiliation or non-affiliation must be made in good faith; otherwise the person is subject to criminal prosecution." 467 F.3d at 511. The *Morrison* Court concluded that the good faith requirement was implicit in the declaration of disaffiliation itself, *id.* at 509 ("A candidate possessing ordinary intelligence and common sense would readily understand that the claim of independence must be made in good faith—otherwise there would be no reason for having the claim requirement, and none of the state

10

interests animating the claim requirement would be served."), and in the imposition of "criminal penalties for false swearing." *Id.* at 511. These same considerations support Secretary LaRose's conclusion that Ohio law prohibits a declaration of party affiliation under Ohio Rev. Code § 3513.07 from being made in bad faith.

Thus, the case law and statutory scheme suggest there is an implicit good-faith requirement in the declaration of candidacy. But, at a minimum, this is an unresolved question of state law, and the resolution of this unsettled question will likely "obviate the necessity for a decision of the federal constitutional question or substantially modify the constitutional issue." *Tyler*, 709 F.2d at 1108. On the one hand, if there is a good-faith requirement, Plaintiffs' constitutional claims would remain subsidiary because the crucial question would become whether Ronan demonstrated good faith, which is itself a state-law question—not to mention the fact that Ronan has disclaimed any need for good faith. *See, e.g.*, Compl. ¶ 34, Dkt. 1 at PageID 8. On the other hand, if Plaintiffs are correct that there is no good-faith requirement, then his disqualification was a state-law violation, and there is no need to reach the constitutional question; he would be entitled to a spot on the ballot purely under state law. *See* Ohio Rev. Code § 3513.191(B).

At the end of the day, Plaintiffs' claims are state-law claims dressed up as constitutional claims. That is precisely the situation *Pullman* is intended to address. Accordingly, this Court "should stay its hand in order to provide the state court an opportunity to settle the underlying state-law question, and thus avoid the possibility of unnecessarily deciding a constitutional question." *Harris Cnty.*, 420 U.S. at 83 (citing *Pullman*, 312 U.S. at 496).

**C.    Regardless, this Court lacks jurisdiction to enjoin Secretary LaRose from violating state statutes regulating elections.**

This Court's abstention decision in *Stein* was buttressed by additional concerns under *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U. S. 89, 106 (1984). *Stein v. LaRose*, No. 2:24-

11

cv-04042, slip op. at 7–8 (S.D. Ohio Oct. 25, 2024), attached as Ex. B. The Court explained that "the Eleventh Amendment deprives federal courts of jurisdiction over suits against state officials requesting injunctive relief based on state law." *Id.* at 7 (citing *Pennhurst*, 465 U.S. at 106). And "[s]ome courts have held parties cannot avoid the Eleventh Amendment by disguising state-law claims as federal claims." *Id.* (collecting cases). The *Stein* plaintiffs' "federal theory hinge[d] on a violation of state law," because "the [alleged] violation of the Ohio statute is what caused the federal violation." *Id.* at 8. The plaintiffs had "implicitly conceded their claims would fail if Defendant properly applied Ohio law." *Id.* "This suggest[ed] [the plaintiffs'] claims may be disguised state-law claims and thereby implicate *Pennhurst*." *Id.*

Once again, the similarities between this case and *Stein* are overwhelming. As in *Stein*, Plaintiffs' claims for declaratory and injunctive relief are based on purported violations of state law, not federal law. Plaintiffs essentially claim that Secretary LaRose imposed a good-faith requirement on candidacy declarations that is not found in Ohio law—in other words, that Secretary LaRose violated state law. Thus, Plaintiffs' "federal theory hinges on a violation of state law," because "the [alleged] violation of the Ohio statute is what caused the [purported] federal violation." *See id.* at 8. Plaintiffs' claims are "disguised state-law claims." *See id.*

As it said in *Stein*, this Court is without jurisdiction to afford such relief under *Pennhurst*. *See also Ladd v. Marchbanks*, 971 F.3d 574 (6th Cir. 2020) ("[T]he Supreme Court has made clear that federal courts cannot enjoin state officials from violating state law. So to the extent Plaintiffs seek equitable relief against Marchbanks for violating the Ohio Constitution, we have no authority to grant it." (citing *Pennhurst*, 465 U.S. at 121)). Although the Eleventh Amendment allows a federal court "to issue prospective injunctive and declaratory relief compelling a state official to comply with federal law . . . that exception does not extend to prospective injunctive or declaratory

12

relief based on alleged violations of state law." *Otte v. Kasich* (*In re Ohio Execution Protocol Litig.*), 709 F. App'x 779, 782 (6th Cir. 2017).

If Plaintiffs believe Secretary LaRose incorrectly voted to uphold the protest of Ronan's candidacy, their proper remedy is by way of mandamus in the Supreme Court of Ohio. In fact, the Supreme Court of Ohio has a well-established process for handling expedited elections cases. *See* Ohio S.Ct. Prac. R. 12.08. To the extent that Plaintiffs now seek this Court's intervention in a matter of state law, the Court is without jurisdiction to award relief under *Pennhurst*. *See Stein*, slip op. at 7–8.

**D.      Count I fails to state a claim because Ohio's declaration of candidacy requirements satisfy *Anderson-Burdick* on their face and as applied to Plaintiffs.**

**1.      Section 3513.07 is not facially unconstitutional.**

Plaintiffs' First Amendment claims are ballot-access claims governed by the familiar *Anderson-Burdick* framework. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992); *Kishore v. Whitmer*, 972 F.3d 745, 749 (6th Cir. 2020) (citing *Anderson* 460 U.S. at 780; *Burdick*, 504 U.S. at 441) (holding *Anderson-Burdick* "governs First and Fourteenth Amendment challenges to ballot-access restrictions"); *Lichtenstein v. Hargett*, 83 F.4th 575, 590 (6th Cir. 2023) (holding *Anderson-Burdick* applies to claims that a law "limiting a candidate's ability to get on the ballot violated the rights of voters to vote and the rights of candidates and voters to associate"). "[T]he rigorousness of [the court's] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Kishore*, 972 F.3d at 749 (quoting *Burdick*, 504 U.S. at 434). Thus, *Anderson-Burdick* imposes a "sliding-scale framework" and requires courts to: "(1) evaluate whether an election restriction imposes a severe or incidental burden; (2) assess the state's interests in the restriction; and (3) ask if the state's interests make the burden necessary." *Kowall v. Benson*,

13

18 F.4th 542, 546 (6th Cir. 2021) (citing *Citizens for Legis. Choice v. Miller*, 144 F.3d 916, 920–21 (6th Cir. 1998)).  Here, Ohio's declaration of candidacy requirements easily satisfy scrutiny under *Anderson-Burdick*.

***Burden.***  Begin with the burden imposed by those requirements.  Burden is analyzed on a spectrum. On one end are laws that impose a "severe" burden—those must be "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)).  On the other end are laws that impose "reasonable, nondiscriminatory restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788).  Those laws are "subject to rational-basis review and 'the State's important regulatory interests are generally sufficient to justify'" the restrictions. *Id.*  When laws impose "an intermediate restriction that falls somewhere between those two poles," courts "weigh the burden imposed by the State's regulation against 'the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Thompson v. DeWine*, 959 F.3d 804, 808 (6th Cir. 2020) (per curiam) (quoting *Burdick*, 504 U.S. at 434).

At most, the declaration of candidacy imposes a minimal burden.  Anyone who wishes to compete in an Ohio primary must declare their "desir[e] to be a candidate for a party nomination or a candidate for election to an office or position to be voted for at a primary election" publicly. Ohio Rev. Code § 3513.07.  Doing so means signing a declaration, the contents of which are prescribed by statute, and filing it with the Secretary of State or the Board of Elections of the most populous county in the district, depending on the type of race. *Id.*; Ohio Rev. Code § 3513.04. The declaration includes attestations both that the candidate is a member of and "will support and abide by the principles enunciated by" the party from whom they seek nomination.  Ohio Rev.

14

Code § 3513.07.  In turn, under § 3513.05, any qualified elector who is a member of that party and an eligible voter may challenge the validity of the declaration.

Facially, these requirements are a minimal burden on the associational rights of individual candidates and voters.  Indeed, in *Morrison*, the Sixth Circuit held that a comparable disaffiliation requirement for independent candidates was "merely a reasonable, nondiscriminatory regulation." 467 F.3d at 508.  In that case, Morrison filed a petition to run as an independent.  *Id.* at 504.  He later voted in a Republican primary and appeared on the ballot for several local Republican committees, and was excluded from the ballot as a result.  *Id.* at 505.  The Court held that requiring "would-be independent candidates to claim . . . that they are free of affiliation with any political party" did not impose a severe burden, and it was justified by the State's "substantial and compelling" interest in "protecting its electoral process by encouraging political stability, ensuring that the winner of the election will represent a majority of the community, providing the electorate with an understandable ballot, and enhancing voter education."  *Id.* at 508.

The inverse—requiring a candidate for a party's standard-bearer to declare they actually belong to that party and intend to advance its policies—makes sense when one compares a candidate's rights to associate with the party's rights as well.  While the First Amendment protects the right to political association, that "presupposes the freedom to identify those who constitute the association, and to limit the association to those people only."  *California Democratic Party v. Jones*, 530 U.S. 567, 574 (2000) (citation omitted).  The Supreme Court has emphasized that the First Amendment guarantees political parties significant leeway and autonomy in governing their own affairs, which necessarily includes the right to exclude non-members from party functions.  *See, e.g.*, *N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 203–04 (2008); *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 223–24 (1989).

15

And "[i]n no area" is the right to exclude more important than in the "candidate-selection process." *Jones*, 530 U.S. at 574. This "crucial juncture" is where "positions on significant public policy issues" are determined and "the party's ambassador charged with winning the general electorate over to its views" is selected. *Id.* That is why in *California Democratic Party*, the Court invalidated a California law that required political parties to allow non-members to vote in the party's primary. 530 U.S. at 586. California's "blanket primary" system violated the associational rights of the California Democratic Party by "opening [a party primary] up to persons wholly unaffiliated with the party, who may have different views from the party." *Id.* at 575.

Applying these principles to candidates like Plaintiff Ronan, the declaration of candidacy burden is minimal. He has no fundamental right to public employment, *Snowden v. Hughes*, 321 U.S. 1, 6–7 (1944), nor to run for public office, *Kowall*, 18 F.4th at 548–49. Further, as a general matter, candidacy restrictions are "a means of restricting the candidates who may appear on the ballot" and "do[] not inhibit [a candidate's] ability freely to write, speak, organize campaigns, or promote any set of political beliefs that he wishes." *Jolivette*, 694 F.3d at 765 (quoting *Jenness v. Fortson*, 403 U.S. 431, 438 (1971)). The Secretary's application of the law "does not have the effect of preventing the expression of political views or the forming of groups" for the purpose of associating politically. *See Corrigan v. City of Newaygo*, 55 F.3d 1211, 1215 (6th Cir. 1995) (upholding ordinance prohibiting anyone in default to the city from appearing on ballot in local elections). It merely prevents voter confusion and facilitates intraparty cohesiveness and fairness in a State-run process to elect party nominees.

Thus, the case law tells us that any right of Plaintiff Ronan to associate with a particular party is outweighed by the party's right to limit those with whom it associates. Permitting individuals to run in a party's primary when they are "wholly unaffiliated with the party" and "may

16

have different views from the party" would advance an individuals' right to *force* association with a party, at the expense of the party's paramount right to *exclude* individuals with whom it does not wish to associate. *Jones*, 530 U.S. at 575. Indeed, this is especially true in Ohio, because Ohio primaries are held for the "purpose of *nominating persons as candidates of political parties* for election to offices to be voted for at the succeeding general election." Ohio Rev. Code § 3513.01(A) (emphasis added); *cf. Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 454 (2008).

In *Washington State Grange*, the Supreme Court distinguished the California primary in *Jones* because the Washington primary did not choose party nominees. *Id.* at 453. The "choice of a party representative . . . does not occur" in the Washington primary. *Id.* Instead, Washington's election regulations expressly provided that the primary "does not serve to determine the nominees of a political parties" but instead winnowed the number of candidates to a list of two. *Id.* Thus, the plaintiff party's forced-association claim was rejected because there was no reason the electorate would interpret a candidate's "party-preference designation" to mean they are "the party's chosen nominee or representative or that the party associates with or approves of the candidate." *Id.* at 454.

The opposite is true here: Ohio's primaries nominate candidates of political parties, and "[p]olitical parties must be able to retain control over their nominees for elected office precisely because these nominees are supposed to approach their work in accordance with a particular political ideology." *Daunt v. Benson*, 956 F.3d 396, 415 (6th Cir.2020). Accordingly, the associational burden Plaintiff Ronan alleges here is "small." *See Jolivette*, 694 F.3d at 765 (6th Cir. 2012) (citing *Morrison*, 467 F.3d at 508).

Likewise for Plaintiff Cordero's rights as a voter. First, nothing in Ohio's declaration of

17

candidacy requirements precludes her from organizing, campaigning, or generally associating with anyone. More importantly, the Supreme Court has explicitly rejected the argument that a voter suffers even a moderate burden when he cannot vote for a candidate who did not make the ballot. *Burdick*, 504 U.S. at 440 n.10. Indeed, those were the facts of *Burdick* itself—a Hawaii voter claimed that his state's ban on write-in voting burdened his First and Fourteenth Amendment rights because it deprived him of an opportunity to cast a meaningful ballot for his candidates of choice, conditioned his electoral participation upon espousing positions he did not support, and discriminated against him based on the message he sought to convey through his vote. *Id.* at 437–38. These concerns amounted only to a "limited" burden. *Id.* at 438–39. Elections are for "winnow[ing] out and finally reject[ing] all but the chosen candidates." *Id.* at 438 (quoting *Storer v. Brown*, 415 U.S. 724, 736 (1974)). They serve no "generalized expressive function" for voters. *Id.* (citing *Storer*, 415 U.S. at 730). Following *Burdick*, the Sixth Circuit has explained that voters "do[] not have an absolute right to vote for a candidate of [their] choice, especially when that candidate . . . has not complied with reasonable state regulations." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 588 (6th Cir. 2006) (citations omitted).

This Court should reach the same result here. Like in *Burdick*, the candidate Plaintiff Cordero wishes to vote for is not eligible to run in the Republican primary under state law. Like there, any burdens here are "slight." *Id.* at 438–39. Plaintiffs' "suggestion that voters are entitled to cast their ballots for unqualified candidates appears to be driven by the assumption that an election system that imposes any restraint on voter choice is unconstitutional. This is simply wrong." *See Burdick*, 504 U.S. at 440 n.10.

Ohio's declaration of candidacy requirements impose, at most, a minimal burden under *Anderson-Burdick*. They are reasonable regulations that govern the declaration-of-candidacy

18

process in a nondiscriminatory way.  *Burdick* itself tells us this.  As the Supreme Court observed, enforcement of laws "limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable."  504 U.S. at 440 n.10 (citing *Anderson*, 460 U.S. at 788).

*State interests.*  Without allegations of a severe burden, the State's "important regulatory interests" in the challenged law suffice.  *Kowall*, 18 F.4th at 546.  Indeed, "when a State's ballot access laws pass constitutional muster as imposing only reasonable burdens on First and Fourteenth Amendment rights," a particular restriction "will be presumptively valid, since any burden on the right to vote for the candidate of one's choice will be light and normally will be counterbalanced by the very state interests supporting the ballot access scheme."  *Burdick*, 504 U.S. at 441.  When only minimal burdens are imposed, laws are reviewed under a standard "akin to rational-basis review."  *Ohio Council 8 Am. Fed'n of State Cnty. & Mun. Emps. v. Husted*, 814 F.3d 329, 338 (6th Cir. 2016) (citing *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 546 (6th Cir. 2014)).  But even construing Plaintiffs' burdens as moderate for argument's sake, Ohio's declaration of candidacy requirements pass muster.  Ohio's weighty and substantial interests and its means of pursuing them far outweigh Plaintiffs' alleged burdens.

No one denies that Ohio has an "important regulatory interest in the orderly administration of elections."  *Mays v. LaRose*, 951 F.3d 775, 792–93 (6th Cir. 2020).  Indeed, states "may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder."  *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (citing *Burdick*, 504 U.S. at 433).  And orderly elections walk hand-in-hand with election integrity.  *See Jolivette v. Husted*, 886 F.Supp.2d 820, 828 (S.D. Ohio 2012) (citation omitted).

19

By requiring that a candidate attest they belong to the party from which they seek a nomination to office, and that they will adhere to that party's tenets, Ohio "prevents splintered parties and unrestrained factionalism, avoids political fragmentation, and maintains the integrity of the ballot." *Morrison*, 467 F.3d at 508. These interests are particularly acute in Ohio's primary system, because primary voters pick between ballots separated by party. Ohio Rev. Code § 3513.13. Without Ohio's declaration of candidacy requirements, any individual could run for any party regardless of whether they were a member of that party, believed in its principles, or intended to advance them. Nominees could be hostile to the party's values, and party labels would be far less meaningful, if not meaningless. This means primary voters would have no idea which party's ballot to choose. The Supreme Court has recognized this risk of confusion in a primary system like Ohio's—where, by law, the winner is a party's nominee and representative. *Cf. Washington State Grange*, 552 U.S. 453–54. Stated differently, Ohio's declaration of candidacy requirements prevent widespread voter confusion and primary election chaos.

Ohio's declaration of candidacy requirements impose, at most, a minimal burden on Plaintiffs' First Amendment rights. But even if they imposed a moderate burden, Ohio's interests in having orderly, fair and honest elections and preventing voter confusion easily outweigh that burden and satisfy *Anderson-Burdick*.

> **2.    As applied to Plaintiffs, Ohio's declaration of candidacy requirements satisfy *Anderson-Burdick*.**

> **a.    Plaintiffs' as-applied challenge alleges unresolved questions of state law this Court should abstain from deciding.**

At day's end, Plaintiffs' as-applied challenge again cloaks an unresolved state-law issue in *Anderson-Burdick* clothing. Plaintiffs say Defendants incorrectly "interpreted § 3513.07 to require . . . that the two political party declarations required by § 3513.07 must be made truthfully to the subjective satisfaction of the Board of Elections" under state law. Compl. ¶ 38, Dkt. 1 at

20

PageID 9; *see also* Compl. ¶ 34–35, Dkt. 1 at PageID 8 ("Political party membership in Ohio is determined 'purely' by the intent of voters and candidates, respectively."). But, as explained above, these allegations raise unresolved questions of state law. *See supra* Section B. And any federal question would be obviated either way these questions are resolved. If good faith is not required under § 3513.07, then state law was violated when Plaintiff Ronan was removed from the ballot. If good faith is required, the central question becomes whether Plaintiff Ronan so acted— a fact-intensive inquiry that doubtlessly raises more unresolved questions of state law. Thus, for the same reasons set forth in Section B above, the Court should abstain from deciding Plaintiff's as-applied challenge.

### b.      Plaintiffs' as-applied challenge fails under *Anderson-Burdick*.

Regardless, Plaintiffs' as-applied challenge fails. A threshold point: the distinction between a facial and as-applied challenge "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). Thus, Plaintiffs' as-applied challenge is tied to their request that Plaintiff Ronan be placed on the primary ballot and Defendants be enjoined from enforcing the declaration of candidacy requirements against him. *See* Dkt. 1 at PageID 13, Prayer for Relief.

However, the Court should deny Plaintiffs' relief and dismiss their as-applied challenge under *Anderson-Burdick* for the same reasons their facial challenge fails. The Secretary's enforcement of § 3513.07 imposed only a "reasonable, nondiscriminatory restriction" on Plaintiffs' voting and associational rights, so "the State's important regulatory interests" in conducting elections are "generally sufficient." *Anderson*, 460 U.S. at 788. The burden alleged by Plaintiffs—Plaintiff Ronan's removal from the ballot—is not widespread and is arguably self-inflicted. For the reasons set forth in in Section D.1 above, the burden to Plaintiff Ronan is outweighed by Ohio's "important regulatory interest in the orderly administration of elections,"

21

*Mays*, 951 F.3d at 792–93, and in preventing "splintered parties and unrestrained factionalism, . . . political fragmentation, and maintain[ing] the integrity of the ballot," *Morrison*, 467 F.3d at 508. Accordingly, this Court should dismiss Count I.

**E.      Count II fails to state a claim because Plaintiffs do not have a right to sue for a violation of the Elections Clause. Regardless, § 3513.07 is within the State's authority to regulate the "Manner" of primary elections.**

**1.      The Elections Clause provides neither a private right of action nor any "rights, privileges, or immunities" that an individual can vindicate through § 1983.**

The mere fact that federal law or the Constitution "has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979). If the Constitution is silent as to conferring a private right of action, then none exists. *See, e.g.*, *Keweenaw Bay Indian Cmty. v. Rising*, 477 F.3d 881, 894 (6th Cir. 2007) (Art. 1, § 8); *City of Detroit v. Sec'y of Commerce*, 4 F.3d 1367, 1376 (6th Cir. 1993) (Art. I, § 2).

Large segments of the Constitution merely "instruct" government actors on how to function and are "silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015). The Elections Clause fits into this category. It authorizes States to prescribe "the Times, Places and Manner of holding Elections for Senators and Representatives." U.S. Const. Art. I, § 4. It does not confer a private right of action.

Nor is the Elections Clause the source of any individual federal "rights, privileges, or immunities" that could be the basis of a claim under 42 U.S.C. § 1983. *Cf., e.g.*, *Lance v. Coffman*, 549 U.S. 437, 441–42 (2007) (per curiam) (finding voters lacked standing to sue under the Elections Clause); *Lindsey v. Whitmer*, 124 F.4th 408, 413–15 (6th Cir. 2020) (finding legislators lacked standing to sue under the Elections Clause). Rather, the Elections Clause merely provides

22

authority to the States to regulate congressional elections. *See Bognet v. Sec'y Pa.*, 980 F.3d 336, 349 (3d Cir. 2020), *vacated as moot*, 141 S. Ct. 2508 (2021).

Plaintiffs will likely point to *Cook v. Gralike*, 531 U.S. 510 (2001), *see* Pls.' Mot. Prelim. Inj. at 9–12, Dkt. 2-1 at PageID 60–63 (citing *Gralike*), but it is inapposite. There, the Court held that a Missouri statute violated a candidate's First Amendment rights and ran afoul of the Qualifications Clause by creating an additional requirement for Congressional candidates. 531 U.S. at 516–17, 527. The Court rejected Missouri's arguments that the statute's required ballot language—which denoted whether a congressional candidate supported term limits or not—fell under the State's power reserved under the Tenth Amendment or qualified as a "manner" of regulating elections under the Elections Clause. *Id.* at 518–20, 525–26. *Gralike* does not stand for the proposition that a candidate can sue under the Elections Clause, and the plaintiff candidate in *Gralike* made no such claim.

Accordingly, Plaintiffs fail to state a claim because they have no private right of action, and thus no standing, to enforce the Elections Clause against Defendants. This Court can and should dismiss Count II on this basis alone.

**2. Regardless, Plaintiffs failed to plead a violation of the Elections Clause: § 3513.07 regulates the "Manner" of elections.**

Article I confers on the states the power for "substantial regulation of elections" so that elections will "be fair and honest and [have] some sort of order, rather than chaos, [in] the democratic processes." *Burdick*, 504 U.S. at 433 (quoting *Storer*, 415 U.S. at 730 (1974) (upholding California law requiring independent congressional candidates be unaffiliated for one year before the primary)). While "these comprehensive words embrace authority to provide a complete code for congressional elections," *Smiley v. Holm*, 285 U.S. 355, 366 (1932), they do not permit States to "dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade

23

important constitutional restraints," *United States Term Limits v. Thornton*, 514 U.S. 779, 833–34 (1995).  A state's manner of regulating elections "encompasses matters like 'notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns.'" *Gralike*, 531 U.S. at 523–24 (quoting *Smiley*, 285 U.S. at 366) (citing *U.S. Term Limits*, 514 U.S. at 833).

Cases conducting *Anderson-Burdick* analysis are illustrative because a regulation would never be subject to *Anderson-Burdick* balancing if it did not regulate the "Time, Places, and Manner of holding Elections," which are "comprehensive words."  *Smiley*, 285 U.S. at 366. Consider *Burdick* itself: a ban on write-in candidates at the primary stage rightly prevented "party raiding" that would thwart the primary system.  *Id.*; *see also Rosario v. Rockefeller*, 410 U.S. 752, 761–62 (1973) (finding state law requiring party registration eight months before primary had legitimate interest of protecting against raiding).  That ban was subject to burden/interest balancing now familiar in the elections context because it was an Elections Clause regulation. It follows, then, that the line of cases applying *Anderson-Burdick* to party disaffiliation requirements also suggest Ohio's declaration of candidacy requirements regulate the manner of elections. *See Morrison*, 467 F.3d at 503, and *Jolivette*, 694 F.3d at 760.  In other words, the decision to conduct that balancing presupposes that the disaffiliation regulation falls within the Elections Clause's "comprehensive words." *See Smiley*, 285 U.S. at 366.

Here, Plaintiffs argue § 3513.07, along with its implicit good-faith requirement, falls outside the Elections Clause.  Compl. ¶¶ 52–53, Dkt. 1 at PageID 12.  But much like the restrictions on primary elections in *Burdick* and the disaffiliation requirement from *Morrison* and *Jolivette*, the declaration requirement from § 3513.07 concerns the "Manner" of elections.  The declaration

24

requirement provides for the orderly execution of primary elections by properly sorting candidates onto the proper ballots. In Ohio, a primary voter must decide which ballot to complete at the polls. Ohio Rev. Code § 3513.13. Without a method for sorting candidates based on their good faith affiliations, a voter would be confused about which ballot to complete. It provides for the "protection of voters" and the "prevention of fraud or corrupt practices." *Gralike*, 531 U.S. at 523–24. Additionally, it serves the State's strong interest "to protect the integrity of its political processes from frivolous or fraudulent candidacies." *Bullock v. Carter*, 405 U.S. 134, 145 (1972); *see Norman*, 502 U.S. at 290 (holding that to "prevent misrepresentation and electoral confusion" States may prohibit a candidate's use of a party name when they "are not in any way affiliated with the party").

Because the good-faith declaration requirement in § 3513.07 concerns the "Manner" of primary elections, it falls within the authority conferred on the States in the Elections Clause. This Court should dismiss Count II for failing to state a claim.

## CONCLUSION

For the foregoing reasons, Secretary LaRose respectfully requests this Court dismiss all claims against him and dismiss him as a party.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069792)*
*Counsel of Record*
MARK TUCKER (0036855)
STEPHEN P. TABATOWSKI (0099175)
GREGORY A. RUSTICO (0104103)
TYLER W. BLAIR (0095595)
Assistant Attorneys General
Constitutional Offices Section

30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Julie.Pfeiffer@OhioAGO.gov
Mark.Tucker@OhioAGO.gov
Stephen.Tabatowski@OhioAGO.gov
Gregory.Rustico@OhioAGO.gov
Tyler.Blair@OhioAGO.gov

*Counsel for Defendant Frank LaRose*

26

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2026, the foregoing was filed with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance. Parties may access this filing through the Court's system.

/s/ Julie M. Pfeiffer
JULIE M. PFEIFFER (0069762)
Assistant Attorney General