**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RONAN, et al.,**

Plaintiffs,

**v.** **Case No. 2:26-cv-343**

**Chief Judge Sarah D. Morrison**

**Mag. Judge S. Courter M. Shimeall**

**LaROSE, et al.**,

Defendants/

**PLAINTIFFS' REPLY TO DEFENDANT-LAROSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

**Argument**

## I. Plaintiffs' Constitutional Claims Are Plausibly Stated and Not Futile.

Defendant-LaRose and Defendants-Preisse, Freedhoff, Sexton and Shumaker (hereinafter "Defendant-BOE")[1] both assert that Plaintiffs' motion to amend their complaint should be denied as futile because the Court denied Plaintiffs' request for preliminary relief. Though they recognize that leave to amend should be "freely granted," they claim Plaintiffs cannot now state plausible claims because of the Court's preliminary rulings. Defendants are wrong.

[1] Defendant-BOE's opposition to Plaintiffs' amended Due Process claim is separately addressed in a contemporaneously filed Reply to Defendant-BOE's opposition.

It has been settled law for at least four decades that grants and denials of preliminary relief are not dispositive and that denials, in particular, do not themselves support dismissals under Rule 12(b)(6). *See University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits.") (citations omitted). That is because such rulings are made "on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id*. The purpose of a preliminary injunction is not to dispose of the merits but "to preserve the status quo until a trial on the merits" or proper dispositive motions can be filed. *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co*., 860 F.3d 844, 848-49 (6th Cir. 2017) (citing *Camenisch*, 451 U.S. at 395). Consequently, "findings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits." *Towerco 2013 v. Berlin Township Board of Trustees*, 110 F.4th 870, 880 (6th Cir. 2024) (citations omitted).[2]

Given the procedural and substantive differences between preliminary injunctions and final judgments, plaintiffs frequently prevail on the merits despite being denied preliminary relief. In the watershed case of *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), for example, both the District Court and the Supreme Court (on direct review) denied preliminary relief, *see Citizens United v. Federal Election Commission*, 530 F. Supp. 2d 274 (D.D.C. 2008); *Citizens United v. Federal Election Commission*, 552 U.S. 1278 (2008), but the plaintiff ultimately prevailed on the merits before the Supreme Court and won final judgment. *See Citizens United*,

[2] The Sixth Circuit recognized this when it declined to vacate this Court's order denying preliminary relief. *See* Opinion and Order, Doc. No. 45, at 2 (stating that "plaintiffs-appellants have not shown that this an 'extraordinary case[]' where a moot preliminary injunction would have a preclusive effect") (citation omitted).

558 U.S. 310 (2010). If Defendants are correct that this Court's preliminary rulings are effectively dispositive and justify dismissal, this never could have happened.[3]

As *Camenisch* and its progeny make clear, Plaintiffs' failure to win preliminary relief has no bearing on whether their Complaint can survive dismissal under Rule 12(b)(6). Indeed, this Court did not grant Defendant-LaRose's Rule 12(b) motion to dismiss, filed on March 26, 2026, *see* Doc. No. 24,[4] when it denied preliminary relief. Plaintiffs' original Complaint, after all, states plausible constitutional claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (same).

This is doubly true of Plaintiffs' Amended Complaint, which alleges post-election facts, presents new precedents, and relies on newly discovered documents[5] to support Plaintiffs' legal claims against Defendant-LaRose and Defendant-BOE. The Amended Complaint's facts and legal claims are even more plausible than those found in the original Complaint.

Although "[a] proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss," *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000), courts generally recognize that Rule 12(b)(6) challenges to amended complaints are "better addressed in a motion to dismiss." *Drayton v. Valdez*, 2014 WL 103468, *4 (M.D. Fla. 2014); *see*

---

[3] Similarly, plaintiffs who win preliminary relief can ultimately lose their cases on the merits. In *Sole v. Wyner*, 551 U.S. 74 (2007), for example, a plaintiff who won a preliminary injunction lost a final judgment on the exact same First Amendment claim.

[4] Defendant-BOE answered the original complaint. *See* Answer, Doc. No. 38.

[5] Defendant-LaRose asserts that these documents could not have been newly discovered or recently uncovered because they were already in existence. Defendant-LaRose confuses newly created with newly discovered.

*also Cravatts v. Klozo Fastner Corp.,* 16 F.R.D. 454, 455 (S.D.N.Y.1954) (legal insufficiency of amendment not a proper basis for denying leave to amend); *Alloy Cast Steel Co. v. United Steel Workers of America,* 70 F.R.D. 687, 687–89 (N.D. Ohio 1976) (same); *Aileron Investment Management v. American Lending Center*, 2021 WL 7448222 (M.D. Fla. 2021) (same). This practice is particularly appropriate where, as here, the original Complaint has not been dismissed and an answer has been filed. Allowing Defendant-LaRose to win dismissal of both the original Complaint and Plaintiffs' proposed Amended Complaint by claiming futility in opposition to Plaintiffs' leave to amend would not only contradict *Camenisch*, it would afford Defendant-LaRose an end-run around the usual practices under the Federal Rules. As set forth below, each of the claims asserted in Plaintiffs' proposed Amended Complaint is well-pleaded and grounded in plausible facts. Plaintiffs are entitled to fully litigate those claims.

**A. Plaintiffs' First Amendment Claim is Well-Pleaded and Not Futile.**

The Supreme Court and the Sixth Circuit have both recognized that the punishment of speech based on alleged falsity necessarily reflects a content-based decision. *See United States v. Alvarez*, 567 U.S. 709 (2012) (plurality) (subjecting Stolen Valor Act to strict scrutiny because content-based); *Susan B. Anthony v. Driehaus*, 814 F.3d 466, 473 (6th Cir. 2016) (concluding that "Ohio's political false-statements laws target speech at the core of First Amendment protections—political speech" and are content-based); *see also United States v. Swisher*, 811 F.3d 299, 307 (9th Cir. 2016) ("Because [the statute] criminalized specific statements based on their falsity, the government did not dispute that the statute imposed a content-based restriction on speech.").

Additionally, after this Court and the Sixth Circuit denied preliminary relief here, the Eighth Circuit ruled unconstitutional a state law that criminalized false statements about voter eligibility. *See Minnesota Voters Alliance v. Ellison*, No. 24-3094, 2026 WL 2443854, __ F.4th __

(8th Cir., Aug. 20, 2026). In doing so the Eighth Circuit first recognized that false speech is protected by the First Amendment. Next, it ruled that false speech restrictions are content-based. Last, it concluded that the false speech law could not pass strict scrutiny.

The present case is no different from *Ellison*. According to the Amended Complaint, Plaintiff-Ronan was not allowed to advance his candidacy because Defendant-LaRose and two BOE members concluded his declaration of candidacy was inconsistent with his political speech.[6] Because of this purported inconsistency, they concluded Plaintiff-Ronan's declaration was false. Cases like *Ellison*, *Swisher*, *Driehaus* and *Alvarez* establish that this is a content-based decision subject to strict scrutiny. Plaintiffs' well-pleaded Amended Complaint states a plausible First Amendment claim.

*Driehaus* lends even greater support. There the Sixth Circuit invalidated Ohio's political false statement law using strict scrutiny. In so holding, *Driehaus* relied on the Supreme Court's ruling in *Alvarez*, which had ruled in 2012 that false speech remains constitutionally protected. Of critical importance, the *Driehaus* Court ruled that the Sixth Circuit's prior decision in *Pestrak v. Ohio Elections Commission*, 926 F.2d 573 (6th Cir. 1991), which held that Ohio's political false-statements laws were constitutional, had been ruled obsolete by *Alvarez*. "*Alvarez* abrogates *Pestrak's* holding that knowing false speech merits no constitutional protection," the *Driehaus* Court ruled. 814 F.3d at 471.[7] "In *Pestrak,* we determined that, on their face, Ohio's political false-

---

[6] Defendant-LaRose's claim that Plaintiff-Ronan "lie[d] by declaring his party affiliation in bad faith," LaRose Opp., Doc. No. 66, at PageID# 1534 & n.1, is not only false, it is a slur on the good name of a dignified veteran and honorable American citizen.

[7] Attorney General DeWine made this same point—that *Alvarez* abrogated *Pestrak*—in his brief to the Supreme Court in *Driehaus* arguing that Ohio's false political statement law violated the First Amendment. *See* Brief Amicus Curiae Ohio Attorney General Michael DeWine in Support of Neither Party, *Susan B. Anthony List v. Driehaus*, No. 13-193, at 2, https://mediacoalition.org/files/litigation/sba-list-driehaus-amicus-ohio-ag-dewine.pdf. The Ohio

statements laws were constitutional because 'false speech, even political speech, does not merit constitutional protection …." *Id*. at 471-72 (citation omitted). "*Alvarez* … repudiates *Pestrak's* assumption …." *Id*. at 472. "Accordingly, we are not bound by *Pestrak*'s determination that Ohio's political false-statements laws are constitutional …." *Id*. Here, Defendant-LaRose erroneously resurrects *Pestrak's* discredited reasoning and result while ignoring the holding and rationale of *Driehaus*.

The Sixth Circuit recently reinforced *Driehaus* in *Fischer v. Thomas*, 176 F.4th 470 (6th Cir. 2026), which was handed down one week after Ohio's May 5, 2026 primary and after this Court denied preliminary relief. In *Fischer* the Sixth Circuit stated that that "the First Amendment gives candidates 'a constitutional right to portray themselves as a member of a political party.'" *Id*. at 478 (quoting *Winter v. Wolnitzek*, 834 F.3d 681, 688 (6th Cir. 2016)). "[T]he First Amendment protects candidates' rights to share information about how they will approach the issues of the day." *Id*. Under this First Amendment reasoning, Plaintiff-Ronan possesses a constitutional right (both before and after his declaration of Republican party membership) to politically "portray" himself as he chooses. Under *Fischer* Plaintiff-Ronan retains a constitutional right following his declaration of Republican candidacy to publicly portray himself as a Democrat—something he did not do (and which would have been false but nevertheless still would have been protected).

Under *Driehaus* and *Fischer*, Plaintiff-Ronan has a First Amendment right to self-identify under Ohio law as a Republican and/or a Democrat, whichever he chooses. He has a First

Attorney General's present position in this case is difficult to reconcile with that of General DeWine in *Driehaus*.

Amendment right to publicly announce either and both. Because Ohio has chosen to adopt self-identification for its primaries, its election officials cannot under the First Amendment use what they deem to be internally inconsistent statements about party membership to punish primary candidates for what they (elections officials) deem to be "false" self-identifications.

While neither *Driehaus* nor *Fischer* was a ballot access case, their rulings apply equally to candidates running for public office. This was made clear by the Sixth Circuit's ruling in *Brown v. Yost*, 113 F.4th 725 (6th Cir. 2025), *stay denied*, 145 S. Ct. 1957 (2025). There, Ohio law authorized the Attorney General to block popular initiatives from ballots if he found their summaries to be false or misleading. According to the statute, summaries had to be "fair and truthful" descriptions of the initiatives' contents. *See Yost*, 133 F.4th at 728. The Sixth Circuit analyzed the restriction first under the traditional First Amendment principles applied to content-based restrictions in cases like *Meyer v. Grant*, 486 U.S. 414, 422 (1988), and *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 258 (1974), and then under the *Anderson-Burdick* framework. *See Yost*, 133 F.3d at 732-37. Under either analysis, the Court concluded, Ohio's content-based "fair and truthful" restriction on ballot access was subject to strict scrutiny. *See id.* at 735, 738. Measuring the truthfulness of political speech, the Court made clear, is necessarily content-based. And because it is content-based it risks "alter[ing] or disrupt[ing] a party's own expressive activity." *Id.* at 733 (citation and quotation marks omitted).

**B. Plaintiffs' Elections Clause Claim Is Well-Pleaded and Not Futile.**

Plaintiffs' Amended Complaint develops and expands their argument under the federal Elections Clause in Article I, § 4. While violations of State law are not necessarily the stuff of federal constitutional violations, they can be under the Elections Clause. That is the case here. Neither Defendant-LaRose nor Defendant-BOE possesses the authority to alter Ohio's statutory

laws, either through interpretations or enforcement proceedings, when applied to federal elections. The Elections Clause provides the sole authority by which States may regulate the "Time, Place and Manner" of elections for the United States House and Senate. *See Cook v. Gralike*, 531 U.S. 510, 522 (2001). "No other constitutional provision gives the States authority over congressional elections, and no such authority could be reserved under the Tenth Amendment." *Id*. at 522-23.

Plaintiffs argue through their Amended Complaint that State executive officials—including Defendant-LaRose and Defendant-BOE—have no power to change, alter or add to Ohio's ballot access laws that are applied to federal elections. The political good faith requirement that Defendant-LaRose (and Defendant-BOE through two of its four members) enforced against Plaintiff-Ronan has no basis in Ohio law. By enforcing it in the context of a federal primary election for Congress, Defendants exceeded their authority under the Elections Clause.

*Libertarian Party of Ohio v. Brunner*, 577 F. Supp.2d 1006, 1012 (S.D. Ohio 2008), previously recognized this limitation in a case involving the Ohio Secretary of State's attempt to create ballot access laws for federal elections. There, the Secretary of State had "establishe[d] a new structure for minor party ballot access, a structure not approved by the Ohio legislature." *Id*. at 1012. "As to federal offices," the District Court ruled, "Article I, Section 4 and Article II, Section 1 vest exclusive power to establish such a structure in the state legislature." The Secretary's rules were thus invalid under the federal Constitution.

The District Court in *Libertarian Party of Louisiana v. Dardenne*, 2008 WL 11351516, *2 (M.D. La. 2008), *vacated on other grounds*, 308 Fed. Appx. 861 (5th Cir. 2008), likewise recognized that "only the legislative branch has the authority, under Articles I and II of the United States Constitution, to prescribe the manner of electing candidates for federal office." *See also Moore v. Hosemann*, 2008 WL 11439423, *1 (S.D. Miss. 2008) (same); Michael T. Morley, *The*

*Independent State Legislature Doctrine*, 90 FORD. L. REV. 501, 509 (2021) (stating that under Articles I and II state "officials may not take it upon themselves to suspend or ignore state law").

This so-called "independent legislature" restriction on executive interpretations of State-created congressional election laws was recognized by Justices Alito and Gorsuch in *Moore v. Circosta*, 141 S. Ct. 46 (2020) (Gorsuch, J., dissenting), a case arising during the 2020 election. There, the Supreme Court (by a 5-3 vote) refused to enjoin a consent decree executed by the North Carolina State Board of Elections that extended the deadline for absentee ballots. Justice Gorsuch, dissenting, stated that it is "egregious" for "a state court and the Board [of Elections] [to] work [] together to override a carefully tailored legislative response to COVID." *Id*. at 47. He added that "efforts like these ... offend the Elections Clause's textual commitment of responsibility for election lawmaking to state and federal legislators ...." *Id*. at 48. "Such last-minute changes by largely unaccountable bodies ... invite confusion, risk altering election outcomes, and in the process threaten voter confidence in the results." *Id*.

Justice Gorsuch's concerns permeate the present case. Ohio's General Assembly has prescribed a political good faith ballot access rule for independent candidates running in general elections that Ohio's Secretary of State and Attorney General in *Jolivette* conceded does not apply to party primaries due to the differing statutes and State interests at stake. Defendant-LaRose created new law for Ohio's federal primaries. That he does not have the authority to do under Article I, § 4.

*Moore v. Harper*, 600 U.S. 1 (2023), does not alter this result. "*Moore* recognizes that the principle of ordinary *judicial review* provides a check for lawmaking bodies who transgress state-law limits on their regulatory authority over elections." *Gardner v. Henderson*, 2026 WL 496448, *12 (D. Utah, Feb. 23, 2026) (emphasis added). Its holding does not apply to executive usurpations

of legislative actions. Even in the context of State court review, moreover, State courts may go too far under *Moore*. "As in other areas where the exercise of federal authority or the vindication of federal rights implicates questions of state law, we have an obligation to ensure that state court interpretations of that law do not evade federal law." *Id*. at 34. This remains especially true where Ohio's executive officials, as opposed to its courts, take it upon themselves to create or re-create Ohio law.

Defendant-LaRose's rewriting of Ohio law is novel, unsupported, contradicts the stated intent of § 3513.191(B)'s author, contradicts the plain language of that statute, and even contradicts his office's and the Attorney General's prior construction of Ohio law in *Jolivette v. Husted*, 886 F. Supp. 2d 820, 835 (S.D. Ohio), *aff'd*, 694 F.3d 760 (6th Cir. 2012). It flouts both precedent and what Ohio's General Assembly has written into law. Plaintiff-Ronan is the first and only primary candidate ever to be removed from the ballot in Ohio for allegedly being politically dishonest. Not only is that allegation against Plaintiff-Ronan outrageous and false, but also, Defendant-LaRose, Defendant-Freedhoff and Defendant-Preisse acted *ultra vires* in creating that rule and using it to for the first time in Ohio history to remove a candidate (Plaintiff-Ronan) from the primary ballot.

Furthermore, by arrogating to himself the power to judge the credibility and consistency of Plaintiff-Ronan's political speech, Defendant-LaRose improperly usurped the role of Ohio voters in choosing their preferred candidates. The Court in *Cook*, 531 U.S. at 523, ruled under the Elections Clause that States have no "power to dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional restraints." *Id*. (citation omitted). Chief Justice Rehnquist concurred to emphasize that restrictions on congressional ballots are valid only when "they are justified without reference to the content of the regulated speech …." *Id*. at 531 (C.J., concurring) (emphasis added). Defendant-LaRose violated both these principles; he used the

content of Plaintiff-Ronan's speech, both that uttered before and after his declaration, to remove him, and dictated the electoral outcome by leaving only Mike Carey on the ballot.

The Alaska Supreme Court's recent decision cited in Plaintiffs' Amended Complaint further supports both the merits of Plaintiffs' Elections Clause challenge and its justiciability. *See Alaska Division of Elections v. Sullivan*, No. S-19935 (Alaska S.Ct., June 29, 2026), *aff'd*, No. 3AN-26-07485CI (Alaska Superior Ct., June 26, 2026).[9] There, Alaska's chief election official removed a candidate, Dan J. Sullivan, from the congressional (Senate) ballot based on her belief that he was not a serious, good faith, Republican candidate, but was instead simply attempting to confuse voters and assist the Democrat. (The incumbent's name is Dan S. Sullivan.) A state trial court ruled that the election official had no authority to do this under Alaska law, and that her action violated the federal Elections Clause. The Alaska Supreme Court affirmed (it has yet to release its opinion). The Alaska decision contradicts Defendant-LaRose's unsupported assertion that the Elections Clause is not enforceable, reinforces *Gralike*'s conclusion that it is, and adds support to the Supreme Court's conclusion in *Bost v. Illinois State Elections Board*, 146 S. Ct. 513 (2026), that candidates are entitled to fair procedures under settled laws. This new precedent was not available when this Court denied preliminary relief and is incorporated into Plaintiffs' Amended Complaint.

**C. Plaintiffs' Estoppel Claim Is Well-Pleaded and Not Futile.**

Plaintiffs' Amended Complaint includes reference to litigation documents establishing that in *Jolivette v. Husted*, 886 F. Supp. 2d 820, the Ohio Secretary of State and Attorney General

---

[9] The Alaska Superior Court's opinion is available at https://npr.brightspotcdn.com/4a/66/8f7ce0f044e1a4b9a53e11952043/order-on-administrative-appeal.pdf (last visited October 2, 2026).

argued, as a necessary part of their defense, that Ohio law does not authorize elections officials to question the political good faith of candidates seeking to run in primary elections. This issue was actually litigated in that case, and the District Court concluded—agreeing with the Secretary of State—that "there is no requirement that the candidate make the [political party] change in good faith." *Jolivette*, 886 F. Supp. 2d at 835. This adjudicated legal finding cannot be reconciled with "[t]he Secretary's [self-described] position here … that under Ohio Rev. Code § 3513.07, a candidate signing a declaration of candidacy must aver to its contents under penalty of election falsification and, thus, in good faith." LaRose Opp., Doc. 66, at PageID# 1540.

Under the offensive collateral estoppel doctrine recognized in *Parklane Hosiery v. Shore*, 439 U.S. 322 (1979), Defendant-LaRose's office, having been a party to *Jolivette* and having actually litigated this issue, is now collaterally estopped (issue preclusion) from relitigating whether Ohio law requires that primary candidates make self-identified political party changes in good faith in order to be included on Ohio's primary ballots. In *Jolivette*, the Secretary argued that Ohio law imposed no such requirement, the issue was fully and fairly litigated, and both the District Court and the Sixth Circuit agreed with the Secretary. Collateral estoppel now bars Defendant-LaRose from arguing the opposite position here. As explained by the Sixth Circuit in *In re E.I. DuPont de Nemours & Co. C-8 Personal Injury Litigation*, 54 F.4th 912 (6th Cir. 2022), which is cited in Plaintiffs' Amended Complaint, *see* Doc. No. 57-1, at PageID# 1443 (¶ 63), offensive collateral estoppel based on a federal judgment is warranted when the estopped party had a full and fair opportunity to litigate a critical issue in a prior case.[10]

[10] The four requirements of offensive collateral estoppel are: (1) the issue in the instant case must be the same as in the prior litigation; (2) the issue must have been litigated in the prior adjudication; (3) the determination of the issue in the prior adjudication must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the prior litigation. *See NLRB v.*

As applied here, collateral estoppel is fatal to Defendant-LaRose's case, yet he does not even attempt to address it. Instead, Defendant-LaRose ignores *Parklane Hosiery* and collateral estoppel completely and argues that Plaintiffs are not entitled to "judicial estoppel"—a distinct doctrine subject to different requirements that Plaintiffs have not invoked. LaRose Opp., Doc. No. 66, at PageID# 1539. While it may be that Defendant-LaRose also should be judicially estopped, there can be no doubt that he is collaterally estopped, and even he does not deny it.

* * *

Plaintiffs assert in their well-pleaded Amended Complaint timely, serious, and credible constitutional claims. They are not implausible within the meaning of Rule 12(b)(6) and they are not futile. Plaintiffs' motion for leave should be granted.

## II. Plaintiffs' Case and Claims Are Not Moot.

The Sixth Circuit declined to vacate this Court's Order denying preliminary relief when it dismissed the interlocutory appeal as moot following the primary election both because denials of preliminary injunctive relief have no preclusive effect, *see* Opinion and Order, Doc. No.45, at 2, and because "the underlying district court litigation ostensibly remains live." *Id*. at 1-2. Plaintiffs' case remains alive both because of continuing and future injuries suffered by Plaintiffs and because of the capable of repetition exception to mootness.

### A. Plaintiffs Have Properly Pleaded Future and Continuing Injuries.

Plaintiffs have properly pleaded in their Amended Complaint a pre-enforcement challenge based on future and continuing injuries. Because of these future and continuing injuries their case cannot be moot.

---

*Master Slack and/or Master Trousers,* 773 F.2d 77, 81 (6th Cir.1985); *Central Transport Inc. v. Four Phase Systems, Inc.,* 936 F.2d 256 (6th Cir.1991). All four requirements are satisfied here.

Defendant-LaRose mistakenly asserts that while Plaintiff-Ronan alleges that he is "ready, able and qualified to run … in 2028 and the future," LaRose's Opp., Doc. No. 66, at PageID# 1534 (citation omitted), he fails to "allege that Ronan actually intends to run again." *Id*. This, Defendant-LaRose asserts, dooms Plaintiffs' claim to potential future injuries and their standing to assert them. *Id*. at PageID# 1534 n.1.

Defendant-LaRose overlooks paragraph 37 of the Amended Complaint, however, which states that "Plaintiff-Ronan intends to run in Ohio Republican Party congressional primaries in Ohio and in Franklin County in 2028 and in the future." *See* Amended Complaint, Doc. No. 57-1, at PageID# 1439 (¶ 37). Further, contrary to Defendant-LaRose's assertion, Plaintiffs allege that Plaintiff-Ronan intends to engage in the same course of conduct: "Plaintiff-Ronan intends to repeat the same political and ideological messages in his 2028 Ohio Republican Party congressional campaign and in the future when he runs in Ohio Republican Party congressional primaries in Ohio and in Franklin County," *id*. (¶ 38), and that "Plaintiff-Cordero intends to vote for Plaintiff-Ronan in Ohio Republican Party primaries in Ohio and in Franklin County in 2028 and in the future." *Id*. (¶ 39). Under Defendant-LaRose's own logic Plaintiffs have sufficiently alleged facts to establish sufficient claims based on future elections and future injuries.

The Supreme Court has made plain that pre-enforcement actions are proper under Article III. Plaintiffs' Amended Complaint properly states a well-pleaded pre-enforcement action against Defendant-LaRose and Defendant-BOE based on what he intends to do in the future. "[A] party need not always wait for the government to take coercive action against it before filing suit to challenge the government's conduct. Instead, a litigant may bring a pre-enforcement suit seeking prospective relief against government officials so long as it faces 'a credible threat of

enforcement.'" *First Choice Women's Resource Center v. Davenport*, 146 S. Ct. 1114, 1122 (2026) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161, 164–167 (2014)).

*Driehaus*, 573 U.S. 149, mirrors Plaintiff-Ronan's case. There, the plaintiffs had been administratively charged with violating Ohio's false political speech law. Those charges had been dismissed, but the plaintiffs feared being charged again. The Supreme Court ruled that their pre-enforcement challenge was proper and that they possessed Article III standing because they alleged a "credible threat" of future enforcement. *Id*. at 161. "First, [plaintiffs] have alleged 'an intention to engage in a course of conduct arguably affected with a constitutional interest.'" *Id*. (citation omitted). "Next, [plaintiffs'] intended future conduct is 'arguably ... proscribed by [the] statute' they wish to challenge." *Id*. at 162 (citation omitted). "Finally, the threat of future enforcement of the false statement statute is substantial. Most obviously, there is a history of past enforcement here." *Id*. at 164.

Here, Plaintiffs have alleged an intent to engage in the exact same conduct again in 2028. That conduct is proscribed by Defendants' determination that such conduct violates an Ohio requirement that primary candidates declare their political affiliations in good faith as subsequently determined by elections officials. Even if this newly-minted, administratively enforceable political good faith requirement would not necessarily succeed in precluding Plaintiff-Ronan's future candidacy, there is a substantial and credible risk that protestors and Defendants will attempt to enforce it against him again. Defendants have not disavowed their intention to do so—on the contrary, they maintain that it is a proper exercise of their authority under Ohio law. That they can do so chills Plaintiffs' First Amendment rights. Plaintiffs thus have standing to bring a pre-enforcement challenge based on "the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights." *Laird v.*

*Tatum*, 408 U.S. 1, 11 (1972); *see also Chiles v. Salazar*, 607 U.S. 627, 637 n.* (2026) (holding that "chilling effect" supports pre-enforcement standing). Indeed, that Defendants have "fought this suit through three courts," *id*. at 637 n*, demonstrates their dedication to enforcing their *ultra vires* interpretation of Ohio law and the chilling effect it has on Plaintiffs' First Amendment rights.

**B. Plaintiffs' Case Falls Comfortably in the Capable of Repetition Exception.**

This case, like the vast majority of election controversies, "fit[s] comfortably within the established exception to mootness for disputes capable of repetition, yet evading review." *Federal Election Commission v. Wisconsin Right to Life*, 551 U.S. 449, 462 (2007). This Court, *see*, *e.g*., *Coast Candidates PAC v. Ohio Election Commission*, 2012 WL 4322517 (S.D. Ohio 2012); *Schrader v. Taft*, 78 F. Supp.2d 708 (S.D. Ohio 1999), the Sixth Circuit, *see*, *e.g*., *Corrigan v. City of Newaygo*, 55 F.3d 1211 (6th Cir. 1995); *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006); *Lawrence v. Blackwell*, 430 F.3d 368 (6th Cir. 2005); *American Civil Liberties Union v. Taft*, 385 F.3d 641 (6th Cir. 2004), its Sister Circuits, *see*, *e.g*., *Moore*, 591 F.3d at 744, and most important the Supreme Court have all on numerous occasions applied the well-worn rule that election disputes are not mooted by elections. *See*, *e.g*., *Norman v. Reed*, 502 U.S. 279, 288 (1992) (holding that challenge to Illinois ballot restrictions was "capable of repetition yet evading review"); *Moore v. Ogilvie*, 394 U.S. 814 (1969) (holding that election challenge was "capable of repetition yet evading review"); *Grant*, 486 U.S. 414 (holding that a challenge to Colorado's ban on paid circulators was "capable of repetition yet evading review"); *Storer v. Brown*, 415 U.S. 724 (1974) (holding that an "as applied" challenge to various California election laws was "capable of repetition yet evading review"); *Democratic Party v. Wisconsin ex rel. La Follette*, 450 U.S. 107 (1981) (holding that an election challenge was not mooted by an intervening election); *Brown v. Chote*, 411 U.S. 452 (1973) (same); *Rosario v. Rockefeller*, 410 U.S. 752 (1973) (same).

The reason is simple: elections ordinarily conclude long before federal litigation can be completed. So long as a "reasonable expectation" exists that the constitutional problem will recur, it makes little sense to avoid it because of mootness. *See Storer*, 415 U.S. at 737 n.8 ("The construction of the statute, an understanding of its operation, and possible constitutional limits on its application, will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated before an election is held.") Establishing a reasonable expectation of recurrence, moreover, is not difficult. The likelihood need not even rise to the level needed to establish standing in the first instance, and is not a probable-cause or more-probable-than-not standard. *See Honig v. Doe*, 484 U.S. 305 (1988) ("Our concern ... in all [cases] involving potentially moot claims [is] whether the controversy [is] capable of repetition and not ... whether the claimant had demonstrated that a recurrence of the dispute was more probable than not."). The Supreme Court observed in *Honig*, 484 U.S. 319 n.6, that it routinely "found controversies capable of repetition based on expectations that, while reasonable, were hardly demonstrably probable." (Citations omitted); *see also Libertarian Party of Ohio*, 462 F.3d at 585 (observing that the recurrence standard is "somewhat relaxed" in election cases).

Defendant-LaRose and Defendant-BOE claim that Plaintiffs' case includes "unique circumstances" which render it unfit for the  capable of repetition yet evading review exception, but that is incorrect. The unique circumstances that Courts sometimes mention to justify mootness notwithstanding the capable of repetition doctrine are unique circumstances that have *caused* or *contributed to* the mootness. For example, the "unique circumstance" of a legislative repeal of the challenged election law was used in *Libertarian Party of Ohio v. Husted*, 497 Fed. Appx. 581, 583 (6th Cir. 2012) ("As the LPO's target, H.B. 194, was no more, there was nothing to enjoin or declare unconstitutional."), to support mootness. Similarly, the repeal of a law that was connected

to the constitutional violation was used to support mootness in *Blackwell*, 462 F.3d at 584 ("In August 2001, the Ohio legislature changed the election falsification notice that is required on a political party petition form."). The conclusion of inclement weather that created the constitutional violation in the first place offers another example, *see Libertarian Party of Louisiana v. Dardenne*, 595 F.3d 215, 218 (5th Cir. 2010) (finding it unlikely that another hurricane would require changing the filing deadline), as is the end of a pandemic that caused numerous constitutional problems with elections. *See Thompson v. DeWine*, 7 F.4th 521 (6th Cir. 2021). A change in the plaintiff's domicile after the election presents yet another example. *See La Botz v. Federal Election Commission*, 2014 WL 3686764, *7 (D.D.C. 2014) (observing that the candidate had moved to New York after the election was over).[12]

In all of these cases, the unique circumstances that overcame the capable of repetition exception involved factual and legal <u>changes</u> that caused or contributed to mootness. None of that is true here. Here the election and only the election has caused mootness. The alleged unique circumstances that Defendant-LaRose points to existed when the case was filed. It most certainly was not moot then. Indeed, those circumstances are at the heart of Plaintiffs' constitutional case. They have nothing to do with mootness. The challenged law, as interpreted and applied by Defendant-LaRose, remains in place. Plaintiffs have alleged under oath that they remain able and ready to do precisely what they did before, and that they intend to do it. No unique facts or legal changes justify ignoring the capable of repetition exception here. *See Dardenne*, 595 F.3d at 218

---

[12] By way of contrast, before the plaintiff had moved to New York, the court ruled that the capable of repetition yet evading review exception saved his complaint from mootness, even though the election was over: "Electoral disputes are thus 'paradigmatic' examples of cases that cannot be fully litigated before the particular controversy expires." *La Botz v. Federal Election Commission*, 889 F. Supp.2d 51, 59 (D.D.C. 2012).

n.6 ("These challenges are often able to survive mootness under the exception because courts will assume that the government will enforce the same statute in the future.").

Plaintiffs' as-applied and facial challenges are both exempted from mootness by the capable of repetition exception. The Supreme Court in *Wisconsin Right to Life*, 551 U.S. 449, made this point crystal clear:

> We have recognized that the 'capable of repetition, yet evading review' doctrine, in the context of election cases, is appropriate when there are 'as applied' challenges as well as in the more typical case involving only facial attacks. Requiring repetition of every 'legally relevant' characteristic of an as applied challenge—down to the last detail—would effectively overrule this statement by making this exception unavailable for virtually all as-applied challenges. History repeats itself, but not at the level of specificity demanded by the FEC.

*Id*. at 463-64 (citations and quotation marks omitted). Defendant-LaRose's suggestion that Plaintiffs must allege in detail that they will do precisely what they did before is therefore incorrect. The capable of repetition exception does not require that "level of specificity."

In *Moore*, to use an example premised on the First Amendment and the Elections Clause, the Socialist Party USA candidate for President in 2008 attempted to file his nominating papers at 5:05 PM, just 5 minutes after the Secretary of State's office decided to close its doors. *See Moore*, 591 F.3d at 744. Moore challenged the Secretary's 5:00 PM closing time under the Elections Clause, claiming that the Mississippi statute did not set a closing time before the end of the day and that the Secretary had no authority to change what the statute plainly stated. After Moore failed to win emergency relief and following the election, his interlocutory appeal was dismissed as moot. On appeal from the District Court's dismissal of the entire case on mootness grounds, the Fifth Circuit reversed. Even though the facts of his case were certainly unique and his challenge was as-applied, it was still capable of repetition yet evading review. Moore's First Amendment and Elections Clause claims thus remained alive.

## Conclusion

Plaintiffs respectfully request that leave be GRANTED.

Respectfully submitted,

*Mark R. Brown*

Mark R. Brown (81941)
*Counsel of Record*
Newton D. Baker/Baker & Hostetler Chair
CAPITAL UNIVERSITY*
303 East Broad Street
Columbus, Ohio 43215
614.236.6590
mbrown@law.capital.edu

Oliver Hall
Legal Counsel
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
202.248.9294
oliverhall@competitivedemocracy.org

* For purpose of identification only

## CERTIFICATE OF SERVICE

I hereby certify that this Reply was filed with the Court and notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance. Parties may access this filing through the Court's system.

*Mark R. Brown*

Mark R. Brown

Attorney for Plaintiff