**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RONAN, et al.,**

Plaintiffs,

**v.** **Case No. 2:26-cv-343**

**Chief Judge Sarah D. Morrison**

**Mag. Judge S. Courter M. Shimeall**

**LaROSE, et al.**,

Defendants/

**PLAINTIFFS' REPLY TO DEFENDANT-BOE's OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

## Argument

Plaintiffs incorporate into this Reply their Reply to Defendant-LaRose's opposition to their motion for leave to amend, filed this same day. As established in that Reply, Plaintiffs have stated plausible Elections Clause and First Amendment claims against both Defendant-LaRose and Defendants-Preisse, Freedhoff, Sexton and Shumaker (hereinafter "Defendant-BOE"). This Reply focuses on Plaintiffs' Due Process claim against Defendant-BOE, which is based on Defendant-Freedhoff's and Defendant-Preisse's actual and/or apparent (probabilistic) bias against Plaintiff-Ronan and in favor of his lone competitor, the incumbent Mike Carey. As set forth below, that claim is also plausible and survives Rule 12(b)(6) scrutiny. It also remains alive under the capable of repetition yet evading review exception and separately presents a plausible and proper pre-enforcement challenge. It survives Rule 12(b)(1) scrutiny and is not futile.

## I. Plaintiffs' Due Process Claim Is Well-Pleaded and Not Futile.

Defendant-BOE incorrectly asserts that Plaintiffs' Due Process claim necessarily "fails on the merits" because "[c]andidates generally have no protected interest in an elected position," BOE Opp., Doc. No. 67, at PageID# 1549, and because "Plaintiffs allege no personal financial interest in the protest's outcome, no benefit to either [Defendant-Preisse or Defendant-Freedhoff] from the result, and no facts showing that either member directed or controlled the party's funding of the protest." *Id*. at PageID# 1550-51.

Plaintiffs' Amended Complaint, like its original Complaint,[1] sufficiently alleges facts that, if true, required Defendant-Freedhoff's disqualification under the Due Process Clause. The Amended Complaint also adds a new allegation that Defendant-Preisse donated $1000 to the 2026 congressional campaign of Plaintiff-Ronan's Republican competitor, Mike Carey. *See* Amended Complaint, Doc. No. 57-1, at PageID # 1435 (¶ 20). Defendant-Preisse, too, was therefore under a Due Process Clause duty to disqualify himself. Both claims are well-pleaded and plausible.

Defendant-BOE's assertion that candidates and office holders are not entitled to procedural Due Process protections under the Supreme Court's 1944 holding in *Snowden v. Hughes*, 321 U.S. 1 (1944), *see* BOE Opp., Doc. No. 67, at PageID# 1550 (citing *Newsom v. Golden*, 602 F. Supp. 3d 1073, 1083 (M.D. Tenn. 2022)), is inconsistent with Sixth Circuit precedent and contradicts the holdings of numerous Courts. In *Snowden*, the Court concluded that candidates for *State* office are not entitled to procedural Due Process protections under the *federal* Constitution. *See Snowden*, 321 U.S. at 7.The Sixth Circuit has nevertheless repeatedly assumed that candidates and ballot measures are entitled to procedural Due Process protections, *see Miller v. Lorain County Board of*

[1] Defendant-BOE answered the original Complaint. *See* Answer, Doc. No. 38.

*Elections*, 141 F.3d 252, 260 & n.18 (6th Cir. 1998); *Schmitt v. LaRose*, 933 F.3d 628 (6th Cir. 2019), while Courts from other Circuits have either assumed *Snowden* is no longer good law or have expressly ruled that it does not survive more recent precedents, in particular *Board of Regents v. Roth*, 408 U.S. 564 (1972) (holding that any "legitimate claim of entitlement" deserves procedural Due Process protection). *See*, *e.g*., *Duke v. Massey*, 87 F.3d 1226, 1232 (11th Cir. 1996) ("Duke also has a procedural due process right to have his petition to be placed on the ballot to be free from a committee's 'unfettered discretion' in rendering a decision."); *Abrahamson v. Neitzel*, 120 F. Supp.3d 905, 920-21 (W.D. Wis. 2015) ("*Snowden's* statement is jarring to contemporary sensibilities"); *Rivera-Powell v. New York City Board of Elections*, 470 F.3d 458, 464-65 (2d Cir. 2006); *Berg v. Egan*, 979 F. Supp. 330 (E.D. Pa. 1997); *Leroy v. New York City Board of Education*, 793 F. Supp. 2d 533 (E.D.N.Y 2011).

Further, even if *Snowden* survived all of these modern decisions and could still be applied to candidates for State office, Courts have questioned whether it can be applied to candidates for *federal* office. *See Biener v. Calio*, 361 F.3d 206, 216 (3d Cir. 2004) ("We do not decide here whether the *Snowden* holding would extend to *federal* elective offices") (emphasis original).

The Supreme Court's recent ruling in *Bost v. Illinois State Elections Board*, 146 S. Ct. 513 (2026), moreover, reaffirms the conclusion that *Snowden* has been abrogated. In *Bost* the Supreme Court ruled that "candidates also have an interest in a fair process. Candidates are not common competitors in the economic marketplace. They seek to represent the people." *Id*. at 519. Consequently, "the long-shot and shoo-in alike would suffer harm if a State chose to conduct its election by, say, flipping a coin." *Id*. at 519-20. To be sure, *Bost*'s focus was on Article III standing, but its recognition of candidates' federal "interest in fair process" flatly contradicts *Snowden*.

Because candidates have an interest in fair process, procedural Due Process principles must apply. These principles include the holding in *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868 (2009). Contrary to Defendant-BOE's argument that only "personal financial interest [on the part of BOE members] in the outcome, … benefit to either [Preisse or Freedhoff] from the result, [or] … facts showing that either member directed or controlled the party's funding of the protest," BOE Opp., Doc. No. 67, at PageID# 1550-51, could violate Due Process, *Caperton*'s holding is not so narrow and limited. Instead, *Caperton* objectively inquires whether "'the *probability* of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" 556 U.S. at 872 (citation omitted and emphasis added). Plaintiffs have stated their legal claim in their Amended Complaint under *Caperton*'s standard. It is well-pleaded and not futile.

The basic facts supporting Plaintiffs' Due Process claim, as alleged and/or supported by evidence discovered during the preliminary injunction proceeding, can be briefly summarized as follows:

(1) Defendant-Freedhoff chaired the Central Committee of the Franklin County Republican Party (FCRP), *see* Freedhoff Dep., RE 26-4, at PageID# 384;

(2) FCRP on August 26, 2025 contributed $500 to Carey's 2026 congressional campaign, *see* Stipulations, RE 30, at PageID# 1234;

(3) Defendant-Preisse donated $1000 to the 2026 congressional campaign of Plaintiff-Ronan's Republican competitor, Mike Carey, *see* Amended Complaint, Doc. No. 57-1, at PageID # 1435 (¶ 20);

(4) Mike Carey's campaign (Plaintiff-Ronan's lone competitor in the Republican primary) on December 31, 2025 contributed to FCRP, which Defendant-Freedhoff chaired, $10,807.12, *id*.;

(5) Defendant-Freedhoff personally contributed $500 to Carey's 2024 campaign for Ohio's 15th Congressional district, the exact same seat he is running for in 2026 as the incumbent;

(6) FCRP formally endorsed Mike Carey before the 2026 Republican primary election and before Plaintiff-Ronan's hearing before the Franklin County BOE, *see* Freedhoff Dep., Doc No. 26-4, at PageID# 394;

(7) the named protestor, Schare, served on the same FCRP Central Committee with Defendant-Freedhoff, *see* Stipulations, RE 30, at PageID# 1233, Freedhoff Dep., Doc. No. 26-4, at PageID# 407-08;

(8) the protestor, Schare, communicated with Defendant-Freedhoff "regularly" both before and after the protest about Republican party business, *see* Freedhoff Dep., Doc. No. 26-4, at PageID# 410, and told Defendant-Freedhoff that he would see her at the Franklin County BOE hearing where he planned to protest Plaintiff-Ronan, *id*. at PageID# 408;[2]

(9) Defendant-Freedhoff vice-chaired the Ohio Republican Party, *see* Stipulations, RE 30 at PageID# 123;

(10) the Ohio Republican Party financed and directed Schare's protest against Plaintiff-Ronan by using its "staff law firm," which is "the Bricker Law Firm," Triantafilou Dep., RE 29-1, at PageID# 1201,1207, 1225, and which was identified on the record as representing the protestor in the hearing before the BOE; and

(11) Mike Carey's campaign had contacted the chair of the Ohio Republican Party, Alex Triantafilou, *see* Triantafilou Dep., RE 29-1 at PageID# 1223, and "laid out the case for

[2] Schare even referred to Freedhoff as "Boss" in text message exchanges about the protest after the BOE hearing. *Id*. at PageID# 422.

[Triantafilou] as to why this was in the party's interest to support Mike Carey," *id*. at 1224, "by spending money on legal fees" to protest Ronan. *Id*. at PageID# 1225.

Defendant-Freedhoff's claim that she did not realize during the hearing that the organization she vice-chaired, the Ohio Republican Party, was involved with the protest, is of questionable credibility.[3] The Ohio Republican Party's chair testified that the Ohio Republican Party and Bricker law firm, which Defendant-Freedhoff knew from the written protest was formally representing Schare (the protestor) at the BOE hearing, had an ongoing attorney-client relationship. The Ohio Republican Party Chair testified that "the Bricker Law Firm is our staff law firm." Triantafilou Dep., RE 29-1, at PageID# 1207; *see also id*. at PageID# 1225. It is a "standing" relationship, he stated. *Id*. at PageID# 1201. Being second-in-command of the Ohio Republican Party, Defendant-Freedhoff must have known this. But even if she claims she did not, fact-sensitive questions over credibility, veracity and the weight of evidence cannot support Rule 12(b)(6) dismissals. *See*, *e.g*., *Bledsoe v. Emery Worldwide Airlines*, 258 F. Supp. 2d 780, 787 (S.D. Ohio 2003) (denying rule 12(b)(6) motion because of "fact-sensitive question").

In their Amended Complaint, moreover, Plaintiffs' allegation that Defendant-Preisse personally contributed $1000 to Mike Carey's 2026 campaign, *see* Amended Complaint, Doc. No. 57-1, at PageID# 1435 (¶ 20), establishes a personal financial relationship that implicates procedural Due Process even under Defendant-BOE's own terms.

---

[3] Plaintiffs did <u>not</u> stipulate that Freedhoff lacked knowledge of ORP's involvement. Plaintiffs merely stipulated that Freedhoff "*testified* that she had no knowledge of the Ohio Republican Party's paying Schare's lawyers for their actions in handling prior to the March 6, 2026 protest." Stipulations, Doc.30 at PageID# 1234 (emphasis added). Given the facts as alleged, including Respondent Freedhoff's position as the second-highest ranking officer in the Ohio Republican Party, one could notwithstanding this testimony reasonably conclude that she likely was aware of the Ohio Republican Party's involvement.

None of these facts were disclosed to Plaintiffs at or before the hearing. Indeed, Defendant-BOE affirmatively avoided hearing them or disclosing what its members knew, even though Plaintiff-Ronan attempted to uncover them at the hearing. Over Schare's lawyers' repeated objections, Transcript, RE 26-1, at PageID# 256, 260, 261, 262, Plaintiff-Ronan elicited from Schare testimony establishing that he did not sign the protest, did not write it, did not deliver it, *id*. at PageID# 250, had never seen it, *id*. at 253, and was not responsible for paying the three Bricker attorneys whose names were listed on it and who identified themselves as representing only Schare. *Id*. at PageID# 256-62. Schare also testified that he did not know who was paying his lawyers. *Id*. This evidence was all presented during the hearing and Defendant-Freedhoff and Defendant-Preisse were both made aware of it.

In response to Plaintiff-Ronan's additional attempt to specifically uncover whether the Carey campaign, the Franklin County Republican Party or the Ohio Republican Party was involved or was paying Schare's lawyers, *see*, *e.g*., *id*. at PageID# 255-56, Schare's lawyers repeatedly objected, *id*. at PageID# 256, leading Defendant-Preisse to confirm that "the Board is not interested in the payment process," *id*. at PageID# 260, and Defendant-Freedhoff to interject, "Let's move on." *Id*. at PageID# 261. Plaintiff-Ronan's lawyer repeatedly argued to the Board that "this is extremely important to [Ronan's] constitutional defenses," *id*. at PageID# 20, "[i]t is important for the Board to know this information," *id*. at PageID# 262, and even made clear that his questions were designed to uncover whether the Carey campaign, the Ohio Republican Party, or someone else was paying Schare's lawyers and was the real party in interest. *See id*. at PageID# 255, 257, 263. Nevertheless, Defendant-Freedhoff and Defendant-Preisse (who chaired the hearing,) foreclosed further inquiry into the matter. The County Prosecutor at the hearing stated to Plaintiff-

Ronan that "the Board has already indicated they are not going to entertain any further questions regarding the issue of payment for lawyers' services and the representation." *Id*. at PageID# 263.

Had Defendant-Freedhoff and Defendant-Preisse themselves inquired, which they had a constitutional duty to do, *see Wood v. Georgia*, 450 U.S. 261, 272 (1981) (stating that when "the *possibility* of a conflict of interest was sufficiently apparent at the time of the … hearing [that possibility] impose[s] upon the court a duty to inquire further"), or at bare minimum had they directed Schare and his lawyers to answer Plaintiff-Ronan's questions, they would have been presented with evidence establishing that the Ohio Republican Party was financing and directing the protest and that Carey's campaign was directly involved. They would have had to recuse themselves just as judges would have to recuse themselves under similar circumstances.

Federal Rule of Civil Procedure 17(a) states that "[a]n action must be prosecuted in the name of the real party in interest." Courts thus commonly allow parties to discover the identities of those funding litigation. *See*, *e.g*., *Libertarian Party of Ohio v. Husted*, 2014 WL 3928293 (S.D. Ohio 2014). Secret clients are disfavored in judicial proceedings in no small part because of the potential for hidden conflicts of interest. *See IA Labs CA v. Nintendo*, 946 F. Supp.2d 429, 432 n.2 (D. Md. 2013) ("Third-party litigation financing is highly controversial and for some raises core questions about legal ethics. *See* Maya Steinitz, *The Litigation Finance Contract,* 54 Wm. & Mary L. Rev. 455, 484 (2012)"). Litigants need to know who their adversaries are and judges need to know who is appearing before them.

Defendant-Freedhoff and Defendant-Preisse here were acting as administrative judges. As such, they were and are bound by the same Due Process restrictions that *Caperton* applies to State-court judges. Schare's testimony at the protest hearing established that he was not the real party in interest in this case. He was not paying his lawyers, did not know who was, and had nothing to do

with drawing up the protest. Defendant-Freedhoff and Defendant-Preisse knew this. Warning bells were ringing loudly that Mike Carey's campaign and the Ohio Republican Party were likely involved. The participation of either would have required a judge under similar circumstances who had contributed to Carey's campaign or who held office with the real party in interest to recuse under *Caperton*. A judge, moreover, would have inquired. A judge would not have cut off the questioning and quit the inquiry. Administrative judges are no different.

But rather than direct answers from Schare and his attorneys, Defendant-Freedhoff and Defendant-Preisse quit the questioning. They either already knew that the Ohio Republican Party and/or Carey campaign were involved and wanted to keep it secret or wished to remain willfully blind to the probability. Whichever is true, their actions and inaction in this matter violate the Supreme Court's Due Process holding in *Caperton*. Indeed, they "shock the conscience" in violation of Due Process. *See Rochin v. California*, 342 U.S. 165 (1952).

## II. Plaintiffs' Due Process Claim Is Not Moot.

### A. Plaintiffs Pre-Enforcement Due Process Claim is Well-Pleaded and Not Futile.

Plaintiffs have established pre-enforcement standing under Article III. As explained in their Reply to Defendant-LaRose's opposition, *see* Plaintiffs' Reply to Defendant-LaRose's Opposition, at pages 13-15, Plaintiffs have alleged that Plaintiff-Ronan intends to run again in 2028 and beyond in Republican primaries held in Franklin County and intends to convey the exact same message. There is a substantial and credible risk that he will be protested again and appear before the Franklin County Board of Elections again. According to Defendant-BOE, the Franklin County Board of Elections' members are allowed to be politically biased because the Due Process Clause does not apply to them or ballot access proceedings. At bare minimum the risk that this might happen casts a chilling effect on Plaintiff-Ronan's future speech and political campaigning.

The Supreme Court long ago established that plaintiffs may establish standing based on "the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights." *Laird v. Tatum*, 408 U.S. 1, 11 (1972). *See also Chiles v. Salazar*, 607 U.S. 627, 637 n.* (2026) (holding that "chilling effect" supports pre-enforcement standing). Plaintiffs satisfy that standard here. The Amended Complaint is replete with detailed allegations that Plaintiff-Ronan intends to run for federal office in Ohio again as a Republican in future elections, including in Franklin County, and that he intends to engage in political speech that will subject him to the risk of protest and even prosecution. *See* Amended Complaint, Doc. No. 57-1, at PageID# 1439-40 (¶¶ 37-48). Plaintiff-Cordero alleges that she intends to vote for Plaintiff-Ronan in future elections. *Id*. at PageID# 1439 (¶ 39). Those facts are sufficient to establish both Plaintiffs' standing to assert their claims.

Defendant-BOE erroneously asserts that the proposed Amended Complaint's failure to "allege that another protest will be heard by the same members under the same alleged conflicts," BOE Opp., Doc. No. 67, at PageID# 1549, somehow defeats Plaintiffs' standing. Defendant-BOE is incorrect. Plaintiffs' suit is not against the individual Board Members. It is an official capacity suit against whomever occupies the office. Federal Rule of Civil Procedure 25(d) states that "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." That new Board Members might assume office in the future thus cannot defeat Plaintiffs' standing to bring and continue with their case. Nor does it mean that the capable of repetition doctrine does not apply.

Defendant-BOE admits that Plaintiff-Ronan alleges he intends to run again, BOE Opp., Doc. 67, at PageID# 1548, but complains that his failure to "describe a strategy of running

Democrats as Republicans or otherwise make a statement that materially contradicts [his] declaration," *id*. at 1548-49, destroys his standing. Defendant-BOE erroneously ignores, just as Defendant-LaRose did, the language contained in paragraph 38 of the Amended Complaint. There Plaintiffs plainly allege that Ronan "intends to repeat the same political and ideological messages in his 2028 Ohio Republican Party campaign … in Franklin County." Amended Complaint, Doc. No. 57-1, at PageID# 1439 (¶ 38). Plaintiff-Ronan will say the same things in 2028 that he said in 2026 and before. He accordingly risks being removed from the ballot again by BOE members who under Ohio law and the Constitution, Defendant-BOE claims, are allowed to be politically biased. That Ronan's speech and the political biases of Franklin County BOE members in 2028 and beyond might not precisely mirror Ronan's 2026 speech and Defendant-BOE's political biases in 2026 is no moment. As the Supreme Court stated in *Federal Election Commission v. Wisconsin Right to Life*, 551 U.S. 449, 464 (2007), "[h]istory repeats itself, but not at the level of specificity demanded by the FEC."

**B. Plaintiffs' Due Process Claim Is Capable of Repetition Yet Evading Review.**

As Plaintiffs argue in their Reply to Defendant-LaRose's opposition, see Plaintiffs' Reply to Defendant-LaRose's Opposition at pages 16-19, Plaintiffs' claims all fall comfortably within the exception to mootness for controversies that are capable of repetition yet evading review. This is as true for Plaintiffs' Due Process claim as it is for their Elections Clause claim and their First Amendment claim.

Plaintiff-Ronan will say the same things in 2028 that he said in 2026 and before. He accordingly risks being removed from the ballot again by BOE members who under Ohio law and the Due Process Clause are, according to Defendant-BOE, allowed to be politically biased. Given Defendant-BOE's position, its members can be as biased as they want to be. They may finance

candidates who appear before them in adjudicatory matters and can remove those from the ballot who run against their favored and financed candidates. Whether that position is correct and constitutionally proper presents a question that is capable of repetition. Facts in future cases may differ, but the constitutional question will remain the same.

## **Conclusion**

Plaintiffs respectfully request that leave be GRANTED.

Respectfully submitted,

*Mark R. Brown*

Mark R. Brown (81941)
*Counsel of Record*
Newton D. Baker/Baker & Hostetler Chair
CAPITAL UNIVERSITY*
303 East Broad Street
Columbus, Ohio 43215
614.236.6590
mbrown@law.capital.edu

Oliver Hall
Legal Counsel
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
202.248.9294
oliverhall@competitivedemocracy.org

* For purpose of identification only

**CERTIFICATE OF SERVICE**

I hereby certify that this Reply was filed with the Court and notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance. Parties may access this filing through the Court's system.

*Mark R. Brown*

Mark R. Brown

Attorney for Plaintiff