**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SAMUEL RONAN and ANA CORDERO,** | : | |
| | : | **Case No. 2:26-cv-343** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Chief Judge Sarah D. Morrison** |
| | : | |
| **FRANK LAROSE, in his official capacity as** | : | |
| **Secretary of State of Ohio, *et al.*,** | : | **Mag. Judge S. Courter M. Shimeall** |
| | : | |
| **Defendants.** | : | |

**DEFENDANT FRANK LAROSE'S MOTION TO DISMISS AMENDED COMPLAINT**

Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Frank LaRose respectfully moves this Court to dismiss the amended claims against him. A more detailed explanation of the reasons for this Motion can be found in the attached Memorandum in Support.

Respectfully submitted,

D. ANDREW WILSON
Ohio Attorney General

*/s/ Julie M. Pfeiffer*

JULIE M. PFEIFFER (0069762)*
**Counsel of Record*
MARK TUCKER (0036855)
STEPHEN P. TABATOWSKI (0099175)
GREGORY A. RUSTICO (0104103)
TYLER W. BLAIR (0095595)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Julie.Pfeiffer@OhioAGO.gov
Mark.Tucker@OhioAGO.gov
Stephen.Tabatowski@OhioAGO.gov

Gregory.Rustico@OhioAGO.gov
Tyler.Blair@OhioAGO.gov

*Counsel for Defendant Frank LaRose*

**MEMORANDUM IN SUPPORT**

**INTRODUCTION**

"Other cases presenting different allegations and different records may lead to different conclusions." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 507 (2023) (Jackson, J., concurring). But this is the same case, presenting the same allegations and the same record, so it leads to the same conclusion: Plaintiffs' claims fail. Despite the minor amendments to their Complaint, the essence of Plaintiffs' claims remains the same. They believe a candidate can openly lie about his party affiliation—both before and after declaring his candidacy—and election officials are powerless to stop him under Ohio law and the U.S. Constitution. This Court and the Sixth Circuit have already said that is not so. This Court should decline Plaintiffs' request for a do-over.

At the outset, this Court can dismiss the Amended Complaint because Plaintiffs' original claims are moot, and their new claims are not yet ripe. As this Court noted, and the Sixth Circuit agreed, this case arose from "pretty unique facts." Plaintiffs have alleged Ronan will run again, but not that he plans to lie about his party affiliation again. The Amended Complaint gives no reason to believe Ronan will once again violate Ohio Rev. Code § 3513.07.

But even if the Court reaches the merits, Plaintiffs' claims against Secretary LaRose once again fail as a matter of law. This Court and the Sixth Circuit already held that under Ohio Rev. Code § 3513.07, a candidate cannot openly lie about his party affiliation. And that requirement does not run afoul of the First Amendment: it imposes only an incidental burden on candidates that does not outweigh the State's substantial interest in orderly elections. Plaintiffs' claims under the Elections Clause likewise fail because Plaintiffs do not have a private right of action to enforce it and, even if they did, Ohio Rev. Code § 3513.07 is a reasonable regulation of the "Manner" of elections.

Over six months ago, this Court and the Sixth Circuit resolved the dispositive legal issues in Defendants' favor. Nothing has changed. For those reasons, the Court should dismiss the Amended Complaint.

**BACKGROUND**

At this stage in the litigation, the Court is undoubtedly familiar with the facts surrounding Plaintiff Ronan's candidacy and his removal from the May 6, 2026, primary ballot. *See, e.g.*, Dkt. 36 at PageID 1335–40. Because the factual allegations in the Amended Complaint relevant to the claims against Defendant LaRose are materially unchanged, *compare* Compl. ¶¶ 1–31, Dkt. 1 at PageID 1–7, *with* Am. Compl. ¶¶ 1–35, Dkt. 71 at PageID 1589–96, Defendant LaRose incorporates by reference the Background Section from his previous Motion to Dismiss, Dkt. 24 at PageID 146–47. This brief will instead summarize the subsequent developments.

On March 20, 2026, Ronan and one of his supporters filed this suit against Secretary LaRose and the members of the Franklin County Board of Elections. *See generally* Compl., Dkt. 1. They alleged Defendants violated their "speech, associational and voting rights as guaranteed by the First and Fourteenth Amendments" and their "rights under the federal Elections Clause in Article I, § 4." Compl. ¶¶ 48, 52, PageID 11–12. Additionally, Plaintiffs alleged Defendants Freedhoff and Preisse violated his due process rights. Compl. ¶¶ 54–58, Dkt. 1 at PageID 13.

Plaintiffs moved the Court for a temporary restraining order and a preliminary injunction. *See generally* Dkt. 2; Dkt. 2-1. That same day, the Court held an informal conference to consider the matter. Dkt. 4; Dkt. 9. Because UOCAVA ballots were required to be mailed out that day, and the Court thought Plaintiffs were likely to succeed on the merits of their First Amendment claim, the Court issued a temporary restraining order for fourteen days. Dkt. 10. The Court also ordered expedited discovery, set a briefing schedule, and scheduled a preliminary injunction hearing for April 2, 2026. Dkt. 10; Dkt. 14.

After considering the evidence and arguments of the Parties, this Court denied the motion for a preliminary injunction and dissolved the temporary restraining order. PI Hr'g Tr. at 71–76, Dkt. 34 at PageID 1319–24. Plaintiffs were unlikely to succeed on the merits of their First Amendment claims because Ohio Rev. Code § 3513.07 "imposes a reasonable, nondiscriminatory, and minimal burden" on their First Amendment rights, and the State's substantial interests in regulating elections outweigh that burden. *Ronan v. LaRose* (*Ronan I*), No. 2:26-cv-343, 2026 U.S. Dist. LEXIS 75818, at *16–19 (S.D. Ohio Apr. 6, 2026). The Court further held that Plaintiffs' Elections Clause claims were unlikely to succeed because Plaintiffs had no private right of action to enforce the Elections Clause. *Id.* at *25.

In reaching its conclusions, this Court noted Defendants had relied in part "on a statement Mr. Ronan made *after* he signed his declaration of candidacy, where he admitted to following a strategy to run Democrats as Republicans in 'deep red districts' so that Democrats could win." *Id.* at *20. As this Court explained, Ronan's statement "directly conflicted with his declaration of candidacy, where he affirmed his membership in the Republican Party and his intent to uphold the Party's ideals." *Id.* And it was based on "this objective evidence of direct contradiction" that "Secretary LaRose determined that Mr. Ronan's declaration was false." *Id.*

Plaintiffs appealed. *See Ronan v. LaRose* (*Ronan II*), No. 26-3272, 2026 U.S. App. LEXIS 10144, at *2 (6th Cir. Apr. 6, 2026). In the Sixth Circuit, Plaintiffs requested an injunction pending their appeal and an administrative stay. *Id.* The Sixth Circuit denied the motion because Plaintiffs were unlikely to succeed on the merits of any of their claims. *Id.* at *5–10. The court found that the "good-faith requirement" in Ohio Rev. Code § 3513.07 did not violate the First Amendment or the Elections Clause. *Id.* at *6–9.

After the primary election passed, Defendants moved to dismiss the appeal as moot, and Plaintiffs asked for vacatur under *United States v. Munsingwear*, 340 U.S. 36 (1950). *Ronan v.*

*LaRose* (*Ronan III*), No. 26-3272, 2026 U.S. App. LEXIS 18482 (6th Cir. June 24, 2026). The Sixth Circuit dismissed, but it declined to vacate this Court's opinion. *Id.* at *1–2.

On remand, the Magistrate Judge granted Plaintiffs leave to file an Amended Complaint, because he believed he did not have the authority to adjudicate Defendants' futility objections. Dkt. 70 at PageID 1587. The Amended Complaint contains some minor edits and additions, such as allegations that Ronan is "ready, able and qualified to run in Ohio Republican Party congressional primaries in Ohio, including those in Franklin County, in 2028 and the future." Am. Compl. ¶ 47, Dkt. 71 at PageID 1598. The Amended Complaint also contains legislative history from 1995 that Plaintiffs say supports their interpretation of Ohio Rev. Code § 3513.07. Am. Compl. Ex. H, Dkt. 71 at PageID 1649–65. Plaintiffs also added allegations about arguments made by a previous Ohio Secretary of State in a 2012 lawsuit. Am. Compl. ¶¶ 60–64, Dkt. 71 at PageID 1600–02.

## LAW AND ARGUMENT

### A. Motions under Rule 12(b)(6) and facial attacks under Rule 12(b)(1) employ the same legal standard.

"A facial attack [under Rule 12(b)(1)] goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citation omitted). "This approach is identical to the approach used by the district court when reviewing a motion invoking Federal Rule of Civil Procedure 12(b)(6)." *Glob. Tech., Inc. v. Yubei (Xinxiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (citation omitted).

### B. Because the 2026 primary has passed, Plaintiffs' fact-bound claims are now moot, and any claims based on future elections are not yet ripe.

This Court's jurisdiction is limited to "Cases" and "Controversies." U.S. Const. art. III, § 2. "If 'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome,' then the case is moot and the court has no jurisdiction." *Libertarian Party of Ohio v.*

*Blackwell*, 462 F.3d 579, 584 (6th Cir. 2006) (quoting *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979)).

Courts have recognized an exception to the traditional mootness doctrine for cases that are capable of repetition yet evading review. "To be capable of repetition but evading review, a dispute must satisfy a two-pronged test. First, the challenged action must be too short in duration for the parties to fully litigate it before it becomes moot. And second, there must be 'a reasonable expectation that the same complaining party will be subject to the same action again.'" *Thompson v. Dewine*, 7 F.4th 521, 525 (6th Cir. 2021) (quoting *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)). In election cases, courts "relax" this inquiry, "[s]o plaintiffs need not show that the same controversy will recur 'down to the last detail.'" *Id.* (quoting *Wis. Right to Life*, 551 U.S. at 463). But a mere possibility of repetition is not enough. *See id.* (citation omitted). "So a case 'is not capable of repetition if it is based on a unique factual situation.'" *Id.* (quoting *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 560 (6th Cir. 2021)).

A helpful example comes from *Thompson v. DeWine*, where the plaintiffs challenged COVID-19 restrictions on the collection of petition signatures for the 2020 election. 7 F.4th at 522–23. When their case reached the Sixth Circuit, the 2020 election had passed, but the plaintiffs desired to collect signatures for future elections. *Id.* at 524. However, the court found the "unique factual situation" was unlikely to recur despite plaintiffs alleging COVID-19 remained a "full blown crisis." *Id.* at 526 (citing *Memphis A. Philip Randolph Inst.*, 2 F.4th at 560). Because of the "unique harm alleged," this was not a controversy that "'almost invariably will recur with respect to some future' ballot initiatives." *Id.* (quoting *Lawrence v. Blackwell*, 430 F.3d 368, 372 (6th Cir. 2005)).

Here, as in *Thompson*, Plaintiffs have failed to satisfy the second element of the test. At the preliminary injunction hearing, this Court aptly noted that this case presents "unique factual circumstance[s]." Dkt. 34 at PageID 1322; *see also Ronan I*, 2026 U.S. Dist. LEXIS 75818 at *19

(noting "this case is limited to the unique facts presented here"). The Sixth Circuit agreed. *Ronan II*, 2026 U.S. App. LEXIS 10144, at *8 ("That's especially true in the case before us, which as the district court noted, presents 'unique factual circumstance[s].'"). As the Sixth Circuit recounted, "Ronan swore that he was a Republican and would abide by Republican Party doctrine; afterwards he made public statements that the factfinders here could reasonably decide showed that Ronan had made those declarations in bad faith." *Id.*

Plaintiffs do not allege that these unique facts are likely to recur. It is not enough that Ronan "intends to run in Ohio Republican Party congressional primaries" and "repeat the same political and ideological messages." Am. Compl. ¶¶ 37–38, Dkt. 71 at PageID 1597. His "political and ideological messages" were not what ran afoul of Ohio Rev. Code § 3513.07. Recall that "*after* Mr. Ronan declared his intent to run as a Republican, he publicly stated that his candidacy was part of his strategy to run Democrats as Republicans." *Ronan I*, 2026 U.S. Dist. LEXIS 75818, at *2 (emphasis added). Plaintiffs have not alleged, for instance, that Ronan intends to make these same kinds of statements again after signing a declaration of candidacy. Put simply, the mere fact that Ronan plans to run in future Republican primaries does not mean he will seek to do so in bad faith or lie in a future declaration of candidacy. Ronan was removed because his conflicting statements presented "objective evidence of direct contradiction" with his sworn declaration of candidacy. *Ronan I*, 2026 U.S. Dist. LEXIS 75818, at *16–19. Those are the "unique facts" that this case presents, and it is not capable of repetition as a result. *See Libertarian Party of Ohio*, 462 F.3d at 584.

Plaintiffs' citation to *Libertarian Party of Ohio v. Blackwell* does not alter this conclusion. *See* Am. Compl. ¶ 48, Dkt. 71 at PageID 1598. There, the plaintiffs challenged Ohio's requirements that all political parties select candidates through primaries and that minor parties file a petition 120 days before the primary. 462 F.3d at 582. The case was capable of repetition yet evading review

because the plaintiffs would face the same requirements for the next election. *Id.* at 585. Unlike here, the dispute in *Libertarian Party of Ohio* was not fact-bound; it was a pure legal question. Plaintiffs will likely counter that Ohio Rev. Code § 3513.07 remains in place, but this argument ignores the fact that "this case is limited to the unique facts presented here." *Ronan I*, 2026 U.S. Dist. LEXIS 75818, at *19. There is no allegation that Ronan will once again declare his candidacy as a Republican and then *afterwards* say he is actually a Democrat. Accordingly, "[t]here is not a reasonable expectation" that Ronan "will face the same burdens" he allegedly faced at the May 2026 primary election. *See Thompson*, 7 F.4th at 526 (quoting *Memphis A. Philip Randolph Inst.*, 2 F.4th at 560). Said differently, the Amended Complaint does not describe a controversy that "almost invariably will recur." *Id.* (quoting *Lawrence*, 430 F.3d at 372).

For many of the same reasons, any new claims based on Ronan's future candidacy for office are not yet ripe. A claim is ripe when "(1) the plaintiff alleges 'an intention to engage in a course of conduct' implicating the Constitution and (2) the threat of enforcement of the challenged law against the plaintiff is 'credible.'" *Platt v. Bd. of Commrs. on Grievs. & Discipline of the Ohio Supreme Court*, 769 F.3d 447, 451 (6th Cir. 2014) (quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979)). The limited allegations in the Amended Complaint do not present a ripe claim arising from a future Ronan candidacy. That is again because Plaintiffs have not alleged Ronan intends to lie again about his party affiliation in his declaration of candidacy, and thus they have not alleged he has "an intention to engage in a course of conduct" proscribed by Ohio Rev. Code § 3513.07. *Platt*, 769 F.3d at 451. As a result, Plaintiffs have not alleged a ripe claim arising from a future candidacy for office.

Ultimately, Ronan remains free to run in future Republican primaries. So long as he does so in compliance with Ohio law, including truthfully declaring his candidacy, this issue will not recur—and Plaintiffs have not alleged Ronan intends to do otherwise. Their claims are thus moot and not

capable of repetition yet evading review, and their future-candidacy claims are not yet ripe. This Court should dismiss the Amended Complaint.

### C. As this Court and the Sixth Circuit have already concluded, Ohio Rev. Code § 3513.07 does not violate the First Amendment or the Elections Clause.

Jurisdictional problems aside, Plaintiffs' claims also fail on the merits. Ohio Rev. Code § 3513.07 passes constitutional muster under both the First Amendment and the Elections Clause. Therefore, even if the Amended Complaint presents a justiciable, live controversy, it nonetheless fails to state a valid claim and should be dismissed.

#### 1. Section 3513.07 does not violate the First Amendment, either facially or as applied to Ronan.

Start with Plaintiffs' First Amendment claims, which are ballot-access claims governed by the familiar *Anderson-Burdick* framework. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992); *Kishore v. Whitmer*, 972 F.3d 745, 749 (6th Cir. 2020) (citing *Anderson* 460 U.S. at 780; *Burdick*, 504 U.S. at 441) (holding *Anderson-Burdick* "governs First and Fourteenth Amendment challenges to ballot-access restrictions"). Under *Anderson-Burdick*, "the rigorousness of [the court's] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Kishore*, 972 F.3d at 749 (quoting *Burdick*, 504 U.S. at 434). Thus, *Anderson-Burdick* imposes a "sliding-scale framework" and requires courts to: "(1) evaluate whether an election restriction imposes a severe or incidental burden; (2) assess the state's interests in the restriction; and (3) ask if the state's interests make the burden necessary." *Kowall v. Benson*, 18 F.4th 542, 546 (6th Cir. 2021) (citation omitted). Here, Ohio's declaration of candidacy requirements easily satisfy scrutiny under *Anderson-Burdick*.

**a. This Court and the Sixth Circuit already found Ohio's declaration-of-candidacy requirement imposes a minimal burden on First Amendment rights.**

Burden is analyzed on a spectrum. On one end are laws that impose a "severe" burden—those must be "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). On the other end are laws that impose "reasonable, nondiscriminatory restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788). Those laws are "subject to rational-basis review and 'the State's important regulatory interests are generally sufficient to justify'" them. *Id.* When laws impose "an intermediate restriction that falls somewhere between those two poles," courts "weigh the burden imposed by the State's regulation against 'the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Thompson v. DeWine*, 959 F.3d 804, 808 (6th Cir. 2020) (per curiam) (quoting *Burdick*, 504 U.S. at 434).

As this Court held, Ohio Rev. Code § 3513.07 "imposes a reasonable, nondiscriminatory, and minimal burden on Mr. Ronan's First Amendment rights and is subject to rational basis review." *Ronan I*, 2026 U.S. Dist. LEXIS 75818, at *18. Anyone who wishes to compete in an Ohio primary must declare their "desir[e] to be a candidate for a party nomination or a candidate for election to an office or position to be voted for at a primary election" publicly. Ohio Rev. Code § 3513.07. The declaration includes attestations both that the candidate is a member of and "will support and abide by the principles enunciated by" the party from whom they seek nomination. *Id.* And "Ohio Revised Code § 3599.36 explicitly prohibits a candidate from knowingly making a false statement, 'including a statement required for verifying or filing any declaration of candidacy,' such as party affiliation." *Ronan I*, 2026 U.S. Dist. LEXIS 75818, at *12–13.

These requirements impose a minimal burden on the associational rights of individual candidates and voters. Indeed, in *Morrison v. Colley*, 467 F.3d 503 (6th Cir. 2006), the Sixth Circuit held that a comparable disaffiliation requirement for independent candidates was "merely a reasonable, nondiscriminatory regulation." *Id.* at 508. The Court held that requiring "would-be independent candidates to claim . . . that they are free of affiliation with any political party" did not impose a severe burden, and furthered the State's "substantial and compelling" interest in "protecting its electoral process by encouraging political stability, ensuring that the winner of the election will represent a majority of the community, providing the electorate with an understandable ballot, and enhancing voter education." *Id.* at 508. The inverse—requiring those seeking to be a party's standard-bearer to truthfully declare they belong to that party and intend to advance its policies—makes sense.

Applying these principles to candidates like Ronan, the declaration of candidacy burden is minimal. He has no fundamental right to public employment, *Snowden v. Hughes*, 321 U.S. 1, 6–7 (1944), nor to run for public office, *Kowall*, 18 F.4th at 548–49. And, more generally, candidacy restrictions are "a means of restricting the candidates who may appear on the ballot" and "do[] not inhibit [a candidate's] ability freely to write, speak, organize campaigns, or promote any set of political beliefs that he wishes." *See Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012) (citing *Jenness v. Fortson*, 403 U.S. 431, 438 (1971)). The Secretary's application of Ohio Rev. Code § 3513.07 "does not have the effect of preventing the expression of political views or the forming of groups" for the purpose of associating politically. *See Corrigan v. City of Newaygo*, 55 F.3d 1211, 1215 (6th Cir. 1995) (upholding ordinance prohibiting anyone in default to the city from appearing on ballot in local elections). It merely prevents voter confusion and facilitates intraparty cohesiveness and fairness in a State-run process to elect party nominees.

At bottom, Plaintiffs appear to misunderstand the nature of the burden imposed by Ohio Rev. Code § 3513.07. It is not an ideological purity test. Ronan was not removed from the ballot because he "lacked political and/or ideological good faith." *See* Am. Compl. ¶ 63, Dkt. 71 at PageID 1601. He was removed because he lied about his party affiliation and then admitted as much. *See Ronan I*, 2026 Dist. LEXIS 75818, at *2 (noting that "after Mr. Ronan declared his intent to run as a Republican, he publicly stated that his candidacy was part of his strategy to run Democrats as Republicans in primary elections"). When the Secretary and this Court speak of a "good faith" requirement, it has nothing to do with the "subjective conclusions" of Defendants, but rather the objective question of whether a candidate is "knowingly making a false statement." *Id.* at *12 (citing Ohio Rev. Code § 3599.36); *see also id.* at *20 (noting "objective evidence of direct contradiction"). As this Court summarized, "candidates may 'self-identify' with a political party for a primary election, and election officials generally must take them at their word. That said, where, as here, the candidate later states that he does not self-identify with the party he included on his declaration, election officials can use that speech to remove him from the ballot." *Id.* at *18.

Ohio's declaration of candidacy requirements thus impose, at most, a minimal burden under *Anderson-Burdick*. *See Ronan II*, 2026 U.S. App. LEXIS 10144, at *7–8. They are reasonable regulations that govern the declaration-of-candidacy process in a nondiscriminatory way. As the Supreme Court observed, enforcement of laws "limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable." *Burdick*, 504 U.S. at 440 n.10 (citation omitted).

#### b. Both this Court and the Sixth Circuit found the State has a substantial interest in regulating its elections.

Without allegations of a severe burden, the State's "important regulatory interests" in the challenged law suffice. *Kowall*, 18 F.4th at 546. Indeed, "when a State's ballot access laws pass

constitutional muster as imposing only reasonable burdens on First and Fourteenth Amendment rights," a particular restriction "will be presumptively valid, since any burden on the right to vote for the candidate of one's choice will be light and normally will be counterbalanced by the very state interests supporting the ballot access scheme." *Burdick*, 504 U.S. at 441. When only minimal burdens are imposed, as here, laws are reviewed under a standard "akin to rational-basis review." *Ohio Council 8 Am. Fed'n of State Cnty. & Mun. Emps. v. Husted*, 814 F.3d 329, 338 (6th Cir. 2016) (citing *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 546 (6th Cir. 2014)).

No one denies that Ohio has an "important regulatory interest in the orderly administration of elections." *See Mays v. LaRose*, 951 F.3d 775, 792–93 (6th Cir. 2020). Indeed, states "may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (citing *Burdick*, 504 U.S. at 433). And orderly elections walk hand-in-hand with election integrity. *See Jolivette v. Husted*, 886 F. Supp. 2d 820, 828 (S.D. Ohio 2012) (citation omitted).

By requiring a candidates to attest that they belong to the party from which they seek a nomination, and that they will support and abide by that party's principles, Ohio "prevents splintered parties and unrestrained factionalism, avoids political fragmentation, and maintains the integrity of the ballot." *Morrison*, 467 F.3d at 508. These interests are particularly acute in Ohio's primary system, because primary voters pick between ballots separated by party. Ohio Rev. Code § 3513.13. Without Ohio's declaration of candidacy requirements, any individual could run for any party regardless of whether they were a member of that party, believed in its principles, or intended to advance them. Nominees could be hostile to the party's values, and party labels would be far less meaningful, if not meaningless. This means primary voters would have no idea which party's ballot to choose. The Supreme Court has recognized this risk of confusion in a primary system like Ohio's—where, by law, the winner is a party's nominee and representative. *Cf. Wash. State Grange*

*v. Wash. State Republican Party*, 552 U.S. 442, 453–55 (2008) (discussing the role of party designations in an open primary). Ohio's declaration of candidacy requirements thus prevent widespread voter confusion and primary election chaos.

To put it simply, "Ohio has a substantial interest in barring prospective primary election candidates from fraudulently attesting they belong to a political party that they do not." *Ronan I*, 2026 U.S. Dist. LEXIS 75818, at *18 (citing *John Doe No. 1 v. Reed*, 561 U.S. 186, 197 (2010)); *Ronan II*, 2026 U.S. App. LEXIS 10144, at *8.

#### c. Plaintiffs' new allegations do not alter this Court's First Amendment analysis.

***Judicial Estoppel.*** In the Amended Complaint, Plaintiffs cite arguments a previous Ohio Secretary of State made over a decade ago when litigating a case about independent candidates. Am. Compl. ¶¶ 60–62, Dkt. 71 at PageID 1600–01. But these out-of-context statements do not estop Defendant LaRose from asking this Court to apply the law as written. *See* Am. Compl. ¶ 63, Dkt. 71 at PageID 1601. Generally, judicial estoppel prevents a party from asserting a position contrary to one asserted under oath in a prior proceeding that the prior court adopted. *See Audio Technica U.S., Inc. v. United States*, 963 F.3d 569, 575 (6th Cir. 2020) (citations omitted). The doctrine is only applied where "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *Id.* (citations omitted). It is "construed even more narrowly when requested against the government." *Id.* at 576 (citing *United States v. Owens*, 54 F.3d 271, 275 (6th Cir. 1995)). And it only applies where the positions at issue are "clearly contradictory." *Audio Technica U.S.*, 963 F.3d at 575 (citation omitted).

Here, they are not. The Secretary continues to believe "partisan candidates may change parties without input or approval from the board of elections," and "[p]artisan candidates face a

vetting process that exists in the form of a primary election." *See* Am. Compl. ¶¶ 60, 62, Dkt. 71 at PageID 1600–01. Those arguments are not inconsistent with the Secretary's position that under Ohio Rev. Code § 3513.07, a candidate signing a declaration of candidacy must aver to its contents under penalty of election falsification and, thus, in good faith. Candidates remain free to "'self-identify' with a political party for a primary election, and election officials generally must take them at their word." *Ronan I*, 2026 U.S. Dist. LEXIS 75818, at *18. But the First Amendment does not require the State to sit idly by and permit a fraudulent candidacy. *See id.* Because these two positions are not "clearly contradictory," *see Audio Technica U.S.*, 963 F.3d at 575, judicial estoppel has no application here.

***Legislative History.*** Plaintiffs also direct this Court to a 1995 memorandum to the State House of Representatives' Campaign Finance Reform Task Force, drafted by State Representative Scott Nein. Am. Compl. ¶ 54, Dkt. 71 at PageID 1599. The Nein memo concerns 1995 House Bill 99 which, among other things, added current subsection (B) to Ohio Rev. Code § 3513.191. The Nein memo claims that the addition of subsection (B) "[a]llows a person to run for election in a party primary regardless of their party affiliation." Am. Compl. Ex. H, Dkt. 71 at PageID 1653.

This argument is nothing new. When Plaintiffs moved the Sixth Circuit for an injunction pending appeal, they argued that Ohio Rev. Code § 3513.191(B) "authorizes any candidate in Ohio who is not presently holding an elective office to run for office in 'any' political party primary no matter his or her prior party affiliation," and regardless of whether their party-affiliation declaration was made in good faith. *Ronan II*, 6th Cir. No. 26-3272, Mot. for Prelim. Inj. Pending Appeal, Dkt. 10 at Page 11–12 (Apr. 3, 2026); *see also* Dkt. 26 at PageID 207 (arguing to the district court that "§ 3513.191(B)'s language is plain" and permits "[a]ny candidate [to] run in any party's primary"). The Sixth Circuit disagreed, holding that "Ohio law requires that change to be made in good faith." *Ronan II*, 2026 U.S. App. LEXIS 10144, at *6.

The Nein memo does not compel a different conclusion. Start with the basic principle that a statute's meaning is best derived "from the words of the statute itself" and not from a "patchwork record of statements inserted by individual legislators." *Isle Royale Boaters Ass'n v. Norton*, 330 F.3d 777, 784-85 (6th Cir. 2003) (quoting *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304–05 (4th Cir. 2000), *aff'd*, 534 U.S. 438 (2002)). Legislators' statements "are almost always cacophonous," *Isle Royale Boaters Assn.*, 330 F.3d at 785, and cannot trump "the collective votes" of the legislature as expressed "in the unambiguous statutory text," *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 457 (2002).

With that in mind, return to the text of Ohio Rev. Code § 3513.07. It requires candidates to sign a declaration of candidacy stating: "I am a member of the ___________ Party," and "I further declare that, if elected to said office or position, I will qualify therefor, and that I will support and abide by the principles enunciated by the __________ Party." Importantly, the declaration also contains a notice that "whoever commits election falsification is guilty of a felony of the fifth degree." *Id.* Thus, candidates must declare their party affiliation and "the requirement to do so in 'good faith' is not implied"—it is enforced via criminal penalty. *See Ronan I*, 2026 U.S. Dist. LEXIS 75818, at *12–13. A single statement by one legislator cannot override the unambiguous text of Ohio Rev. Code § 3513.07, which "requires that change to be made in good faith." *See Ronan II*, 2026 U.S. App. LEXIS 10144, at *6 (citation omitted).

Plaintiffs' suggestion to the contrary "violates the fundamental precept that '[w]e are governed by laws, not by the intentions of legislators.'" *FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd.*, 146 S. Ct. 1546, 1557 (2026) (quoting *Conroy v. Aniskoff*, 507 U. S. 511, 519 (Scalia, J., concurring in judgment)). Deriving statutory intent from the statements of individual legislators, in other words, is like "entering a crowded cocktail party and looking over the heads of the guests for one's friends." *Id.* That would be true in any event, but it is even more so here, where the Sixth Circuit has already determined the meaning of the statute. *Ronan II*, 2026 U.S.

App. LEXIS 10144, at *6. This Court should resist Plaintiffs' invitation to ignore precedent by picking the heads of Plaintiffs' friends.

But even if this Court were to entertain the Nein memo, it does not support Plaintiffs' claims in the way they hope. The relevant line in the memo states a person may "run for a party primary regardless of their party affiliation." Am. Compl. Ex. H at 5, Dkt. 71 at PageID 1653. When viewed in context with the previous version of the statute and the rest of the statutory scheme, it appears Nein meant "regardless of their [previous] party affiliation." Otherwise, Nein's memo contradicts the statutory requirement that a candidate declare under penalty of election falsification that he is (1) a member of the party and (2) will support and abide by the party's principles. Ohio Rev. Code § 3513.07. And regardless, the memo does not purport to authorize a candidate to openly lie in their declaration of candidacy, so it has no role to play in this case.

As this Court and the Sixth Circuit correctly concluded, Ohio's requirement that candidates honestly declare their party affiliation imposes only minimal burdens and furthers a substantial state interest. It therefore does not violate the First Amendment, and the amendments to Plaintiffs' original Complaint do not compel a different conclusion. This Court can therefore dismiss Count I for failure to state a claim.

**2. Count II fails to state a claim because Plaintiffs do not have a right to sue for a violation of the Elections Clause. Regardless, Ohio Rev. Code § 3513.07 is within the State's authority to regulate the "Manner" of primary elections.**

**a. As this Court already held, the Elections Clause provides neither a private right of action nor any "rights, privileges, or immunities" that an individual can vindicate through 42 U.S.C. § 1983.**

The mere fact that federal law or the Constitution "has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979). If the Constitution is silent as to conferring a private right of action, then none exists. *See, e.g.*, *Keweenaw Bay Indian Cmty. v. Rising*, 477 F.3d 881, 894 (6th

Cir. 2007) (analyzing U.S. Const. art. I, § 8); *City of Detroit v. Sec'y of Commerce*, 4 F.3d 1367, 1376 (6th Cir. 1993) (analyzing U.S. Const. art. I, § 2).

Large segments of the Constitution merely "instruct" government actors on how to function and are "silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015). The Elections Clause fits into this category. It authorizes States to prescribe "the Times, Places and Manner of holding Elections for Senators and Representatives." U.S. Const. art. I, § 4. It does not confer a private right of action.

Nor is the Elections Clause the source of any individual federal "rights, privileges, or immunities" that could be the basis of a claim under 42 U.S.C. § 1983. *Cf., e.g.*, *Lance v. Coffman*, 549 U.S. 437, 441–42 (2007) (per curiam) (finding voters lacked standing to sue under the Elections Clause); *Lindsey v. Whitmer*, 124 F.4th 408, 413–15 (6th Cir. 2020) (finding legislators lacked standing to sue under the Elections Clause). Rather, the Elections Clause merely provides the States authority to regulate congressional elections. *See Bognet v. Sec'y Pa.*, 980 F.3d 336, 349 (3d Cir. 2020), *vacated as moot*, 141 S. Ct. 2508 (2021).

Most importantly, this Court already found Plaintiffs have "no private right of action to enforce a violation of the Elections Clause." *Ronan I*, 2026 U.S. Dist. LEXIS 7818, at *25. Nothing has changed in the last six months to alter that conclusion. Accordingly, Plaintiffs fail to state a claim because they have no private right of action, and thus no standing, to enforce the Elections Clause against Defendants. This Court can and should dismiss Count II on this basis alone.

**b. Regardless, as the Sixth Circuit already held, Plaintiffs have failed to plead a violation of the Elections Clause: Ohio Rev. Code § 3513.07 regulates the "Manner" of elections.**

Article I confers on the states the power for "substantial regulation of elections" so that elections will "be fair and honest and [have] some sort of order, rather than chaos, [in] the democratic

processes." *Burdick*, 504 U.S. at 433 (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974) (upholding California law requiring independent congressional candidates be unaffiliated for one year before the primary)). While this authorizes States "to provide a complete code for congressional elections," *Smiley v. Holm*, 285 U.S. 355, 366 (1932), it does not permit States to "dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional restraints," *United States Term Limits v. Thornton*, 514 U.S. 779, 833–34 (1995). A state's manner of regulating elections "encompasses matters like 'notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns.'" *Cook v. Gralike*, 531 U.S. 510, 523–24 (2001) (citing *Smiley*, 285 U.S. at 366).

Here, Plaintiffs argue Ohio Rev. Code § 3513.07, as applied to Ronan, falls outside the Elections Clause "by adding substantive qualifications to those spelled out in the federal constitution." Am. Compl. ¶ 88, Dkt. 71 at PageID 1607. But much like the restrictions on primary elections in *Burdick* and the disaffiliation requirement from *Morrison* and *Jolivette*, the declaration requirement from Ohio Rev. Code § 3513.07 concerns the "Manner" of elections. *See Burdick*, 504 U.S. at 430, *Morrison*, 467 F.3d at 508, and *Jolivette*, 694 F.3d at 766–67. The declaration requirement provides for the orderly execution of primary elections by properly sorting candidates onto the proper ballots. In Ohio, a primary voter must decide which ballot to complete at the polls. Ohio Rev. Code § 3513.13. Without a method for sorting candidates based on their good faith affiliations, a voter would be confused about which ballot to select. It provides for the "protection of voters" and the "prevention of fraud or corrupt practices." *See Gralike*, 531 U.S. at 523–24. Additionally, it serves the State's strong interest "to protect the integrity of its political processes from frivolous or fraudulent candidacies." *See Bullock v. Carter*, 405 U.S. 134, 145 (1972); *see also Norman*, 502 U.S. at 290 (holding that to "prevent misrepresentation and electoral confusion" States

may prohibit a candidate's use of a party name when they "are not in any way affiliated with the party").

Critically, the Sixth Circuit has already said that "the good-faith requirement under Ohio law likely does not exceed constitutional bounds"—either under the First Amendment or the Elections Clause—because '[s]tates may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Ronan II*, 2026 U.S. App. LEXIS 10144, at *9 (quoting *Timmons*, 520 U.S. at 358).

To their credit, Plaintiffs have slightly adjusted their Elections Clause claim in response. They now also allege Ronan's removal "contradicts the statutory scheme put in place by the Ohio General Assembly and accordingly violates Article I's Elections Clause." Am. Compl. ¶ 87, Dkt. 71 at PageID 1606. But this allegation fails to state a claim for two reasons. First, this Court has already said Ohio law "explicitly prohibits a candidate from knowingly making a false statement, 'including a statement required for verifying or filing any declaration of candidacy,' such as party affiliation." *Ronan I*, 2026 U.S. Dist. LEXIS 75818, at *12–13 (quoting Ohio Rev. Code § 3599.36). So Ronan's removal was consistent with state law. Second, even if Defendants somehow violated Ohio law, this Court is not the proper venue for resolving state-law disputes. *See infra* Section D (discussing *Pullman* and *Pennhurst*).

Because the good-faith-declaration requirement in Ohio Rev. Code § 3513.07 concerns the "Manner" of primary elections, it falls within the authority conferred on the States in the Elections Clause. This Court should dismiss Count II for failing to state a claim.

### D. Alternatively, in light of Plaintiffs' new allegations regarding the interpretation of Ohio Rev. Code § 3513.07, the Court could abstain under *Pullman* or dismiss under *Pennhurst*.

Defendant LaRose recognizes this Court previously declined to abstain under *Railroad Commissioners of Texas v. Pullman Co.*, 312 U.S. 496 (1941). *See Ronan I*, 2026 U.S. Dist. LEXIS

75818, at *10–13. The Court found "there is nothing unsettled about the application of Ohio Rev. Code § 3513.07" because "Ohio Revised Code § 3599.36 explicitly prohibits a candidate from knowingly making a false statement, 'including a statement required for verifying or filing any declaration of candidacy,' such as party affiliation." *Id.* at *12–13.

Defendant LaRose agrees with the Court's interpretation of Ohio law. But to the extent Plaintiffs' additional allegations about Ohio Rev. Code § 3513.07 undermine the Court's conclusion—which they should not—*Pullman* abstention is appropriate "to provide the state court an opportunity to settle the underlying state-law question, and thus avoid the possibility of unnecessarily deciding a constitutional question." *Harris Cnty. Comm'rs Ct. v Moore*, 420 U.S. 77, 83 (1975) (citing *Pullman*, 312 U.S. at 496). Put another way, if Plaintiffs are correct that Ohio law allows for a bad-faith declaration of party affiliation, then Defendants violated state law, which the state courts can remedy without this Court having to resolve any constitutional questions. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law.").

But again, this Court need not resort to *Pullman* or *Pennhurst*, because this case is straightforward. The relevant legal issues have already been resolved by this Court and affirmed by the Sixth Circuit. Nothing has materially changed that would yield a different result. Thus, this Court should dismiss the Amended Complaint.

## CONCLUSION

For the foregoing reasons, Secretary LaRose respectfully requests this Court dismiss all claims against him and dismiss him as a party.

Respectfully submitted,

D. ANDREW WILSON
Ohio Attorney General

*/s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762)*
**Counsel of Record*
MARK TUCKER (0036855)
STEPHEN P. TABATOWSKI (0099175)
GREGORY A. RUSTICO (0104103)
TYLER W. BLAIR (0095595)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Julie.Pfeiffer@OhioAGO.gov
Mark.Tucker@OhioAGO.gov
Stephen.Tabatowski@OhioAGO.gov
Gregory.Rustico@OhioAGO.gov
Tyler.Blair@OhioAGO.gov

*Counsel for Defendant Frank LaRose*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2026, the foregoing was filed with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance. Parties may access this filing through the Court's system.

*/s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762)
Assistant Attorney General