**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SAMUEL RONAN, *et al.*,** | : | |
| | : | |
| **Plaintiffs,** | : | **No. 2:26-cv-343** |
| | : | |
| **v.** | : | **Chief District Judge Sarah D. Morrison** |
| | : | |
| **FRANK LAROSE, in his official capacity as Secretary of State of Ohio, *et al.*,** | : | **Magistrate Judge S. Courter Shimeall** |
| | : | |
| | : | |
| **Defendants.** | : | |

**DEFENDANTS PREISSE, FREEDHOFF, SHUMAKER, AND SEXTON'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendants Douglas J. Preisse, in his official capacity as Chair of the Franklin County Board of Elections, and Meredith Freedhoff, Jamie L. Shumaker, and Michael E. Sexton, in their official capacities as Members of the Franklin County Board of Elections (the "BOE Members"), move under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiffs' Verified First Amended Complaint (Dkt. 71) as to the BOE Members. The Court lacks jurisdiction over every claim against the BOE Members. The challenged decisions governed only Plaintiff Samuel Ronan's eligibility for the completed May 5, 2026 primary, so the claims for relief about that election are moot. The capable-of-repetition exception does not apply, and Plaintiffs lack standing to pursue the forward-looking declaratory and injunctive relief they request. Independently, Count III fails to state a due process claim against the BOE Members. The BOE Members take no position on the merits of Counts I and II, which arise from the Secretary of State's tie-breaking vote, and seek dismissal of those counts as to them only for lack of jurisdiction. A memorandum in support follows.

Respectfully submitted,

**SHAYLA D. FAVOR**
**PROSECUTING ATTORNEY**
**FRANKLIN COUNTY, OHIO**

*s/ Brian D. Zagrocki*
Brian D. Zagrocki (0101970)
Jeanine A. Hummer (0030565)
Trial Attorney
Eli F. Redfern (0103481)
Assistant Prosecuting Attorneys
373 South High Street, 13th Floor
Columbus, Ohio 43215-6318
(614) 525-7236 (P)/(614) 525-6012 (F)
bzagrocki@franklincountyohio.gov
jhummer@franklincountyohio.gov
eredfern@franklincountyohio.gov
*Counsel for Defendants Preisse, Freedhoff, Shumaker, and Sexton*

**MEMORANDUM IN SUPPORT**

## I. INTRODUCTION

This case was about one candidate, one protest, and one election. Ronan asked this Court to restore him to the May 5, 2026 Republican primary ballot for Ohio's 15th Congressional District. This Court denied a preliminary injunction, the Sixth Circuit and the Supreme Court declined to intervene, and the primary went forward without him.

The Amended Complaint does not revive a live controversy. It seeks declarations that the 2026 disqualification and protest hearing were unconstitutional, but no order can now place Ronan on the 2026 ballot or let Plaintiff Ana Cordero vote for him in that primary. Plaintiffs seek no damages, and a claim for attorney's fees cannot sustain an otherwise moot case.

Plaintiffs try to save their claims by alleging that Ronan "intends to run" in 2028 "and in the future" on the same political message. (Am. Compl. ¶¶ 37-39, Dkt. 71 at PageID 1597.) That allegation does not satisfy the capable-of-repetition exception, and it does not confer standing for prospective relief. This Court confined its ruling to the "unique facts presented here": a sworn declaration of Republican affiliation followed by Ronan's own statement that he was running as a Republican to carry out a strategy of running Democrats in Republican primaries. (Opinion and Order, Dkt. 36 at PageID 1349-50.) The Amended Complaint does not allege that Ronan will make another such statement, that any elector will file another protest, or that the same Board members will hear it.

Count III fails for a further reason. It asks the Court to hold that two bipartisan election board members violated due process by hearing a protest while holding Republican Party office and having donated to Ronan's opponent. This Court has already explained why that theory is unlikely to succeed. Political affiliation and political contributions are not the kind of direct, personal, and substantial interest that rebuts the presumption that adjudicators act with honesty

and integrity. Ohio law builds partisan affiliation into the composition of every county board of elections.

The Court should dismiss the Amended Complaint as to the BOE Members.

## II. BACKGROUND

### A. The 2026 Protest and Disqualification

Ronan filed a declaration of candidacy for the Republican primary in Ohio's 15th Congressional District. In it, he declared under Ohio Rev. Code § 3513.07 that he was "a member of the Republican Party" and would "support and abide by the principles enunciated by the Republican Party." (Am. Compl. ¶¶ 1-2, Dkt. 71 at PageID 1589-90.) The four-member Franklin County Board of Elections (the "Board") certified him on or about February 17, 2026. (*Id.* ¶ 1, PageID 1589-90.)

On February 20, 2026, Marc Schare, a Republican elector, filed a protest alleging that Ronan's declaration was false. (*Id.* ¶¶ 4-5, PageID 1590.) Ronan moved to disqualify Board Member Freedhoff because she chaired the Franklin County Republican Party, which had contributed to, received money from, and endorsed Ronan's primary opponent, Congressman Mike Carey. (*Id.* ¶¶ 16-18, 21, PageID 1593-94.) Board Member Freedhoff declined to recuse. (*Id.* ¶ 16, PageID 1593.) The Amended Complaint does not allege that Ronan moved to disqualify Chair Preisse. Instead, the Amended Complaint alleges that Preisse's $1,000 contribution to Carey's 2026 campaign was "[u]nknown to Ronan at the time of the BOE hearing." (*Id.* ¶ 20, PageID 1593-94.)

The Board heard the protest on March 6, 2026. (*Id.* ¶ 6, PageID 1590.) Before the hearing, Ronan moved to dismiss the protest, and the Board subsequently ruled that it lacked authority to dismiss a protest before hearing it; at the hearing, Ronan testified under oath and answered the Board's questions. (*Id.* ¶¶ 12-15, 22-23, PageID 1592-94.) Plaintiffs allege that neither Ronan "nor

the Board of Elections" was told at or before the hearing that the Ohio Republican Party was paying Schare's legal fees. (*Id.* ¶¶ 11, 24, PageID 1591, 1594.) The motion to deny the protest failed on a 2-2 vote. Chair Preisse and Board Member Freedhoff voted against it; Board Members Shumaker and Sexton voted for it. (*Id.* ¶¶ 24-26, PageID 1594.) Under Ohio Rev. Code § 3501.11(X), the tie went to Secretary of State LaRose, who sustained the protest on March 19, 2026 and revoked Ronan's certification for the May 5, 2026 primary. (*Id.* ¶¶ 27, 32-33, PageID 1594-96.)

### B. This Litigation

Plaintiffs sued the Secretary and the BOE Members on March 20, 2026, and sought emergency relief restoring Ronan to the primary ballot. (Compl., Dkt. 1 at PageID 1; Mot. for Emergency Relief, Dkt. 2 at PageID 49-50.) The Court entered a temporary restraining order (Dkt. 10), and the parties conducted expedited discovery. Plaintiffs and the BOE Members stipulated to the facts concerning Board Member Freedhoff's party roles, her contacts with Schare, the party contributions, and the Ohio Republican Party's payment of Schare's counsel. (Stipulations, Dkt. 30 at PageID 1233-37.)

After an evidentiary hearing on April 2, 2026, the Court denied the motion and vacated the temporary restraining order. (Order, Dkt. 32 at PageID 1246.) In its written opinion, the Court held that Plaintiffs were unlikely to succeed on any claim. (Opinion and Order, Dkt. 36 at PageID 1333-59.) As to the First Amendment claim, the Court explained that the Secretary relied on Ronan's statements after he signed his declaration, which directly contradicted that declaration, and that "this case is limited to the unique facts presented here." (*Id.* at PageID 1349-50.) Had the Secretary relied solely on Ronan's earlier statements or political views, "the outcome would certainly be different." (*Id.* at PageID 1350.)

As to due process, the Court held that Ronan likely "does not have a protected interest in falsely claiming his party affiliation to appear on the ballot," and that even if he did, "he has failed

to show that the process afforded him was insufficient." (*Id.* at PageID 1355.) The Court explained that Board Member Freedhoff's party leadership "does not, on its own, demonstrate that there is a risk of bias," that Ohio law "contemplates some level of partisanship on the part of members of a board of elections," and that Ronan's arguments rested on the kind of "generalized assumption of possible interest" that *Schweiker v. McClure*, 456 U.S. 188 (1982), holds insufficient. (*Id.* at PageID 1357-58.)

The Sixth Circuit denied an injunction pending appeal on April 6, 2026, and the Supreme Court denied an injunction on April 9, 2026. (Sixth Circuit Order, Dkt. 37 at PageID 1360-66; *Ronan v. LaRose*, 146 S. Ct. 2550, 224 L. Ed. 2d 386 (2026).) The primary proceeded on May 5, 2026 without Ronan. The Sixth Circuit then dismissed the appeal as moot and declined to vacate. (Sixth Circuit Order, Dkt. 45 at PageID 1388-89.)

### C. The Amended Complaint

Plaintiffs moved for leave to amend on August 29, 2026. (Mot. to Amend, Dkt. 57 at PageID 1415-30.) The Secretary and the BOE Members opposed on futility grounds, arguing that the proposed claims were moot. (LaRose Opp., Dkt. 66 at PageID 1526-43; BOE Members' Opp., Dkt. 67 at PageID 1544-52.) The Magistrate Judge granted leave without resolving futility, "with the understanding that Defendants remain free to challenge the claims asserted in the Amended Complaint through a motion to dismiss." (Order, Dkt. 70 at PageID 1587.)

The Amended Complaint asserts three counts under 42 U.S.C. § 1983, all against Defendants in their official capacities. Count I alleges that the decision to remove Ronan from the ballot violated the First and Fourteenth Amendments, both facially and as applied. (Am. Compl. ¶¶ 82-83, Dkt. 71 at PageID 1605-06.) Count II alleges that the same decision violated the Elections Clause, U.S. Const. art. I, § 4. (*Id.* ¶¶ 84-88, PageID 1606-07.) Both counts are directed at Secretary LaRose, Chair Preisse, and Board Member Freedhoff. Count III alleges that Chair

Preisse and Board Member Freedhoff violated due process by failing to disqualify themselves from the protest hearing. (*Id.* ¶¶ 89-91, PageID 1607.) No count alleges any act by Board Members Shumaker or Sexton, who voted to deny the protest.

The new allegations fall into three groups. First, Ronan "intends to run" in Republican congressional primaries "in 2028 and in the future," on "the same political and ideological messages," and Cordero intends to vote for him. (*Id.* ¶¶ 37-39, PageID 1597.) Second, Ronan faces a "substantial risk" of removal from future ballots and of "future (albeit unconstitutional) criminal election-falsification prosecution." (*Id.* ¶¶ 41-44, PageID 1597.) Third, Count III now extends to Chair Preisse based on his $1,000 contribution to Carey's 2026 campaign. (*Id.* ¶¶ 20, 24-25, 90-91, PageID 1593-94, 1607.)

Plaintiffs seek no damages. They ask for (A) a declaration that the 2026 removal was unconstitutional; (B) a declaration that Defendants created an unconstitutional "political good faith requirement;" (C) an injunction against imposing that requirement in the future; (D) a declaration that Board Member Freedhoff and Chair Preisse violated due process by participating in the 2026 hearing; (E) an injunction barring Board members from hearing protests when they or organizations they lead have made or received contributions involving the protested candidate or a competitor; and (G) fees and costs under 42 U.S.C. § 1988. (*Id.*, Prayer for Relief, PageID 1607-08.)

## III. LEGAL STANDARDS

A motion under Rule 12(b)(1) challenges the Court's subject matter jurisdiction, including whether a live case or controversy exists under Article III. *See Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017) ("Whether a party has standing is an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."); *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008) (mootness "implicates Article III's 'case or controversy'

requirement"). A facial attack "goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction," and the Court takes the allegations as true. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). A factual attack challenges the actual existence of jurisdiction, and the Court may weigh evidence outside the pleadings. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). The plaintiff bears the burden of establishing jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

To survive a motion under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts well-pleaded facts as true but not legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. LAW AND ARGUMENT

### A. The Court Lacks Jurisdiction Over Every Claim Against the BOE Members.

#### 1. The Claims Concerning the 2026 Primary Are Moot.

The "test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)).

The challenged decisions governed one thing: Ronan's eligibility for the May 5, 2026 Republican primary. That election is over. No order can now place Ronan on that ballot or allow Cordero to cast a vote for him in it. The Sixth Circuit applied exactly this reasoning to an Ohio ballot-access dispute in *Thompson v. DeWine*: once the election passed, the court "cannot give

plaintiffs what they ask for," and it remanded with instructions to dismiss the case as moot. 7 F.4th 521, 525-27 (6th Cir. 2021).

The requested declarations about 2026 do not change the analysis. Paragraph A of the prayer asks the Court to declare that the 2026 removal was unconstitutional, and Paragraph D asks the Court to declare that Board Member Freedhoff and Chair Preisse violated due process by participating in the 2026 hearing. (Am. Compl., Prayer ¶¶ A, D, Dkt. 71 at PageID 1607-08.) A declaratory judgment requires "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (quotation omitted). A declaration that officials acted unlawfully in a completed proceeding, with no damages claim and no continuing effect on the parties' legal relationship, is an advisory opinion. *See Ashcroft v. Mattis*, 431 U.S. 171, 172-73 (1977) (per curiam) (holding that the plaintiff's desire for a declaration that past conduct was unconstitutional did not present a live controversy). Plaintiffs' allegation that the 2026 decision "brand[ed]" Ronan (Am. Compl. ¶ 40, PageID 1597) seeks exactly that kind of vindication.

Nor can the request for fees keep the case alive. "This interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990). Accordingly, Plaintiffs' claims concerning the 2026 primary are moot.

**2. The Capable-of-Repetition Exception Does Not Apply.**

While there is an "established exception to mootness for disputes capable of repetition, yet evading review," *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462 (2007), that exception does not apply here. To fall within the exception, a dispute must satisfy a two-pronged test. *Thompson*, 7 F.4th at 525. "First, the challenged action must be too short in duration for the parties to fully litigate it before it becomes moot." *Id.* "And second, there must be 'a

reasonable expectation that the same complaining party will be subject to the same action again.'" *Id.* (quoting *Wisconsin Right To Life*, 551 U.S. at 462). In election cases, the second prong is applied with some flexibility, so plaintiffs "need not show that the same controversy will recur 'down to the last detail.'" *Id.* (quoting *Wisconsin Right To Life*, 551 U.S. at 463). But a "mere physical or theoretical possibility" of recurrence is not enough, *id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)), and a case "is not capable of repetition if it is based on a unique factual situation," *id.* (quoting *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 560 (6th Cir. 2021)).

The BOE Members assume for purposes of this motion that the first element is met. Plaintiffs cannot satisfy the second.

First, the 2026 disqualification rested on a unique factual situation. This Court described the case as presenting "unique factual circumstance[s]" (PI Hr'g Tr., Dkt. 34 at PageID 1322) and as "limited to the unique facts presented here" (Opinion and Order, Dkt. 36 at PageID 1349-50). The Sixth Circuit agreed. *Ronan v. LaRose*, No. 26-3272, 2026 WL 947327, at *3 (6th Cir. Apr. 6, 2026). Those facts were not that Ronan holds views outside the Republican mainstream. They were a specific sequence: Ronan signed a sworn declaration of Republican affiliation, and then, after signing it, described his candidacy as carrying out a strategy of running Democrats as Republicans. (Opinion and Order, Dkt. 36 at PageID 1349-50.) The Court explained that the later statement directly contradicted the declaration, and that if officials had relied solely on Ronan's earlier statements or political ideology, "the outcome would certainly be different." (*Id.* at PageID 1350.)

Recurrence of the "same action" therefore requires some basis to expect another post-declaration statement that materially contradicts a new declaration. The Amended Complaint

supplies none. It alleges that Ronan intends to run in 2028 and "repeat the same political and ideological messages." (Am. Compl. ¶¶ 37-38, Dkt. 71 at PageID 1597.) It does not allege that, after filing a new declaration, he will again describe his candidacy as a strategy to run Democrats as Republicans. Plaintiffs' own allegations thus describe a scenario this Court has already said would come out differently. That is not a reasonable expectation of the same action. It is an expectation of a different one. *See Thompson*, 7 F.4th at 526 (claims "inextricably tied" to the circumstances of one election cycle were not capable of repetition).

Second, any recurrence depends on a speculative chain of independent decisions. Even setting aside the content of Ronan's future statements, the same injury could recur only if Ronan files a 2028 declaration of candidacy for a Republican primary in a district whose candidates are certified by the Franklin County Board; he again makes statements that an elector believes contradict that declaration; a qualified elector, acting independently, files a protest under Ohio Rev. Code § 3513.05; the Board, whose membership may change before 2028, splits on that protest; and the Secretary of State breaks the tie against him.

The last step will be taken by a different official. Plaintiffs allege that Secretary LaRose is running for State Auditor in the 2026 election. (Am. Compl. ¶ 31, Dkt. 71 at PageID 1595-96.) And the protest itself would be filed by a private elector, not by any Defendant. The Supreme Court has repeatedly declined "to endorse standing theories that rest on speculation about the decisions of independent actors." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013).

The case Plaintiffs cite is not to the contrary. (Am. Compl. ¶ 48, PageID 1598.) In *Libertarian Party of Ohio v. Blackwell*, the plaintiffs challenged Ohio's requirements that parties nominate through primaries and that minor parties file petitions 120 days before the primary. 462 F.3d 579, 582, 584-85 (6th Cir. 2006). Those statutory requirements would apply of their own

force in every future election. A challenge of that kind presents a controversy that "almost invariably will recur." *Thompson*, 7 F.4th at 526 (quoting *Lawrence v. Blackwell*, 430 F.3d 368, 372 (6th Cir. 2005)). Here, no statute or rule operates automatically against Ronan. Each protest is an individualized adjudication of a particular candidate's filings and statements on a particular record. The 2026 decision will not repeat itself.

Third, the due process theory is tied to a single hearing. Count III is even more closely bound to its facts. It challenges Board Member Freedhoff's and Chair Preisse's participation in the March 6, 2026 hearing, based on their 2024 and 2026 contributions to Carey, the Franklin County Republican Party's contributions and endorsement in the 2026 race, and the Ohio Republican Party's payment of Schare's counsel in that protest. (Am. Compl. ¶¶ 16-21, 24-25, 89-91, Dkt. 71 at PageID 1593-94, 1607.) The Amended Complaint does not allege that another protest against Ronan will be filed, that it will be heard by the same members, or that those members will then have the same alleged conflicts. Ronan's intent to run again does not establish a reasonable expectation of another allegedly biased hearing.

Finally, the alleged risk of prosecution does not create a live controversy. Plaintiffs allege a "substantial risk of future (albeit unconstitutional) criminal election-falsification prosecution." (Am. Compl. ¶ 42, Dkt. 71 at PageID 1597.) A pre-enforcement theory of injury requires a "credible threat of prosecution." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). The Amended Complaint identifies no threatened charge, referral, warning, or investigation in the seven months since the disqualification. The BOE Members do not prosecute crimes, so no order against them would redress that alleged risk. And the allegation does not assert that Ronan will repeat the post-declaration conduct on which the 2026 decision rested.

**3. Plaintiffs' Claims About Future Elections Are Not Justiciable.**

The capable-of-repetition exception asks whether claims that have become moot may nonetheless proceed. Plaintiffs' requests for relief governing future elections present a separate question: whether a live controversy about those elections exists at all. Those requests are forward-looking relief: the declaration and injunction concerning a "political good faith requirement" (Prayer ¶¶ B-C) and the injunction imposing a recusal rule on Board members (Prayer ¶ E). (Am. Compl., Dkt. 71 at PageID 1607-08.) Because they seek relief about elections that have not occurred, they must be supported by standing, which Plaintiffs must establish "for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). They cannot.

A plaintiff seeking prospective relief must show a threat of future injury that is "certainly impending," *Clapper*, 568 U.S. at 409, because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief," *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). Ronan's allegation that he intends to run "in 2028 and in the future" is the kind of "'some day' intention[]" that "do[es] not support a finding of the 'actual or imminent' injury" Article III requires. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).

The claims are unripe for the same reason. A pre-enforcement claim is ripe only if the plaintiff alleges "an intention to engage in a course of conduct" implicating the Constitution and a "credible" threat of enforcement. *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 769 F.3d 447, 451 (6th Cir. 2014) (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)). Plaintiffs do not allege that Ronan intends to contradict a future declaration of candidacy, and they identify no pending or threatened protest.

The requested recusal injunction underscores the problem. Paragraph E asks the Court to bar any Board member from hearing any protest whenever the member, or an organization in which the member holds office, has made or received campaign contributions involving the protested

candidate or a competitor. (Am. Compl., Prayer ¶ E, PageID 1608.) That is a request for a prospective code of conduct governing protests that have not been filed, against candidates who have not been identified, before members who may not yet sit. Cordero's claims depend entirely on Ronan's candidacy and fail with his. (*See* Opinion and Order, Dkt. 36 at PageID 1334 n.1 (noting Plaintiffs' concession that Cordero's First Amendment claim is derivative of Ronan's).)

Because no live controversy exists between Plaintiffs and the BOE Members, the Court should dismiss the Amended Complaint as to the BOE Members under Rule 12(b)(1).

### B. Count III Fails to State a Due Process Claim.

Even if the Court reaches the merits, Count III should be dismissed under Rule 12(b)(6). The Amended Complaint does not cure either defect this Court identified in the due process claim, and it adds nothing that would state a claim against Chair Preisse or against Board Members Shumaker and Sexton.

#### 1. Ronan Has No Protected Interest in Appearing on the Ballot Under a False Declaration.

The Due Process Clause protects against deprivation of a protected life, liberty, or property interest without "fair procedure." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). Candidates generally have no protected property or liberty interest in an elected position. *Snowden v. Hughes*, 321 U.S. 1, 7 (1944); *see Newsom v. Golden*, 602 F. Supp. 3d 1073, 1083 (M.D. Tenn. 2022) (collecting cases). Even if Ohio law creates an entitlement to ballot access, that entitlement extends only to candidates who comply with Title 35 of the Revised Code, including the declaration required by Ohio Rev. Code § 3513.07.

This Court therefore concluded that Ronan "does not have a protected interest in falsely claiming his party affiliation to appear on the ballot." (Opinion and Order, Dkt. 36 at PageID 1355.) The Amended Complaint adds no allegation that changes that threshold analysis. Its

assertion that Ronan "truthfully declared" his affiliation (Am. Compl. ¶ 2, Dkt. 71 at PageID 1590) is a legal conclusion about the very question the protest decided, and it does not alter the nature of the interest asserted.

### 2. Ronan Received Constitutionally Adequate Process Before an Impartial Tribunal.

Even if Ronan had a protected interest, this Court found that "he has failed to show that the process afforded him was insufficient." (Opinion and Order, Dkt. 36 at PageID 1355.) The Amended Complaint confirms the process he received. Ronan filed a pre-hearing motion to dismiss the protest and a motion to disqualify, and the Board ruled on both. (Am. Compl. ¶¶ 16, 22-23, PageID 1593-94.) He testified under oath at the hearing. (*Id.* ¶¶ 12-13, PageID 1592.) After the tie, he presented the Ohio Republican Party's funding and his disqualification argument directly to the Secretary of State, who decided the protest and whose impartiality Count III does not challenge. (*Id.* ¶¶ 27, 30, PageID 1594-95.) That is notice, an opportunity to be heard, and review by a separate decisionmaker.

And while due process requires a fair tribunal, "most matters relating to judicial disqualification do not rise to a constitutional level." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) (quotation omitted). The Constitution requires recusal only in an "extraordinary situation" where the probability of actual bias "is too high to be constitutionally tolerable." *Id.* at 872, 887. Adjudicators, including those in quasi-judicial roles, are entitled to "a presumption of honesty and integrity." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). The presumption yields only to a showing of a conflict of interest or other specific reason for disqualification, and "the burden of establishing a disqualifying interest rests on the party making the assertion." *Schweiker*, 456 U.S. at 195-96. The interest must be "realistic" and not "remote." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 250 (1980).

The Supreme Court has found that standard met only in extreme circumstances. In *Caperton*, a litigant's chief executive spent $3 million to elect the judge who would hear the litigant's pending $50 million appeal. 556 U.S. at 884-86. In *Williams v. Pennsylvania*, the judge had personally approved seeking the death penalty against the same defendant while previously serving as district attorney. 579 U.S. 1, 8-11 (2016). By contrast, "generalized assumptions of possible interest" based on an adjudicator's connections to an interested entity do not suffice. *Schweiker*, 456 U.S. at 196-97.

As to Board Member Freedhoff, the Amended Complaint alleges that she chaired the Franklin County Republican Party, that the county party contributed $500 to Carey, received over $10,000 from Carey's campaign, and endorsed Carey, and that she personally contributed $500 to Carey's 2024 campaign. (Am. Compl. ¶¶ 17-19, 21, Dkt. 71 at PageID 1593-94.) None of those facts gives her a personal stake in the protest's outcome. The party contributions flowed to and from the party, not to her. The personal contribution flowed from her to a candidate; it was not a payment from an interested litigant to the decisionmaker, which was the problem in *Caperton*. The Amended Complaint alleges no personal financial interest, no benefit to her from the result, and no role in filing, funding, or directing the protest.

The Ohio Republican Party's payment of Schare's counsel does not fill the gap. Plaintiffs themselves allege that the Board was not told about that arrangement at or before the hearing. (Am. Compl. ¶¶ 11, 24, PageID 1591, 1594.) A decisionmaker cannot be swayed by a fact she did not know. *See Marshall*, 446 U.S. at 250-52 (rejecting bias theory that depended on an "exceedingly improbable" chain of inferences). Nor does the Amended Complaint allege that Board Member Freedhoff, as the Ohio Republican Party's vice chair, directed or controlled the state party's decision to fund the protest. Plaintiffs' allegation that the Carey campaign persuaded the state party

chair to fund the protest (Am. Compl. ¶ 29, PageID 1595) concerns the conduct of others, which Plaintiffs say they discovered only after the hearing.

This Court has already explained why this theory fails. Party leadership "does not, on its own, demonstrate that there is a risk of bias," and Ronan's arguments rest on the kind of "generalized assumption of possible interest" that *Schweiker* holds insufficient. (Opinion and Order, Dkt. 36 at PageID 1357-58.) The Amended Complaint repeats the same allegations.

As to Chair Preisse, the only new allegation against him is that he contributed $1,000 to Carey's 2026 campaign and did not disclose it. (Am. Compl. ¶¶ 20, 24-25, PageID 1593-94.) That is the same kind of interest this Court found insufficient as to Board Member Freedhoff: political support flowing from a board member to a candidate. Nondisclosure of a non-disqualifying contribution does not create a disqualifying interest. And although Count III rests on the BOE Members' "refusal to disqualify themselves" (*id.* ¶ 91, PageID 1607), the Amended Complaint does not allege that Ronan ever asked Chair Preisse to recuse. It alleges the opposite: that his contribution was "[u]nknown to Ronan at the time of the BOE hearing." (*Id.* ¶ 20, PageID 1593.)

Lastly, political affiliation is a feature of Ohio's boards of elections, not a defect. Each county board has four members, appointed by the Secretary of State on the recommendation of the county executive committees of the two major political parties. Ohio Rev. Code §§ 3501.06, 3501.07. Ohio law likewise requires the director and deputy director to be of opposite parties. Ohio Rev. Code § 3501.09. This Court relied on that structure in concluding that Ohio law "contemplates some level of partisanship on the part of members of a board of elections." (Opinion and Order, Dkt. 36 at PageID 1358.) The Supreme Court has recognized the same point about elected judges: impartiality means the absence of bias for or against a party to the proceeding, not the absence of political views. *Republican Party of Minn. v. White*, 536 U.S. 765, 775-78 (2002).

If party office and ordinary political contributions were disqualifying, few members of a bipartisan election board could hear a protest involving a contested primary. Paragraph E of the prayer confirms how far Plaintiffs' theory reaches: it would bar any member who holds high-ranking office in a party organization that has made or received contributions involving any protested candidate or competitor. (Am. Compl., Prayer ¶ E, PageID 1608.) The Due Process Clause "demarks only the outer boundaries of judicial disqualifications." *Caperton*, 556 U.S. at 889 (quotation omitted). It does not impose that rule.

#### 3. Count III States No Claim Against Board Members Shumaker and Sexton.

Count III is pleaded only against Board Member Freedhoff and Chair Preisse. (Am. Compl., Count III & ¶¶ 89-91, PageID 1607.) The Amended Complaint alleges that Board Members Shumaker and Sexton voted to deny the protest, which is the outcome Ronan sought. (*Id.* ¶ 26, PageID 1594.) It alleges no conflict, no refusal to recuse, and no other conduct by either of them. Count III should be dismissed as to Board Members Shumaker and Sexton for that reason alone, and Paragraph E's proposed recusal injunction cannot rest on a claim that has not been pleaded against them.

## V. CONCLUSION

The BOE Members request that the Court dismiss the First Amended Complaint as to them for lack of subject-matter jurisdiction under Rule 12(b)(1). Alternatively, the Court should dismiss Count III and the related requests for relief in Paragraphs D and E of the prayer under Rule 12(b)(6).

Respectfully submitted,

**SHAYLA D. FAVOR**
**PROSECUTING ATTORNEY**
**FRANKLIN COUNTY, OHIO**

*s/ Brian D. Zagrocki*
Brian D. Zagrocki (0101970)
Jeanine A. Hummer (0030565)
Trial Attorney
Eli F. Redfern (0103481)
Assistant Prosecuting Attorneys
373 South High Street, 13th Floor
Columbus, Ohio 43215-6318
(614) 525-7236 (P)/(614) 525-6012 (F)
bzagrocki@franklincountyohio.gov
jhummer@franklincountyohio.gov
eredfern@franklincountyohio.gov
*Counsel for Defendants Preisse, Freedhoff, Shumaker, and Sexton*

**CERTIFICATE OF SERVICE**

This is to certify that the foregoing was served on all counsel of record on October 28, 2026 by operation of the Court's CM/ECF system.

*s/ Brian D. Zagrocki*
Brian D. Zagrocki (0101970)