**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RONAN, et al.,**

Plaintiffs,

**v.**

**Case No. 2:26-cv-343**

**Chief Judge Sarah D. Morrison**

**Mag. Judge S. Courter M. Shimeall**

**LaROSE, et al**.,

Defendants/

# PLAINTIFFS' RESPONSE TO DEFENDANT-LAROSE'S MOTION TO DISMISS AMENDED COMPLAINT

Mark R. Brown
303 E. Broad Street
Columbus, Ohio 43215
614-236-6590
MBrown@law.capital.edu

Oliver Hall*
(*Pro Hac Vice*)
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
202-248-9294
oliverhall@competitivedemocracy.org

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

Table of Authorities .................... ii

Summary .................... vii

Introduction .................... 1

Procedure Following Filing of Complaint .................... 6

Well-Pleaded Facts .................... 8

Legal Standards .................... 14

Argument .................... 15

I. LaRose Concedes that Plaintiffs Have Plausibly Alleged Collateral Estoppel and Therefore His Rule 12(b)(6) Motion to Dismiss Must Fail. .................... 16

II. Plaintiffs' First Amendment Claim is Well-Pleaded and Plausible. .................... 18

III. Plaintiffs' Elections Clause Claim Is Well-Pleaded and Plausible. .................... 25

IV. Plaintiffs' Plausibly Allege That They Possess Article III Standing and That Their Case Is Not Moot. .................... 30

A. Plaintiffs Have Properly Pleaded Future and Continuing Injuries. .................... 31

B. Plaintiffs' Case Falls Comfortably Within the Capable of Repetition Exception. .................... 33

V. Neither *Pullman* Abstention Nor *Pennhurst* Supports Dismissal. .................... 37

Conclusion .................... 38

Certificate of Service .................... 39

## TABLE OF AUTHORITIES

***Cases*** ***Page***

*Alaska Division of Elections v. Sullivan*, No. S-19935 (Alaska S. Ct., June 29, 2026), *aff'g* No. 3AN-26-07485CI (Alaska Superior Ct., June 26, 2026) ....29

*American Civil Liberties Union v. Taft*, 385 F.3d 641 (6th Cir. 2004) .... ix, 34

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .... vii, 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....15

*Bognet v. Secretary Commonwealth of Pennsylvania*, 980 F.3d 336 (3d Cir. 2020), *vacated*, 593 U.S. 924 (2021) ....30

*Bost v. Illinois State Elections Board*, 146 S. Ct. 513 (2026) ....29, 30

*Boy Scouts of America v. Dale*, 530 U.S. 640 (2000) .... viii, 20

*Brown v. Chote*, 411 U.S. 452 (1973) ....34

*Brown v. Yost*, 133 F.4th 725 (6th Cir. 2025), *stay denied*, 145 S. Ct. 1957 (2025) ....24

*Cartwright v. Garner*, 751 F.3d 752 (6th Cir. 2014) .... vii, 15

*Central Transport Inc. v. Four Phase Systems, Inc.,* 936 F.2d 256 (6th Cir.1991) ....18

*Chiles v. Salazar*, 607 U.S. 627 (2026) ....33

*Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010) ....5

*Citizens United v. Federal Election Commission*, 530 F. Supp. 2d 274 (D.D.C. 2008) ....5

*Citizens United v. Federal Election Commission*, 552 U.S. 1278 (2008) ....5

*Coalition for Humane Immigrant Rights v. Department of Homeland Security*, 2026 WL 3306646 (D.D.C., Nov. 2, 2026) .... viii, 30

*Coast Candidates PAC v. Ohio Election Commission*, 2012 WL 4322517 (S.D. Ohio 2012) ....33

*Cook v. Gralike*, 531 U.S. 510 (2001) .... vii, 25, 28, 30

*Corrigan v. City of Newaygo*, 55 F.3d 1211 (6th Cir. 1995) ....33

*Democratic Party v. Wisconsin ex rel. La Follette*, 450 U.S. 107 (1981) ....34

*Ex parte Young*, 209 U.S. 123 (1908) .... ix, 37

*Federal Election Commission v. Wisconsin Right to Life*, 551 U.S. 449 (2007) ...... viii, 33, 36, 37

*Fischer v. Thomas*, 176 F.4th 470 (6th Cir. 2026) ............................................................ viii, 23

*First Choice Women's Resource Center v. Davenport*, 146 S. Ct. 1114 (2026) .................... ix, 31

*Gardner v. Henderson*, 2026 WL 496448 (D. Utah, Feb. 23, 2026) ..........................................27

*Gralike v. Cook*, 996 F. Supp. 917 (W.D. Mo. 1998) ........................................................ viii, 30

*Harris County Commissioners Court v. Moore*, 420 U.S. 77 (1975) .................................... ix, 37

*Honig v. Doe*, 484 U.S. 305 (1988) .........................................................................................34, 35

*In re E.I. DuPont de Nemours & Co. C-8 Personal Injury Litigation*, 54 F.4th 912 (6th Cir. 2022) .......................................................................................................................17, 18

*Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir. 1999) .......................................................15

*Jolivette v. Husted*, 886 F. Supp. 2d 820 (S.D. Ohio 2012) ............................................... passim

*Jolivette v. Husted*, 694 F.3d 760 (6th Cir. 2012) ................................................................ viii, 1

*La Botz v. Federal Election Commission*, 2014 WL 3686764 (D.D.C. 2014) .............................36

*La Botz v. Federal Election Commission*, 889 F. Supp.2d 51 (D.D.C. 2012) ..............................36

*Laird v. Tatum*, 408 U.S. 1 (1972) ...........................................................................................32

*Lance v. Coffman*, 549 U.S. 437 (2007) ....................................................................................30

*Lawrence v. Blackwell*, 430 F.3d 368 (6th Cir. 2005) .......................................................... ix, 34

*Libertarian Party of Louisiana v. Dardenne*, 2008 WL 11351516 (M.D. La. 2008), *vacated on other grounds*, 308 Fed. Appx. 861 (5th Cir. 2008) ..................................................26

*Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006) ......................... viii, 35, 36

*Libertarian Party of Ohio v. Brunner*, 577 F. Supp.2d 1006 (S.D. Ohio 2008) ................... vii, 26

*Libertarian Party of Ohio v. Husted*, 497 Fed. Appx. 581 (6th Cir. 2012) .................................35

*Lindsey v. Whitmer*, 124 F.4th 408 (6th Cir. 2024) ..................................................................30

*Meyer v. Grant*, 486 U.S. 414 (1988) ..................................................................................24, 34

*Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974) .................................................24

*Minnesota Voters Alliance v. Ellison*, 188 F.4th 1067 (8th Cir. 2026) ..................................19, 20

*Moore v. Circosta*, 141 S. Ct. 46 (2020) ....................26, 27

*Moore v. Harper*, 600 U.S. 1 (2023) ....................27

*Moore v. Hosemann*, 2008 WL 11439423 (S.D. Miss. 2008) ....................26

*Moore v. Hosemann*, 591 F.3d 741 (5th Cir. 2009) ....................34

*Moore v. Ogilvie*, 394 U.S. 814 (1969) ....................34

*Municipality of San Sebastian v. Puerto Rico*, 116 F. Supp.3d 49 (D.P.R. 2015) ....................38

*Neinast v. Board of Trustees of Columbus Metropolitan Library*, 346 F.3d 585, 592 (6th Cir. 2003) ....................18

*NLRB v. Master Slack and/or Master Trousers,* 773 F.2d 77 (6th Cir.1985) ....................18

*Norman v. Reed*, 502 U.S. 279 (1992) ....................34

*Parklane Hosiery v. Shore*, 439 U.S. 322 (1979) .................... vii, 12, 16

*Pennhurst State School & Hospital*, 465 U.S. 89 (1984) ....................37

*Pestrak v. Ohio Elections Commission*, 926 F.2d 573 (6th Cir. 1991) ....................21

*Resch v. Baydoun*, 2016 WL 8703616 (E.D. Mich. 2016) ....................15

*Ronan v. LaRose*, No. 25A1096 (April 9, 2026) ....................6

*Rosario v. Rockefeller*, 410 U.S. 752 (1973) ....................34

*Ruffin v. Frisch's Restaurant*, 2009 WL 3055424 (S.D. Ohio 2009) ....................15

*S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co*., 860 F.3d 844 (6th Cir. 2017)5

*Schrader v. Taft*, 78 F. Supp.2d 708 (S.D. Ohio 1999) ....................33

*Storer v. Brown*, 415 U.S. 724 (1974) ....................34

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) .................... ix, 31, 32

*Susan B. Anthony v. Driehaus*, 814 F.3d 466 (6th Cir. 2016) .................... passim

*Sylvia Landfield Trust v. City of Los Angeles*, 2009 WL 10700867 (C.D. Cal. 2009) ....................37

*Thompson v. DeWine*, 7 F.4th 521 (6th Cir. 2021) ....................35

*Towerco 2013 v. Berlin Township Board of Trustees*, 110 F.4th 870 (6th Cir. 2024) ....................5

*United States v. Alaska*, 2026 WL 3271034 (D. Alaska, Nov. 1, 2026) ........................................29

*United States v. Alvarez*, 567 U.S. 709 (2012) ........................................................ viii, 19, 20, 21

*United States v. Dean*, 55 F.3d 640 (D.C. Cir. 1995) ..................................................................4

*United States v. Swisher*, 811 F.3d 299 (9th Cir. 2016) ..............................................................18

*University of Texas v. Camenisch*, 451 U.S. 390 (1981) ..........................................................5, 6

*VCST Int'l B.V. v. Borgwarner Noblesville*, 142 F.4th 393 (6th Cir. 2025) .......................... vii, 15

*Winter v. Wolnitzek*, 834 F.3d 681 (6th Cir. 2016) ......................................................................23

***Federal Statutes***

42 U.S.C. § 1983 ........................................................................................................ vii, 1

***Federal Rules***

F. R. Civ. P. 12 ........................................................................................................ passim

***Ohio Statutes***

O.R.C. § 3513.07 ..........................................................................................................8, 10, 17

O.R.C. § 3513.19 ..........................................................................................................................2

O.R.C. § 3513.191 .................................................................................................................10, 28

O.R.C. § 3513.192 .......................................................................................................................17

O.R.C. § 3501.11(X) .....................................................................................................................11

***Pleadings and Briefs***

Brief Amicus Curiae Ohio Attorney General Michael DeWine in Support of Neither Party,
*Susan B. Anthony List v. Driehaus*, No. 13-193 (U.S., March 3, 2014) .......................................21

***Miscellaneous***

Lewis Carroll, *see The Hunting of the Snark* (MacMillan 1876) ....................................................4

Kelsey Dallas, *The scope of the Supreme Court's emergency docket*, SCOTUSBLOG, August 19, 2026....................................................................................................................7

Dvorske, et al., 1A Fed. Proc., L. Ed. § 1:523 (2026) ..................................................................37

Rick Hasen, *DOJ Issues Grand Jury Subpoenas in "Dan J. Sullivan" Case, Raising Serious First Amendment Issues in Potentially Prosecuting Someone for Impure Political Motives*, Aug. 18, 2026, Election Law Blog ..........................................................................................24

Amy Howe, *Supreme Court declines to block lower court ruling in election dispute on political speech*, SCOTUSBLOG, April 9, 2026 ....................................................................................6, 7

Memo from Scott R. Nein to Members of the Campaign Finance Reform Task Force, June 13, 1995 ..............................................................................................................................17

Craig Lee Montz, *Why Lawyers Continue to Cross the Line in Closing Argument: An Examination of Federal and State Cases*, 28 Ohio N. U. L. Rev. 67 (2001) ...................................4

Michael T. Morley, The Independent State Legislature Doctrine, 90 FORD. L. REV. 501 (2021) 26

Rob Richie, *Gaming the ballot is real. The Alaska scandal is greatly overblown*, Election Law Blog, Oct. 31, 2026 ..........................................................................................................35

Taft Advisory No. 95-10, Aug. 25, 1995 ..........................................................................17

## SUMMARY

Plaintiffs' official capacity action under 42 U.S.C. § 1983 against Defendant-LaRose and Defendant-Preisse, Freedhoff, Sexton and Shumaker ("Defendant-BOE) is premised on the First (Speech) and Fourteenth (Due Process) Clauses, as well as the Elections Clause of section 4, Article I of the United States Constitution. *See* page 1, *infra*.

Defendant-LaRose moves to dismiss Plaintiffs' First Amendment and Elections Clause claims under Rule 12(b)(1) and Rule 12(b)(6). For purposes of these motions, the Court treats Plaintiffs' well-pleaded factual allegations as true and draws all reasonable inferences in Plaintiffs' favor. *See* page 14, *infra*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014); *VCST Int'l B.V. v. Borgwarner Noblesville*, 142 F.4th 393, 399 (6th Cir. 2025). Neither motion can prevail under this Rule 12(b) standard.

Defendant-LaRose concedes that Plaintiffs have plausibly alleged the use of offensive collateral estoppel against him by omitting any reference to it in his motion to dismiss. *See* page 16, *infra*; *Parklane Hosiery v. Shore*, 439 U.S. 322 (1979). Collateral estoppel prohibits Defendant-LaRose from claiming that Ohio law imposes an administratively enforceable political good faith requirement of any sort on primary candidates. *See* page 16, *infra*. Because Ohio law does not require political good faith, Defendant-LaRose's creation of this requirement necessarily violates the federal Elections Clause. *See* page 25, *infra*; *Cook v. Gralike*, 531 U.S. 510, 522 (2001); *Libertarian Party of Ohio v. Brunner*, 577 F. Supp.2d 1006, 1012 (S.D. Ohio 2008). Further, because Defendant-LaRose contradicted Ohio law by creating an administratively enforceable political good faith requirement for primary candidates, he lacks the legitimate interest needed to overcome any level of First Amendment scrutiny. *See* page 18, *infra*.

Even were Ohio law to itself impose an administratively enforceable political good faith requirement on primary candidates, its use in this case facially and as-applied violates the First Amendment. *See* pages 18-25, *infra*. First Amendment protection extends to false speech. *United States v. Alvarez*, 567 U.S. 709 (2012) (plurality); *Susan B. Anthony v. Driehaus*, 814 F.3d 466, 473 (6th Cir. 2016). Consequently, even if Plaintiff-Ronan's political speech were false (it is not), the content-based use of alleged falsity would need to satisfy strict scrutiny. *Id*. That it cannot do. *See* pages 21-23; *Driehaus*, 814 F.3d 466; *Boy Scouts of America v. Dale*, 530 U.S. 640, 651 (2000); *Fischer v. Thomas*, 176 F.4th 470 (6th Cir. 2026).

Ohio law, moreover, with or without collateral estoppel, does not impose an administratively enforceable political good cause requirement on primary candidates. *See* page 16, *infra*; *Jolivette v. Husted*, 886 F. Supp. 2d 820 (S.D. Ohio 2012); *Jolivette v. Husted*, 694 F.3d 760 (6th Cir. 2012). Under the federal Elections Clause, executive State agents, like Defendants here, cannot create ballot access rules for federal elections. That is left to state legislatures. *See* page 25, *infra*; *Cook v. Gralike*, 531 U.S. 510, 522 (2001); *Libertarian Party of Ohio v. Brunner*, 577 F. Supp.2d 1006, 1012 (S.D. Ohio 2008). Defendants doing so violate section 4 of Article I of the United States Constitution. *See* page 25-28, *infra*. The federal Elections Clause, moreover, is enforceable in a private action under § 1983. *See* pages 29-30; *Cook v. Gralike*, 531 U.S. 510 (2001); *Gralike v. Cook*, 996 F. Supp. 917, 918 (W.D. Mo. 1998); *Coalition for Humane Immigrant Rights v. Department of Homeland Security*, 2026 WL 3306646 (D.D.C., Nov. 2, 2026).

Plaintiffs' complaint is not moot. It fits comfortably with the capable of repetition yet evading review exception. *See* pages 33-34, *infra*; *Federal Election Commission v. Wisconsin Right to Life*, 551 U.S. 449, 462 (2007); *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006); *Lawrence v. Blackwell*, 430 F.3d 368 (6th Cir. 2005); *American Civil Liberties Union*

*v. Taft*, 385 F.3d 641 (6th Cir. 2004). Further, Plaintiffs have pleaded in their Amended Complaint a proper pre-enforcement action based on a sufficient risk that they will be subjected to Defendants' interpretation of Ohio law again. *See* page 31, *infra*; " *First Choice Women's Resource Center v. Davenport*, 146 S. Ct. 1114, 1122 (2026); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161, 164–167 (2014).

Defendants' claim that abstention and the Eleventh Amendment support dismissal is incorrect. *See* page 37, *infra*; *Harris County Commissioners Court v. Moore*, 420 U.S. 77, 88 (1975). Abstention under *Pullman*, even if proper (it is not here) only supports a stay of federal proceedings. *Id*. Plaintiffs' official-capacity claims against Defendant-LaRose and Defendant-BOE, moreover, are premised on federal constitutional violations and thus are not precluded by the Eleventh Amendment. *See* pages 37-38, *infra*; *Ex parte Young*, 209 U.S. 123 (1908).

**Introduction**

This is an official-capacity action brought under 42 U.S.C. § 1983, the First and Fourteenth Amendments, and the Elections Clause, Article I, § 4, of the Constitution, against Ohio's Secretary of State, Frank LaRose, and the four members of the Franklin County Board of Elections ("BOE"). Plaintiffs filed their original Complaint on March 20, 2026, *see* Comp., ECF No. 1, and at the same time moved for an emergency TRO and preliminary injunction keeping Plaintiff-Ronan's name on Ohio's Republican ballot for the 15th District congressional primary to be held on May 5, 2026. Plaintiffs' Amended Complaint, Am. Comp., ECF No. 71, was filed on October 14, 2026 with leave of the Court. *See* Order, ECF No. 70. Defendant-LaRose and Defendant-BOE filed separate motions to dismiss on October 28, 2026. *See* LaRose Motion, ECF No. 73; BOE Motion, ECF No 74.

The genesis of Plaintiffs' case rests in Defendant-LaRose's and two members' (Preisse and Freedhoff) of the Franklin County BOE joining together to remove Plaintiff-Ronan from Ohio's GOP primary ballot. The three (over the objection of two other members of the BOE) agreed that based on Plaintiff-Ronan's and his associates' prior and present speech and political positions, as well as Ronan's failure to attend Republican party functions, support its candidates and seek its endorsement, Ronan was not a "good faith," honest Republican. He was thus not entitled to run in Ohio's GOP primary against Mike Carey, the incumbent congressman representing Ohio's 15th congressional district.

Interpreting Ohio law to impose a requirement that primary candidates act in political good faith—a novel interpretation that has never before been adopted or applied and one that contradicts this Court's precise ruling in *Jolivette v. Husted*, 886 F. Supp. 2d 820, 835 (S.D. Ohio), *aff'd*, 694 F.3d 760 (6th Cir. 2012)—and arrogating to themselves the administrative authority to remove

from the ballot primary candidates whom they deemed did not, Defendant-LaRose, Defendant-Preisse and Defendant-Freedhoff joined together to remove Plaintiff-Ronan in violation of the First Amendment and the federal Elections Clause. In sum, Plaintiff-Ronan was kicked off the ballot and Carey was (as he planned) allowed to run unopposed in the primary.

Plaintiffs' Amended Complaint specifically challenges Defendants' action in administratively removing him from the ballot under both the First Amendment Free Speech Clause and the federal Elections Clause of Article I, § 4.[1] Ohio law, Plaintiffs point out, has since 1995 allowed members of any political party to run in any political primary they choose so long as they self-identify with that party, sign a declaration to that effect, and state their intent to abide party principles if elected. These requirements have been interpreted by this Court previously in *Jolivette*, 886 F. Supp. 2d at 835, to not impose the very political good faith requirement Defendants imposed on Plaintiff-Ronan. Indeed, Defendant-LaRose's office was a party to the *Jolivette* case and he in this official capacity suit is therefore collaterally estopped from claiming that Ohio law (which has remained unchanged since *Jolivette* and which has never been interpreted in the way Defendant-LaRose interprets it) codifies the contrary. Because Defendant-LaRose does not challenge Plaintiffs' claim to offensive collateral estoppel in his motion to dismiss, he admits for purposes of his motion that he is collaterally estopped and that Ohio law thus codifies no administratively enforceable political good faith requirement (under any statute) for primary candidates. Just as with voters, *see* O.R.C. § 3513.19 ("membership in or political affiliation with a political party shall be determined by the person's statement, made under penalty of election falsification, that the person desires to be affiliated with and supports the principles of the political

[1] Plaintiffs' Due Process claim against Defendant-Freedhoff and Defendant-Preisse is addressed in Plaintiffs' accompanying response to Defendant-BOE's motion to dismiss.

party whose primary ballot the person desires to vote"), Defendant-LaRose concedes for purposes of his motion that a candidate's declaration of self-identification with a political party falls beyond administrative review by elections officials (or anyone else).

Because of this concession, Defendant-LaRose's argument that Plaintiffs' Elections Clause claim and First Amendment claim are without merit both must collapse. As explained below, the Elections Clause prohibits State executive authorities from changing or altering the State legislature's prescribed ballot access rules for federal elections. Defendant-LaRose's concession that Ohio law does not codify a political good faith requirement (because he is plausibly collaterally estopped) necessarily means his creating one plausibly violates the Elections Clause. Further, because of his concession Defendant-LaRose can claim no legitimate purpose in imposing a political good faith requirement on Plaintiff-Ronan. Consequently, even assuming rational basis scrutiny (which requires a legitimate interest) were to be applied under the First Amendment as Defendant-LaRose suggests, Plaintiff-Ronan would still have a plausible argument.

In an effort to mask the many deficiencies (described more fully below) presented in his factual and legal arguments, Defendant-LaRose attempts to reimagine this case as one involving a "liar" who is guilty of election falsification under Ohio law. He claims no less than three times that Plaintiff-Ronan lied about his political affiliation and intentionally falsified his declaration, something (he claims) that is different from what this Court addressed in *Jolivette*. As explained below, he is wrong as a matter of law on that point, and he is also wrong as a matter of plausibly-pleaded fact, too. Defendant-LaRose fails to cite a single pleading in the Amended Complaint or a single factual conclusion in the administrative record to support his allegation that Ronan intentionally lied. Neither the word "liar" nor any administrative conclusion about intentional

"election falsification" appears in either place.[2] Instead, Plaintiffs' Amended Complaint repeatedly alleges facts that establish Ronan truthfully stated his self-identification as a Republican on his declaration. Coupled with all reasonable inferences drawn in Plaintiffs' favor, Defendant-LaRose must assume for purposes of his motion that Plaintiff-Ronan told the truth about his political self-identification. His motion does not do that and therefore fails.[3]

Because neither the Amended Complaint nor the administrative record supports the facts Defendant-LaRose alleges, Defendant-LaRose turns to this Court's and the Sixth Circuit's denials of emergency injunctive relief for support. He claims incorrectly that these rulings resolve the claims made in Plaintiffs' Amended Complaint and justify dismissal. Plaintiffs cannot be afforded a "do-over," he asserts. LaRose Mot., ECF No. 73 at PageID# 1668. None of the factual or legal conclusions in either this Court's or the Sixth Circuit's denial of preliminary relief, however, support dismissal of Plaintiffs' case. The Supreme Court and Sixth Circuit have made clear that

[2] "'Lies' and 'lying' are hard words," *United States v. Dean*, 55 F.3d 640, 655 (D.C. Cir. 1995), and "state and federal courts remain sharply divided on the issue whether a witness may be referred to as a 'liar'." Craig Lee Montz, *Why Lawyers Continue to Cross the Line in Closing Argument: An Examination of Federal and State Cases*, 28 Ohio N. U. L. Rev. 67, 120 (2001). The reason for this is that in order to "lie" one must have "intent to deceive." Meriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/lie#dictionary-entry-3. No such conclusion can be found in the administrative record or even implausibly inferred. Had Ronan intended to deceive anyone, after all, he would not have publicly stated his intent to run Democrats and their liberal ideals in Republican primaries on Facebook for everyone to see both before and after filing his declaration.

[3] Discomfiting as it may be to Defendant-LaRose, outside the land of snarks and the frenetic imagination of Lewis Carroll, *see The Hunting of the Snark* (MacMillan 1876) ("What I tell you three times is true.") https://www.poetryfoundation.org/poems/43909/the-hunting-of-the-snark, calling someone a liar three times does not make it true. Nor can it breathe life into an otherwise deficient Rule 12(b)(6) motion. Defendant-LaRose's charge is an empty strawman, pure and simple, one that not only pushes the boundaries of courtroom decorum but also one that has no place in his motion to dismiss.

denials of preliminary relief, including any factual findings and legal conclusions therein, are not dispositive, are not the law of the case, and can have no preclusive value in subsequent proceedings. *See Towerco 2013 v. Berlin Township Board of Trustees*, 110 F.4th 870, 880 (6th Cir. 2024) ("findings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits") (citations omitted). Preliminary findings and rulings, after all, are made "on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). The purpose of a preliminary injunction is not to resolve the merits of a case or even to decide whether they can survive Rule 12(b)(6), but instead is "to preserve the status quo until a trial on the merits" or proper dispositive motions can be filed. *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co*., 860 F.3d 844, 848-49 (6th Cir. 2017) (citing *Camenisch*, 451 U.S. at 395).

Given the procedural and substantive differences between preliminary injunctions, Rule 12(b) motions and final judgments, plaintiffs frequently survive dismissal and prevail on the merits despite being denied preliminary relief. In the watershed case of *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), for example, both the District Court and the Supreme Court (on direct review) denied preliminary relief, *see Citizens United v. Federal Election Commission*, 530 F. Supp. 2d 274 (D.D.C. 2008); *Citizens United v. Federal Election Commission*, 552 U.S. 1278 (2008), but the plaintiff ultimately prevailed on the merits before the Supreme Court and won final judgment. *See Citizens United*, 558 U.S. 310 (2010). If Defendants are correct that this Court's preliminary rulings are effectively dispositive and justify dismissal, this never should have happened.

As *Camenisch* and its progeny make clear, Plaintiffs' failure to win preliminary relief has no bearing whatsoever on whether their Amended Complaint can survive dismissal under Rule 12(b). Instead, whether a plausible case is presented sufficient to survive a Rule 12(b) motion to dismiss must be decided de novo, just as if there been no preliminary ruling. That is why the Sixth Circuit here, after all, chose not to vacate the District Court's preliminary ruling once the case became moot. *See* Sixth Circuit Order, Sixth Cir. Doc. No. 32-1, at 2 (stating that "plaintiffs-appellants have not shown that this an 'extraordinary case[]' where a moot preliminary injunction would have a preclusive effect") (citation omitted).

**<u>Procedure Following Filing of Complaint</u>**

Following the filing of Plaintiffs' original Complaint, the District Court on March 20, 2026 issued a TRO preventing Defendants from removing Plaintiff-Ronan's name from the ballot pending a hearing on Plaintiffs' request for a preliminary injunction. *See* Order, ECF No. 10. Service of process was perfected on March 23, 2026. *See* Returned Summons, ECF No. 17.

The Court on April 2, 2026 denied preliminary relief and vacated its TRO. *See* Transcript, ECF No. 34 at PageID# 1319. Upon Plaintiffs' motion, the Court stayed its dissolution of the TRO until April 6, 2026 to facilitate Ronan's emergency appeal. *Id*. at PageID# 1325. The District Court thereafter issued its written Opinion and Order on April 6, 2026. *See* ECF No. 36.

Plaintiffs' emergency appeal was filed on April 2, 2026. *See* Notice, ECF No. 33. A Sixth Circuit motion panel (Batchelder, Larsen and Readler, JJ.) on April 6, 2026 denied emergency relief shortly before this Court issued its written decision. *See* Order, Sixth Cir. Doc. 37. Plaintiffs then sought emergency relief from the Supreme Court. After calling for a response the Supreme Court denied Plaintiffs' application on April 9, 2026. *See Ronan v. LaRose*, No. 25A1096 (April 9, 2026); *see also* Amy Howe, *Supreme Court declines to block lower court ruling in election dispute*

*on political speech*, SCOTUSBLOG, April 9, 2026, available at https://www.scotusblog.com/2026/04/state-election-dispute-on-political-speech-comes-to-supreme-court-on-interim-docket/ (accessed August 25, 2026).[4]

On May 28, 2026, following completion of the May 5, 2026 primary, Defendants filed with the Sixth Circuit a motion to dismiss Plaintiffs' interlocutory appeal on mootness grounds. *See* Motion, Sixth Cir. Doc. 24. Plaintiffs agreed that the emergency appeal was mooted by the completion of the election and argued that vacatur of the District Court's order denying preliminary relief was accordingly required. *See* Response, Sixth Cir. Doc. No. 25. On June 8, 2026, the same motion panel dismissed Plaintiffs' emergency interlocutory appeal as moot without mentioning vacatur. *See* Order, ECF No. 42. On June 11, 2026, Plaintiffs petitioned for rehearing and rehearing en banc over whether vacatur was required. On June 24, 2026, the motion panel amended its prior order to explain why vacatur was not required. *See* Order, ECF No. 45. Plaintiffs' July 3, 2026 petition for rehearing en banc was then denied on July 22, 2026, and the Sixth Circuit's mandate was issued to this Court on July 30, 206. *See* Mandate, ECF No. 51. (Plaintiffs are presently petitioning the Supreme Court for certiorari to address whether vacatur is required, with that petition being due in the Supreme Court no later than November 20, 2026.)

Plaintiffs timely moved for leave to amend their Complaint on August 29, 2026. *See* Motion, ECF No. 57. The Court granted that motion on October 14, 2026, *see* Order, ECF No. 70, and the Verified Amended Complaint became operative that same day. *See* Amended Complaint, ECF No. 71. Both Defendant-LaRose and Defendant-BOE on October 28, 2026 moved to dismiss

---

[4] *See also* Kelsey Dallas, *The scope of the Supreme Court's emergency docket*, SCOTUSBLOG, August 19, 2026, available at https://www.scotusblog.com/2026/08/the-scope-of-the-supreme-courts-emergency-docket/ (accessed August 25, 2026) (discussing Ronan's application to Supreme Court) (accessed August 25, 2026).

the Amended Complaint under Rule 12(b)(1) and Rule 12(b)(6). *See* LaRose Motion, ECF No. 73; BOE Motion, ECF No. 74. Plaintiffs this day respond to both motions.

**Well-Pleaded Facts**

Plaintiff-Ronan was certified by Defendant-BOE as a ballot-qualified candidate for Ohio's Republican Party May 5, 2026 primary election to fill Ohio's 15th Congressional District on or about February 17, 2026. Am. Comp., ECF No. 71 at PageID# 1590, ¶ 1. Ronan's papers were proper and timely and he truthfully declared therein pursuant to O.R.C. § 3513.07 both "I am a member of the Republican Party" and "I further declare that, if elected to said office or position, I will qualify therefor, and that I will support and abide by the principles enunciated by the Republican Party." *Id*., ¶ 2.

On February 20, 2026 Plaintiff-Ronan's candidacy was protested by a Republican voter by the name of Marc A. Schare. *Id*. ¶ 4. Schare, a protestor in name only as explained in detail below, claimed that based on Plaintiff-Ronan's past political positions and political statements he was not a "good faith" Republican. *Id*. & Ex. A. Schare's protest alleged that Ronan's candidacy was "opportunistic," *id*. at PageID# 1612, and an attempt to "trick voters." *Id*. at PageID# 1615. Ronan, Schare claimed, was smuggling onto Republican party ballots liberal political positions like universal health care, defunding police and forgiving student debt. *Id*. at PageID# 1614. Schare's protest cited *Jolivette v. Husted*, 886 F. Supp. 2d 820, to support his argument, *id*. at PageID# 1615, although that case decided the opposite, *i.e*., that while independent general election candidates must act in political "good faith" to the satisfaction of election officials, primary candidates (like Ronan) need not. Schare cited no authority that extended this administratively enforceable good faith requirement from independent candidates in general elections to party primary candidates. Nor could he, since *Jolivette* expressly ruled under Ohio law that elections officials cannot use a

lack of political good faith to remove primary candidates from the ballot and Ohio law has not changed.

Schare testified at the BOE's administrative hearing held on March 6, 2026 that he did not sign the protest, did not write it, did not deliver it, and was not responsible for paying the attorneys whose names were listed as contacts and who identified themselves as representing him at the hearing. *Id*. at PageID# 1591, ¶ 8. Schare's attorney at the March 6, 2026 hearing, meanwhile, repeatedly interrupted Ronan's questioning of Schare to object to any inquiry into who was paying his (Schare's) lawyers and otherwise facilitating the protest. *Id*., ¶ 10. Neither Plaintiff-Ronan nor the BOE was informed by Schare or his lawyers at or before the March 6, 2026 hearing that the Ohio Republican Party was the real party in interest that was paying Schare's legal bills, *id*., ¶ 11, and that Mike Carey (the incumbent running against Ronan in the GOP primary) had caused the protest to be filed. *Id*. at PageID# 1595, ¶ 29.[5]

At the March 6, 2026 hearing before the BOE Plaintiff-Ronan testified under oath that his declaration of identification with the Republican party was truthful, that his declaration of intent to abide by, if elected, the principles of the Republican party was truthful, and that his political positions are mostly consistent with historical Republican principles. *Id*. at PageID# 1592, ¶ 12. He testified that he was self-identifying as a member of the Republican party and intended, if elected, to abide by the principles of the Republican party. *Id*., ¶ 13.

---

[5] Ronan discovered <u>after</u> he was removed from the ballot both that the Ohio Republican Party had hired Schare's lawyers (while apparently not telling him that it had done so) and that Carey's campaign was responsible for the Ohio Republican Party's decision to protest his (Ronan's) candidacy. Whether Defendant-Freedhoff or Defendant-Preisse knew either of these facts at the time of the hearing has not yet been established and presents an ultimate question of fact that cannot support dismissal under Rule 12(b).

Before the March 6, 2026 BOE hearing, Plaintiff-Ronan had timely moved to dismiss the protest based on Schare's not having signed it and Schare's failure to state a proper claim under Ohio law, including O.R.C. §§ 3513.07 and 3513.191(B). *Id*. at PageID# 1594, ¶ 22. The motion was rejected by the BOE on the ground that it lacked authority to dismiss protests. *Id*., ¶ 23. Ronan also timely moved to disqualify Defendant-Freedhoff, one of the two GOP members of the BOE, from participating in the protest. *Id*. at PageID# 1593, ¶ 16. As explained more fully in Plaintiffs' accompanying response (filed this day) to Defendant-BOE's motion to dismiss, Defendant-Freedhoff had contributed financially to Mike Carey's campaign for the 15th congressional seat in Ohio in the past, sat on the same GOP committee as Schare, chaired the Franklin County Republican Party committee that had endorsed Carey, and even vice-chaired the Ohio GOP which was the secret real party in interest behind Ronan's protest. Freedhoff not only rejected Plaintiff-Ronan's motion to disqualify, she did not acknowledge nor disclose any of these potentially debilitating conflicts of interest. Indeed, she actively prevented Plaintiff-Ronan from eliciting the information from Schare.

Following this Court's denial of preliminary relief, Plaintiff-Ronan discovered that Defendant-Preisse had also made campaign contributions totaling at least $1000 to Mike Carey's 2026 primary campaign. *Id*. at PageID# 1593, ¶ 20. Preisse never disclosed his contributions to Carey before or during the hearing, even though Carey's potential (and later confirmed) secret involvement was raised by Plaintiff-Ronan at the hearing and was relevant to the protest.

Defendant-Freedhoff questioned Plaintiff-Ronan extensively during the hearing about his past political positions. *Id*. at PageID# 1592-93, ¶¶ 14, 15. Defendant-Freedhoff stated that she found Plaintiff-Ronan's statements to be incompatible with the principles of the Republican party. *Id*., ¶ 15. Plaintiff-Ronan, meanwhile, presented evidence to the contrary demonstrating that the

vast majority of his political positions aligned with those of the Republican Party, *see* BOE Record, ECF No. 26-1 at PageID# 350-51, he had run in Republican primaries in the past, presently identified with the Republican Party, *see* Am. Comp., ECF No. 71 at PageID 1592, ¶¶ 12, 13, and no longer identified with the Democratic Party. *Id*.

The Board of Elections tied 2 to 2 over whether to deny Schare's protest. When it voted on the motion, neither Schare, his attorneys nor Defendants-Preisse and Freedhoff had revealed that the Ohio Republican Party (ORP) was the real party in interest—even though both Defendant-Freedhoff and Defendant-Preisse likely knew ORP was involved. Nor did either Defendant-Preisse or Defendant-Freedhoff disclose their financial contributions to Carey's campaign—even though they both knew they had made contributions and that Carey's campaign was likely involved). *Id*. at PageID# 1594 ¶ 24. The two GOP members of the BOE, Defendant-Preisse and Defendant-Freedhoff, then voted against Defendant-Sexton's motion to deny Schare's protest notwithstanding that they likely knew they had conflicts of interest. *Id*. ¶ 25. The two Democratic members of the BOE, Defendant-Shumaker and Defendant-Sexton, neither of whom had conflicts of interest, voted to deny the protest. *Id*., ¶ 26.

Because the motion tied 2 to 2, under Ohio law (O.R.C. § 3501.11(X)) Defendant-LaRose was afforded the potential tie-breaking vote. *Id*. at PageID# 1594-95, ¶ 27. Defendant-LaRose was notified by Plaintiff-Ronan on March 10, 2026 that ORP had been identified by Schare's lawyers (after the BOE hearing) as the real party in interest and moved Defendant-LaRose to disqualify Defendant-Freedhoff and remand the matter back to the BOE for further proceedings. *Id*. at PageID# 1595, ¶ 30. Defendant-LaRose on March 19, 2026, just one day before the March 20, 2026 deadline for finalizing overseas ballots in Ohio, rejected Ronan's motion and instead voted to remove Plaintiff-Ronan from Ohio's primary ballot. *Id*. PageID# 1596, ¶ 30.

In order to remove Plaintiff-Ronan from the ballot, Defendant-LaRose, Defendant-Preisse, and Defendant-Freedhoff, who are all final policymaking authorities under Ohio law, *id*. at PageID# 1598, ¶49, implied into Ohio law an administratively enforceable political "good faith" requirement, *id*. at PageID# 1603, ¶ 69, something this Court and the Sixth Circuit had previously expressly rejected in *Jolivette*, 886 F. Supp. 2d at 835 ("there is no requirement that the candidate make the change in good faith, unlike the rule that applies to a candidate who disaffiliates from a party"). Am. Com., ECF No. 71 at PageID# 1600, ¶ 59. Their creation of this administratively enforceable political good faith requirement for primary candidates in Ohio is unprecedented, with absolutely no judicial holding (or any other authority) to support it. *Id*. at PageID# 1605, ¶ 75.

Because Defendant-LaRose's office was a party to the proceeding in *Jolivette*, and because the issue of whether an administratively enforceable political good faith requirement for primary candidates is codified as part of Ohio law was fully litigated and actually decided in that case, Defendant-LaRose is now collaterally estopped under *Parklane Hosiery v. Shore*, 439 U.S. 322 (1979), from claiming the contrary here. *Id*. at PageID# 1601, ¶ 63. For purposes of this litigation, Defendant-LaRose is estopped from claiming that Ohio law codifies an administratively enforceable political good faith requirement allowing elections officials to remove political primary candidates from ballots.

Even if there is no estoppel, Defendant-LaRose's, Defendant-Preisse's and Defendant-Freedhoff's decision to remove Plaintiff-Ronan was not based on objective facts but was based solely on their subjective conclusions that Plaintiff-Ronan's (and his associates') past and present political speech rendered his campaign dishonest and lacking in political "good faith." *Id*. at PageID# 1603, ¶¶ 71, 72. They thus imposed what amounts to an ideological purity test, *id*. at PageID# 1604, ¶ 74, one designed to ferret out candidacies that did not properly align with their

Republican values. *Id.* ¶ 73. Defendant-Freedhoff admitted this at the BOE hearing when after perusing Plaintiff-Ronan's stated political positions she stated "I don't see these as being things that the Republican Party would agree on …." *Id.* at PageID# 1604, ¶ 73. Defendant- Preisse and Defendant-Freedhoff in their March 13, 2026 letter explaining their votes to Secretary LaRose reiterated that they believed "Mr. Ronan should not remain on the ballot as a Republican" because of "his own past, recent, and repeated declarations." *Id.* at PageID# 1603-04, ¶ 73. Defendant-LaRose concurred in this conclusion, stating in his March 19, 2026 letter to the BOE that his vote was based on "Mr. Ronan's public statements" and "those of individuals associated with him and his candidacy, …." *Id.* at PageID# 1604, ¶ 74.

Plaintiff-Ronan's removal from the ballot caused him and Plaintiff-Cordero constitutionally-based injuries-in-fact. *Id.* at PageID# 1596, ¶¶ 35, 36; *id.* at PageID# 1606, ¶¶ 83, 85-88. These injuries were caused by Defendants' violation of Plaintiffs' First and Fourteenth Amendment rights, *id.*, as well as Defendants violation of the federal Elections Clause. *Id.* Their injuries can be redressed by a favorable decision entered by this Court within the meaning of Article III of the United States Constitution. *Id.* But for Defendants' violations of the First and Fourteenth Amendments, as well as the Elections Clause, Plaintiff-Ronan would have officially appeared on Ohio's May 5, 2026 primary ballot. *Id.* at PageID# 1598, ¶¶ 45, 46.

Notwithstanding that the primary election has now concluded, Plaintiffs' complaint remains alive under the capable of repetition yet evading review exception. *Id.* at PageID# 1598, ¶ 48. Plaintiff-Ronan in his verified Amended Complaint asserts that he "intends to run in Ohio Republican Party congressional primaries in Ohio and in Franklin County in 2028 and in the future," *id.* at PageID# 1597, ¶ 37, and Plaintiff-Cordero intends to vote for him. *Id.*, ¶ 39. Plaintiff-Ronan "intends to repeat the same political and ideological messages in his 2028 Ohio Republican

Party congressional campaign and in the future when he runs in Ohio Republican Party congressional primaries in Ohio and in Franklin County." *Id.* ¶ 38. Plaintiff-Ronan has been branded by Defendants as a Democrat illegally seeking to run in Republican primaries, *id.* ¶ 40, and he sufficiently risks being protested again for this reason when he runs in future Republican congressional primaries in Franklin County. *Id.*

Out of an abundance of caution, Plaintiffs have also alleged a plausible pre-enforcement action against Defendants in their Amended Complaint. Plaintiff-Ronan intends to run again and "is ready, able and qualified to run in Ohio Republican Party congressional primaries in Ohio, including those in Franklin County, in 2028 and in the future." *Id.* at PageID# 1598, ¶ 47. Plaintiff-Cordero not only intends to vote for him but she is also "ready, able and qualified to vote for Plaintiff-Ronan in Ohio Republican Party congressional primaries in Ohio, including those in Franklin County, in 2028 and in the future." *Id.*

Plaintiff-Ronan "suffers a substantial risk that because of Defendants' past, present and future actions he will be removed from Ohio Republican Party primary ballots in Ohio and Franklin County when he runs in those primaries in 2028 and in the future." *Id.* at PageID# 1597, ¶ 41. "Plaintiff-Ronan [also] suffers a substantial risk of future (albeit unconstitutional) criminal election-falsification prosecution because of Defendants' past, present and future actions." *Id.*, ¶ 42. These "substantial" risks are "caused by Defendants' past, present and future actions and can likely be redressed by a favorable decision of this Court within the meaning of Article III of the United States Constitution." *Id.*, ¶ 43.

## **Legal Standards**

Facial jurisdictional attacks under Rule 12(b)(1), which is the only challenge Defendant-LaRose makes here, *see* LaRose Mot., ECF No. 73, at PageID# 1671, assume the truth of the

plaintiff's allegations in the well-pleaded complaint. *See*, *e.g.*, *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). The same is true for all merits-based Rule 12(b)(6) motions. *See*, *e.g.*, *VCST Int'l B.V. v. Borgwarner Noblesville*, 142 F.4th 393, 399 (6th Cir. 2025). Consequently, for both the jurisdictional and merits-based motions under Rule 12(b), dismissal may be ordered "only if [the] complaint does not state a 'plausible' claim." *Id. See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (same).

"When evaluating a complaint's plausibility, courts must accept its factual allegations as true and draw 'all reasonable inferences in' the plaintiff's favor. They also must restrict their review to the 'four corners' of the complaint and a limited set of other materials, such as documents that the complaint refers to and depends on." *Noblesville*, 142 F.4th at 399. Further, in deciding facial Rule 12(b)(1) motions and Rule 12(b)(6) motions "[c]ourts may also consider public records, matters of which a court may take judicial notice," *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), including formal, publicly available administrative records that are under review. *See*, *e.g.*, *Resch v. Baydoun*, 2016 WL 8703616, *2 (E.D. Mich. 2016); *Ruffin v. Frisch's Restaurant*, 2009 WL 3055424, *3 n.2 (S.D. Ohio 2009).

## **Argument**

Plaintiffs have stated factually and legally plausible § 1983 claims against Defendant-LaRose and Defendant-BOE under the First Amendment and the Elections Clause. These claims, moreover, have not been rendered moot by the conclusion of the primary election, since Plaintiffs have plausibly alleged that they fall into the capable of repetition yet evading review exception. Further, even assuming that exception does not apply, Plaintiffs have plausibly pleaded a proper

pre-enforcement action against Defendant-LaRose and Defendant-BOE under § 1983, the First Amendment and the Elections Clause.

## I. LaRose Concedes that Plaintiffs Have Plausibly Alleged Collateral Estoppel and Therefore His Rule 12(b)(6) Motion to Dismiss Must Fail.

Plaintiffs plausibly allege that Defendant-LaRose is collaterally estopped under *Parklane Hosiery v. Shore*, 439 U.S. 322 (1979), from arguing that Ohio law codifies an administratively enforceable good faith requirement on primary candidates, including Plaintiff-Ronan. Am. Comp., ECF No. 71 at PageID# 1601, ¶ 63. Defendant-LaRose does not challenge the plausibility of this claim in his motion to dismiss and accordingly concedes for purposes of his motion that it is plausible and proper.[6]

Even if Defendant-LaRose did not waive his challenge, Plaintiffs have plausibly alleged offensive collateral estoppel in the Amended Complaint. Plaintiffs' Amended Complaint includes references to and quotes from litigation documents establishing that in *Jolivette*, 886 F. Supp. 2d 820, the Ohio Secretary of State and Attorney General argued, as a necessary part of their case, that Ohio law does not authorize elections officials to question the political good faith of candidates seeking to run in primary elections, let alone remove those candidates from ballots based on political dishonesty. *See* Am. Com., ECF No. 71 at PageID# 1600-01, ¶¶ 59, 60, 61, 62. These documents not only establish that until the present case the Secretary of State and Attorney General understood that Ohio law does not codify an administratively enforceable political good faith requirement for primary candidates, they also prove that the matter was actually litigated in

[6] Defendant-LaRose claims that Plaintiffs are attempting to invoke "judicial estoppel," *see* LaRose Mot., ECF No. 73 at PageID# 1680, which is different from and more demanding than offensive collateral estoppel under *Parklane Hosiery*. Although it may be that Defendant-LaRose should also be judicially estopped, Plaintiffs do not rely on judicial estoppel in their Amended Complaint.

*Jolivette*. The District Court in *Jolivette*, 886 F. Supp. 2d at 835, concluded—agreeing with the Secretary of State on this issue and ruling against the challenger—that "there is no requirement that the candidate make the [political party] change in good faith."[7] This adjudicated legal finding cannot be reconciled with "[t]he Secretary's [self-described] position here … that under Ohio Rev. Code § 3513.07, a candidate signing a declaration of candidacy must aver to its contents under penalty of election falsification and, thus, in good faith." LaRose Opp., ECF No. 66 at PageID# 1540. Defendant-Secretary's argument under O.R.C.§ 3513.07 here, he thus concedes, is nothing more than the same good faith position he argued against in *Jolivette*.

Under the offensive collateral estoppel doctrine recognized in *Parklane Hosiery*, Defendant-LaRose's office, having been a party to *Jolivette* and having actually litigated this issue to conclusion, is now collaterally estopped (issue preclusion) from relitigating whether Ohio law imposes an administratively enforceable political good faith requirement on primary candidates. In *Jolivette*, the Secretary argued that Ohio law imposed no such requirement, the issue was fully and fairly litigated, and both the District Court and the Sixth Circuit agreed with the Secretary. Collateral estoppel now bars Defendant-LaRose from arguing the contrary here. As explained by the Sixth Circuit in *In re E.I. DuPont de Nemours & Co. C-8 Personal Injury Litigation*, 54 F.4th

[7] The *Jolivette* Court's conclusion is certainly correct. Representative Nein's 1995 change to Ohio law eliminated Ohio's objective two-year-look-back provision placed on primary candidates, and according to Nein "[a]llows a person to run for election in a party primary regardless of their party affiliation." *See* Am. Com., ECF No. 71 at PageID# 1599, ¶ 54 (quoting Memo from Scott R. Nein to Members of the Campaign Finance Reform Task Force, June 13, 1995, at 5) (emphasis added). LaRose admits Nein's explanation of his bill (which passed) contradicts his (LaRose's) own interpretation; the only way to reconcile them, LaRose observes in his motion to dismiss, is to insert the word "previous" before "party affiliation" in Nein's explanation. LaRose Motion, ECF No. 73 at PageID# 1683. But "previous" is not part of Nein's explanation, and recreating Nein's bill in this fashion would also contradict the remedy Nein's changes added in O.R.C. § 3513.192, which removes a primary candidate only when he votes in the other party's primary during the same election cycle. *See* Taft Advisory, Am. Com., ECF No. 71 at PageID# 1599, ¶ 55.

912 (6th Cir. 2022), offensive collateral estoppel based on a federal judgment is warranted when the estopped party had a full and fair opportunity to litigate a critical issue in a prior case.[8]

Whether conceded or not, Plaintiffs plausible claim to collateral estoppel is fatal to Defendant-LaRose's motion to dismiss. Application of collateral estoppel means that Ohio law includes no administratively enforceable good faith requirement for primary candidates. Defendant-LaRose, Defendant-Freedhoff, and Defendant-Preisse included one and thereby changed Ohio law. Only the legislature can do that with federal elections. As explained below, this executive creation and application of new law to a federal election violates the Elections Clause in Article I of the Constitution. Further, it also means that Defendants could have had no legitimate purpose in removing Plaintiff-Ronan from the primary ballot sufficient to overcome his First Amendment rights. The Amended Complaint thus states a proper claim even if the minimal level of rational basis scrutiny is applied to Plaintiffs' First Amendment claim. *See Neinast v. Board of Trustees of Columbus Metropolitan Library*, 346 F.3d 585, 592 (6th Cir. 2003) ("The rational basis test requires the court to ensure that the government has employed rational means to further its legitimate interest.").

## II. Plaintiffs' First Amendment Claim is Well-Pleaded and Plausible.

Even without the benefit of collateral estoppel, Plaintiffs' Amended Complaint states a plausible First Amendment claim. The Supreme Court and the Sixth Circuit have both recognized that the punishment of speech based on alleged falsity necessarily reflects a content-based

---

[8] The four requirements of offensive collateral estoppel are: (1) the issue in the instant case must be the same as in the prior litigation; (2) the issue must have been litigated in the prior adjudication; (3) the determination of the issue in the prior adjudication must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the prior litigation. *See NLRB v. Master Slack and/or Master Trousers,* 773 F.2d 77, 81 (6th Cir.1985); *Central Transport Inc. v. Four Phase Systems, Inc.,* 936 F.2d 256 (6th Cir.1991). All four requirements are satisfied here.

decision. *See United States v. Alvarez*, 567 U.S. 709 (2012) (plurality) (subjecting Stolen Valor Act to strict scrutiny because content-based); *Susan B. Anthony v. Driehaus*, 814 F.3d 466, 473 (6th Cir. 2016) (concluding that "Ohio's political false-statements laws target speech at the core of First Amendment protections—political speech" and are content-based); *see also United States v. Swisher*, 811 F.3d 299, 307 (9th Cir. 2016) ("Because [the statute] criminalized specific statements based on their falsity, the government did not dispute that the statute imposed a content-based restriction on speech.").

Additionally, after this Court and the Sixth Circuit denied preliminary relief here, the Eighth Circuit ruled unconstitutional a state law that criminalized false statements about voter eligibility. *See Minnesota Voters Alliance v. Ellison*, 188 F.4th 1067 (8th Cir. 2026). In doing so the Eighth Circuit first recognized that false speech is protected by the First Amendment. Next, it ruled that false speech restrictions are content-based. *Id*. at 1080. Last, it concluded that the false speech law could not pass strict scrutiny. *Id*. at 1081. Cases are virtually unanimous that political false-speech restrictions are content-based and subject to strict scrutiny.

According to the Amended Complaint, Plaintiff-Ronan was not allowed to advance his candidacy because Defendant-LaRose and two BOE members concluded his declaration of candidacy was inconsistent with his and his associates' prior and present political speech, was not made in good faith, and thus could be administratively punished. This is nothing less than punishing political speech based on alleged falsity. It is content-based and subject to strict scrutiny.

Of course, Defendant-LaRose now asserts that the reason Plaintiff-Ronan was removed is because he "lied" and is guilty of election falsification. As the well-pleaded facts described above show, this is not true. Plaintiffs' well-pleaded Amended Complaint asserts he did not lie, did not say anything false, did not commit election falsification, and was removed based on the content of

his speech. Dismissal based on Defendant-LaRose's "he lied" theory is therefore way outside the bounds of Rule 12(b).

But even if Defendant's theory were supported by the Amended Complaint, any false speech Plaintiff-Ronan uttered would still be fully protected from punishment by the First Amendment. *Alvarez*, *Driehaus* and *Ellison* make this clear. Contrary to Defendant-LaRose's argument, false speech – even a "lie" with intent to deceive, which constitutes a narrower subcategory of false speech, *see supra* note 2 – is constitutionally protected. Whether an alleged political "lie" or more broadly false political speech, punishment is subject to strict scrutiny.

Defendants' assumption that they (as state elections officials) have the constitutional authority to question the political honesty and credibility of federal candidates based on alleged inconsistencies in their statements and declarations, moreover, plainly violates First Amendment teachings from the Supreme Court. In *Boy Scouts of America v. Dale*, 530 U.S. 640, 651 (2000), the Court explained that it is not the proper role of government or even "the role of the courts to reject a group's expressed values because they disagree with those values or find them internally inconsistent." "[W]e give deference to an association's assertions regarding the nature of its expression." *Id*. The same must be true of Plaintiff-Ronan's speech. Deference is due to what he claims his political speech means. His speech cannot be punished because government officials or courts interpret it differently from what he says he meant.

That false, alleged "bad faith" political speech is fully protected, and that elections officials cannot punish it in administrative proceedings, is best demonstrated by the Sixth Circuit's ruling in *Driehaus*, a case that is not addressed let alone distinguished in Defendant-LaRose's motion to dismiss. There the Sixth Circuit invalidated Ohio's administratively enforceable political false-statement law using strict scrutiny. In so holding, *Driehaus* relied on the Supreme Court's ruling

in *Alvarez*, which had ruled that false speech remains constitutionally protected. Of critical importance, the *Driehaus* Court ruled that the Sixth Circuit's prior decision in *Pestrak v. Ohio Elections Commission*, 926 F.2d 573 (6th Cir. 1991), which had held that Ohio's political false-statement laws are constitutional, had been rendered obsolete by *Alvarez*: "*Alvarez* abrogates *Pestrak's* holding that knowing false speech merits no constitutional protection," the *Driehaus* Court ruled. 814 F.3d at 471.[9] "In *Pestrak,* we determined that, on their face, Ohio's political false-statements laws were constitutional because 'false speech, even political speech, does not merit constitutional protection ….'" *Id*. at 471-72 (citation omitted). "*Alvarez* … repudiates *Pestrak's* assumption ….'" *Id*. at 472. "Accordingly, we are not bound by *Pestrak*'s determination that Ohio's political false-statements laws are constitutional ….'" *Id*. Here, Defendant-LaRose erroneously resurrects *Pestrak's* discredited reasoning while ignoring the holding and rationale of *Driehaus*.

Applying strict scrutiny to protect allegedly false political speech is proper, the Sixth Circuit in *Driehaus* explained, because "the First Amendment protects the 'civic duty' to engage in public debate, with a preference for counteracting lies with more accurate information, rather than by restricting lies." *Id*. (citation omitted). "Political speech," after all "is at the core of First Amendment protections." *Id*. at 473. While conceding that Ohio has a compelling interest in promoting fair elections, the Sixth Circuit concluded that Ohio's means – allowing practically anyone without screening mechanisms to initiate proceedings before the Elections Commission –

[9] Attorney General DeWine made this same point—that *Alvarez* abrogated *Pestrak*—in his brief to the Supreme Court in *Driehaus*. *See* Brief Amicus Curiae Ohio Attorney General Michael DeWine in Support of Neither Party, *Susan B. Anthony List v. Driehaus*, No. 13-193, at 2 (U.S., March 3, 2014) https://mediacoalition.org/files/litigation/sba-list-driehaus-amicus-ohio-ag-dewine.pdf. Indicative of how far Defendant-LaRose has strayed here, his present position in this case completely contradicts that of Mike DeWine in *Driehaus*.

are not narrowly tailored. "Ohio fails to screen out frivolous complaints prior to a probable cause hearing," the Court stated. *Id*. (citation omitted). This "provides frivolous complainants an audience and requires purported violators to respond to a potentially frivolous complaint." *Id*. "'Because the universe of potential complainants is not restricted to state officials who are constrained by explicit guidelines or ethical obligations, there is a real risk of complaints from, for example, political opponents.'" *Id*. (citations omitted and emphasis added). "Indeed, some complainants use the law's process 'to gain a campaign advantage without ever having to prove the falsity of a statement ... tim[ing] their submissions to achieve maximum disruption ... forc[ing political opponents] to divert significant time and resources ... in the crucial days leading up to an election.'" *Id*. (citations omitted). Consequently, the Sixth Circuit ruled, "having a panel conduct a probable cause review for plainly frivolous or non-actionable complaints is not narrowly tailored to preserve fair elections." *Id*. at 475.

Requiring political good faith of primary candidates and allowing protestors to challenge allegedly false candidate declarations (*i.e.*, their core political speech)—as was done by Schare here—is constitutionally dubious for all of these reasons. Protests are not restricted to state officials who are constrained by strict guidelines and ethical obligations, but can be filed by practically anyone. This gives rise to the "real risk of complaints from … political opponents" that was lamented in *Driehaus*. That risk matured to reality here, where Schare was (whether he knew it or not) used by the Carey campaign and ORP to protest and remove Ronan, Carey's only electoral opponent.

Commonality between the procedures constitutionally condemned in *Driehaus* and those in the present case runs even deeper. Just like the old Ohio Elections Commission, Boards of Elections have no power to screen out and dismiss frivolous protests. Here, for example, BOE

rejected Plaintiff-Ronan's attempt to dismiss the protest by expressly stating that it had no power to entertain such a motion. Thus, Schare's protest had to be heard.

If that were not enough, the Sixth Circuit recently reinforced *Driehaus* in *Fischer v. Thomas*, 176 F.4th 470 (6th Cir. 2026), which was handed down one week after Ohio's May 5, 2026 primary. (LaRose fails to mention *Fischer*, even though Plaintiffs relied on it in winning leave to file their Amended Complaint.) In *Fischer* the Sixth Circuit stated that that "the First Amendment gives candidates 'a constitutional right to portray themselves as a member of a political party.'" *Id*. at 478 (quoting *Winter v. Wolnitzek*, 834 F.3d 681, 688 (6th Cir. 2016)). "[T]he First Amendment protects candidates' rights to share information about how they will approach the issues of the day." *Id*.

Under the First Amendment reasoning in *Fischer*, Plaintiff-Ronan possesses a constitutional right (both before and after his declaration self-identifying himself as a Republican) to politically "portray" himself as he chooses. He has a First Amendment right to say he is a Democrat even though he previously self-identified himself as a Republican. Consequently, even if Ronan here had stated that he remained a Democrat after declaring himself to be a Republican—something he did not do (and which would have been false)—he could not be punished for doing so. To use what really happened here as another example, Ronan's stating (both before and after his declaration) that he wanted Democrats to run in Republican primaries, to "infiltrate" them even, is fully protected by the First Amendment. Plaintiff-Ronan has the First Amendment right to advocate infiltrating Republican Party primaries just as he would have had the First Amendment right (before and after his declaration) to say that he continued to consider himself a Democrat.

While neither *Driehaus* nor *Fischer* was a ballot access case, the logic behind their rulings applies equally to candidates running for public office. This was made clear by the Sixth Circuit's

ruling in *Brown v. Yost*, 133 F.4th 725 (6th Cir. 2025), *stay denied*, 145 S. Ct. 1957 (2025). There, Ohio law authorized the Attorney General to block popular initiatives from ballots if he found their summaries to be false or misleading. According to the statute, summaries had to be "fair and truthful" descriptions of the initiatives' contents. *See Yost*, 133 F.4th at 728. The Sixth Circuit analyzed the restriction first under the traditional First Amendment principles applied to content-based restrictions in cases like *Meyer v. Grant*, 486 U.S. 414, 422 (1988), and *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 258 (1974), and then under the *Anderson-Burdick* framework. *See Yost*, 133 F.3d at 732-37. Under either analysis, the Court concluded, Ohio's content-based "fair and truthful" restriction on ballot access was subject to strict scrutiny. *See id.* at 735, 738. Measuring the truthfulness of political speech, the Court made clear, is necessarily content-based. And because it is content-based it risks "alter[ing] or disrupt[ing] a party's own expressive activity." *Id.* at 733 (citation and quotation marks omitted).

Ohio has chosen to adopt self-identification for its primaries. Having done so, its election officials cannot consistent with the First Amendment use what they deem to be internally inconsistent statements about party membership to punish primary candidates for what they (elections officials) deem to be "false" self-identifications. Plaintiff-Ronan here cannot be punished for "impure" political motives or political bad faith. He cannot be punished for identifying with a political party or two political parties. The First Amendment prohibits it. *See* Rick Hasen, *DOJ Issues Grand Jury Subpoenas in "Dan J. Sullivan" Case, Raising Serious First Amendment Issues in Potentially Prosecuting Someone for Impure Political Motives*, Aug. 18, 2026, Election Law Blog, https://electionlawblog.org/2026/doj-issues-grand-jury-subpoenas-in-dan-j-sullivan-case-raising-serious-first-amendment-issues-in-potentially-prosecuting-someone-for-impure-political-motives/ ("It would be quite dangerous for the state to start criminally

prosecuting people for their political beliefs and secret motives. … I expect that if [Sullivan, the senatorial candidate in Alaska] is indicted, that these First Amendment issues would loom quite large.”).

Plaintiffs here have plausibly alleged facts that demonstrate Plaintiff-Ronan was removed from the ballot in violation of the First Amendment. The cases make plain that strict scrutiny applies. But even if only rational basis review were proper, Defendant-LaRose must still lose his motion for lack of a legitimate purpose. As argued above, Defendant-LaRose is collaterally estopped from claiming that Ohio law codifies an administratively enforceable political good faith requirement on primary candidates. And as argued below, even if he is not estopped, Plaintiffs plausibly plead that Ohio does not codify such a requirement. Either way, Defendants cannot claim a legitimate interest in removing Ronan from the ballot.

## III. Plaintiffs' Elections Clause Claim Is Well-Pleaded and Plausible.

Plaintiffs' Amended Complaint develops and expands their argument under the federal Elections Clause in Article I, § 4. While violations of State law are not usually the stuff of federal constitutional violations, they can be under the Elections Clause. That is the case here. Neither Defendant-LaRose nor Defendant-BOE possesses the authority to alter Ohio's statutory laws, either through interpretations or enforcement proceedings, when applied to federal elections. The Elections Clause provides the sole authority by which States may regulate the “Time, Place and Manner” of congressional elections, *see Cook v. Gralike*, 531 U.S. 510, 522 (2001), and it grants that power to State legislatures.

Plaintiffs argue in their Amended Complaint that State executive officials—including Defendant-LaRose and Defendant-BOE—have no power to change, alter or add to Ohio's ballot access laws for congressional elections. Even if Defendant-LaRose is not collaterally estopped

from making the argument, precedent and legislative history prove that the political good faith requirement that Defendant-LaRose (and Defendant-BOE through two of its four members) enforced against Plaintiff-Ronan has no basis in Ohio law. By enforcing it in the context of a congressional primary election, Defendants exceeded their authority under the Elections Clause.

This Court in *Libertarian Party of Ohio v. Brunner*, 577 F. Supp.2d 1006, 1012 (S.D. Ohio 2008), recognized this limitation in a case involving the Ohio Secretary of State's attempt to create ballot access laws for federal elections. Because the General Assembly failed to act after Ohio's ballot access laws had been ruled unconstitutional, then-Secretary Brunner "establishe[d] a new structure for minor party ballot access, a structure not approved by the Ohio legislature." *Id*. at 1012. "As to federal offices," this Court ruled, "Article I, Section 4 and Article II, Section 1 [for the President] vest exclusive power to establish such a structure in the state legislature." The Secretary's rules were thus invalid under Article I to the extent they applied to congressional elections, and Article II to the extent they applied to presidential elections. *See also Libertarian Party of Louisiana v. Dardenne*, 2008 WL 11351516, *2 (M.D. La. 2008) ("only the legislative branch has the authority, under Articles I and II of the United States Constitution, to prescribe the manner of electing candidates for federal office"), *vacated on other grounds*, 308 Fed. Appx. 861 (5th Cir. 2008); *Moore v. Hosemann*, 2008 WL 11439423, *1 (S.D. Miss. 2008) (same); Michael T. Morley, *The Independent State Legislature Doctrine*, 90 FORD. L. REV. 501, 509 (2021) (stating that under Articles I and II state "officials may not take it upon themselves to suspend or ignore state law").

This "independent legislature" restriction on State executive interpretations of legislatively enacted election laws was recognized by Justices Alito and Gorsuch in *Moore v. Circosta*, 141 S. Ct. 46 (2020) (Gorsuch, J., dissenting), an emergency application arising during the pandemic-

infested 2020 election. There, the Supreme Court (by a 5-3 vote) refused emergency relief and let stand a consent decree executed by the North Carolina State Board of Elections that extended the deadline for absentee ballots in federal elections. Justice Gorsuch, dissenting, would have granted emergency relief, stating that it is "egregious" for "a state court and the Board [of Elections] [to] work [] together to override a carefully tailored legislative response to COVID." *Id*. at 47. He added that "efforts like these ... offend the Elections Clause's textual commitment of responsibility for election lawmaking to state and federal legislators ...." *Id*. at 48.

Here, Ohio's General Assembly has created an administratively enforceable political good faith requirement for independent candidates running in general elections. However, as the Ohio's Secretary recognized (and argued) in *Jolivette*, and as this Court decided in *Jolivette*, this requirement was not extended by the General Assembly to primary elections. Defendant-LaRose, Defendant-Preisse and Defendant-Freedhoff ignored *Jolivette*, even though it was repeatedly pointed to by Ronan, and did so anyway here. They by executive fiat created a new law for Ohio's federal primaries, something they lack power to do under Article I, § 4.

*Moore v. Harper*, 600 U.S. 1 (2023), does not alter this result. "*Moore* recognizes that the principle of ordinary *judicial review* provides a check for lawmaking bodies who transgress state-law limits on their regulatory authority over elections." *Gardner v. Henderson*, 2026 WL 496448, *12 (D. Utah, Feb. 23, 2026) (emphasis added). *Moore*'s holding thus does not apply to executive usurpations of legislative power. Even in the context of State court review, moreover, State courts may go too far under *Moore*. "As in other areas where the exercise of federal authority or the vindication of federal rights implicates questions of state law, we have an obligation to ensure that state court interpretations of that law do not evade federal law." *Id*. at 34. This remains especially

true where Ohio's executive officials, as opposed to its courts, take it upon themselves to create or re-create Ohio law.

Defendant-LaRose's, Defendant-Preisse's and Defendant-Freedhoff's rewriting of Ohio law is novel, unsupported, contradicts the stated intent of § 3513.191(B)'s author, contradicts the plain language of that statute, and even contradicts his office's and the Attorney General's prior argument in *Jolivette* that Ohio law does not impose on primary candidates what it requires of independents. Their rewriting of Ohio law flouts both precedent and what Ohio's General Assembly has codified. Plaintiff-Ronan is the first and only primary candidate ever to be removed from the ballot in Ohio by elections officials for lacking political good faith or engaging in election falsification. That allegation against Plaintiff-Ronan is not only incorrect, it would not justify Ronan's removal under Ohio law even if it were true. Ohio law imposes no such requirement. Defendant-LaRose, Defendant-Freedhoff and Defendant-Preisse acted *ultra vires* under the Elections Clause in creating it.

Furthermore, by arrogating to himself the power to judge the credibility and consistency of Plaintiff-Ronan's political speech, Defendants improperly usurped the role of Ohio voters in choosing their preferred candidates. The Court in *Cook*, 531 U.S. at 523, ruled under the Elections Clause that States have no "power to dictate electoral outcomes." *Id*. (citation omitted). Chief Justice Rehnquist concurred to emphasize that restrictions on congressional ballots are valid only when "they are justified without reference to the content of the regulated speech …." *Id*. at 531 (C.J., concurring) (emphasis added). Defendants violated both these principles here; they used the content of Plaintiff-Ronan's speech to remove him, and did so in order that Mike Carey could run unopposed. Their action thus directed the outcome of the primary election and stole from the electorate its precious power to vote.

The Alaska Supreme Court's action (handed down after Ohio's primary) in the thoroughly reported Sullivan Senate controversy further supports both the merits of Plaintiffs' Elections Clause challenge, as well as its justiciability. *See Alaska Division of Elections v. Sullivan*, No. S-19935 (Alaska S.Ct., June 29, 2026), *aff'd*, No. 3AN-26-07485CI (Alaska Superior Ct., June 26, 2026).[10] There, Alaska's chief election official removed a candidate, Dan J. Sullivan, from the congressional (Senate) ballot based on her belief that he was not a serious, good faith, Republican candidate, but was instead simply attempting to confuse voters and assist the Democratic candidate. (The incumbent's name is Dan S. Sullivan.) A state trial court ruled that the election official had no authority to do this under Alaska law and that the executive's action in creating such a rule violated the federal Elections Clause. The Alaska Supreme Court affirmed (it has yet to release its opinion).[11] The Alaska decision contradicts Defendant-LaRose's unsupported assertion that the Elections Clause is not enforceable, reinforces *Gralike*'s conclusion that it is, and adds support to the Supreme Court's conclusion in *Bost v. Illinois State Elections Board*, 146 S. Ct. 513 (2026), that candidates are entitled to fair procedures under settled laws. This new precedent was not available when this Court denied preliminary relief and is incorporated into Plaintiffs' Amended Complaint.

Defendant-LaRose's claim that no private plaintiff, such as a voter or candidate, can ever enforce the federal Elections Clause is frivolous. *See* LaRose Mot., ECF No. 73 at PageID# 1683-

[10] The Alaska Superior Court's opinion is available at https://npr.brightspotcdn.com/4a/66/8f7ce0f044e1a4b9a53e11952043/order-on-administrative-appeal.pdf (last visited October 2, 2026).

[11] A federal court in Alaska recently rejected the Department of Justice's attempt to overturn the Alaska state courts' decisions and dismissed its claim that the inclusion of Dan J. Sullivan's name on the ballot somehow violated federal law. *See United States v. Alaska*, 2026 WL 3271034 (D. Alaska, Nov. 1, 2026).

84. Indeed, it is contradicted by the holding of the Supreme Court in *Gralike*, 531 U.S. 510, which sustained a section 1983 challenge brought by an adversely affected candidate under the Elections Clause. *See Gralike v. Cook*, 996 F. Supp. 917, 918 (W.D. Mo. 1998) ("Plaintiff Donald James Gralike brought this action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief against Missouri Secretary of State"). It is also contradicted by this Court's decision in *Brunner*. Plaintiffs' claim here is procedurally no different from those in *Gralike* and *Brunner*. Plaintiff-Ronan claims that Defendants took adverse action against his candidacy without the power to do so under the Elections Clause. His claim is made under § 1983, which creates a private right of action. *See also Coalition for Humane Immigrant Rights v. Department of Homeland Security*, 2026 WL 3306646 (D.D.C., Nov. 2, 2026) (upholding private cause of action under Elections Clause against federal executive interference).[12] His claim is plausible and proper.

## IV. Plaintiffs' Plausibly Allege That They Possess Article III Standing and That Their Case Is Not Moot.

The Sixth Circuit declined to vacate this Court's Order denying preliminary relief when it dismissed the interlocutory appeal both because denials of preliminary injunctive relief have no preclusive effect, *see* Opinion and Order, ECF No. 45, and because "the underlying district court litigation ostensibly remains live." *Id.* The Sixth Circuit's conclusion is correct. Plaintiffs' case

[12] Defendant-LaRose's "cf." citations to *Bognet v. Secretary Commonwealth of Pennsylvania*, 980 F.3d 336 (3d Cir. 2020), *vacated*, 593 U.S. 924 (2021), *Lance v. Coffman*, 549 U.S. 437 (2007), and *Lindsey v. Whitmer*, 124 F.4th 408 (6th Cir. 2024), are not to the contrary. In each of those cases the courts found that the plaintiffs failed to identify individual as opposed to generalized injuries and thereby lacked Article III standing. As the Supreme Court recently made clear in *Bost v. Illinois State Elections Board*, 146 S. Ct. 513 (2026), candidates (like Ronan) most certainly possess Article III standing to challenge the application of state election laws to their candidacies.

remains alive both because of continuing and future injuries suffered by Plaintiffs and because of the capable of repetition exception to mootness.

**A. Plaintiffs Have Properly Pleaded Future and Continuing Injuries.**

As described in detail above, Plaintiffs have properly pleaded in their Amended Complaint a pre-enforcement challenge based on future and continuing injuries. Because of these future and continuing injuries their case cannot be moot. The Supreme Court has made plain that pre-enforcement actions are proper under Article III. Plaintiffs' Amended Complaint properly states a well-pleaded pre-enforcement action against Defendant-LaRose and Defendant-BOE based on what Plaintiffs intend to do in the future. "[A] party need not always wait for the government to take coercive action against it before filing suit to challenge the government's conduct. Instead, a litigant may bring a pre-enforcement suit seeking prospective relief against government officials so long as it faces 'a credible threat of enforcement.'" *First Choice Women's Resource Center v. Davenport*, 146 S. Ct. 1114, 1122 (2026) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161, 164–167 (2014)).

*Driehaus*, 573 U.S. 149, procedurally (as well as substantively, *see supra* at pages 21-23) mirrors Plaintiff-Ronan's case. There, the plaintiffs had been administratively charged with violating Ohio's false political speech law. Those charges had been dismissed, but the plaintiffs feared being charged again. The Supreme Court ruled that their pre-enforcement challenge was proper and that they possessed Article III standing because they alleged a "credible threat" of future enforcement. *Id*. at 161. "First, [plaintiffs] have alleged 'an intention to engage in a course of conduct arguably affected with a constitutional interest.'" *Id*. (citation omitted). "Next, [plaintiffs'] intended future conduct is 'arguably ... proscribed by [the] statute' they wish to challenge." *Id*. at

162 (citation omitted). "Finally, the threat of future enforcement of the false statement statute is substantial. Most obviously, there is a history of past enforcement here." *Id*. at 164.

Defendant-LaRose's claim that Plaintiffs' complaint is "not yet ripe," LaRose Mot., ECF No. 73 at PageID# 1674, fails here for the same reasons it failed in *Driehaus*. Once the court has "already concluded that [plaintiffs] have alleged a sufficient Article III injury," 573 U.S. at 167, nothing more in terms of ripeness can, consistent with federal courts' obligations to hear cases, be demanded. *Id*. Further, where the question presented is a legal one (as in the present case), *id*., and where "denying prompt judicial review would impose a substantial hardship on [plaintiffs], forcing them to choose between refraining from core political speech on the one hand, or engaging in that speech and risking costly Commission proceedings and criminal prosecution on the other" (as in the present case), *id*. at 167-68, the case is most certainly ripe.

Here, Plaintiffs have alleged an intent to engage in the exact same conduct again in 2028. That conduct is proscribed by Defendants' determination as final policymakers that such conduct violates an Ohio requirement that primary candidates declare their political affiliations in good faith. Even if this newly-minted, administratively enforceable political good faith requirement would not necessarily succeed in precluding Plaintiff-Ronan's future candidacy, there is a substantial and credible risk that protestors and elections officials (including Defendants, who are sued in their official capacities) will attempt to enforce it against him (and others) in the future. Defendants have not disavowed their intention to do so—on the contrary, they maintain that it is a proper exercise of their authority under Ohio law. That they can do so chills Plaintiffs' First Amendment rights. Plaintiffs thus have standing to bring a pre-enforcement challenge based on "the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights." *Laird v. Tatum*, 408 U.S. 1, 11 (1972); *see also*

*Chiles v. Salazar*, 607 U.S. 627, 637 n.* (2026) (holding that "chilling effect" supports pre-enforcement standing). Indeed, that Defendants have "fought this suit through three courts," *id*. at 637 n*, demonstrates their dedication to enforcing their *ultra vires* interpretation of Ohio law and the chilling effect it has on Plaintiffs' First Amendment rights.

Defendant-LaRose's claim that Plaintiffs lack standing because they have not alleged that Ronan "will seek [ballot access] in bad faith or lie in a future declaration of candidacy," LaRose Mot, ECF No. 73 at PageID# 1673, confuses the merits of the case with Article III standing. Ronan claims that he did not act in bad faith nor lie in 2026, yet Defendants still applied an administratively enforceable good faith requirement to kick him off the ballot. Ronan claims in this pre-enforcement challenge he will do exactly the same thing in 2028 that he did in 2026, which he alleges did not include bad faith or lies, and thus risks being once again subjected to the same administratively enforceable good faith requirement. Ronan alleges he is ready and able to run again in Franklin County in Republican congressional elections, and Plaintiff-Cordero is ready and able to vote for him. They thus have standing to assert their pre-enforcement claim.

**B. Plaintiffs' Case Falls Comfortably Within the Capable of Repetition Exception.**

Plaintiffs properly plead that all their claims, including their First Amendment and Elections Clause claims, are capable of repetition yet evading review. *See* Am. Com., ECF No. 71 at PageID# 1598, ¶ 48. This case, like the vast majority of election controversies, "fit[s] comfortably within the established exception to mootness for disputes capable of repetition, yet evading review." *Federal Election Commission v. Wisconsin Right to Life*, 551 U.S. 449, 462 (2007). This Court, *see*, *e.g.*, *Coast Candidates PAC v. Ohio Election Commission*, 2012 WL 4322517 (S.D. Ohio 2012); *Schrader v. Taft*, 78 F. Supp.2d 708 (S.D. Ohio 1999), the Sixth Circuit, *see*, *e.g.*, *Corrigan v. City of Newaygo*, 55 F.3d 1211 (6th Cir. 1995); *Libertarian Party of Ohio v.*

*Blackwell*, 462 F.3d 579 (6th Cir. 2006); *Lawrence v. Blackwell*, 430 F.3d 368 (6th Cir. 2005); *American Civil Liberties Union v. Taft*, 385 F.3d 641 (6th Cir. 2004), its Sister Circuits, *see*, *e.g.*, *Moore v. Hosemann*, 591 F.3d 741, 744 (5th Cir. 2009), and most important the Supreme Court have all on numerous occasions applied the well-worn rule that election disputes are not mooted by elections. *See*, *e.g.*, *Norman v. Reed*, 502 U.S. 279 (1992) (holding that challenge to Illinois ballot restrictions was "capable of repetition yet evading review"); *Moore v. Ogilvie*, 394 U.S. 814 (1969) (holding that election challenge was "capable of repetition yet evading review"); *Grant*, 486 U.S. 414 (holding that a challenge to Colorado's ban on paid circulators was "capable of repetition yet evading review"); *Storer v. Brown*, 415 U.S. 724 (1974) (holding that an "as applied" challenge to various California election laws was "capable of repetition yet evading review"); *Democratic Party v. Wisconsin ex rel. La Follette*, 450 U.S. 107 (1981) (holding that an election challenge was not mooted by an intervening election); *Brown v. Chote*, 411 U.S. 452 (1973) (same); *Rosario v. Rockefeller*, 410 U.S. 752 (1973) (same).

The reason is simple: elections ordinarily conclude long before federal litigation can be completed. So long as a "reasonable expectation" exists that the constitutional problem will recur, it makes little sense to avoid it because of mootness. *See Storer*, 415 U.S. at 737 n.8 ("The construction of the statute, an understanding of its operation, and possible constitutional limits on its application, will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated before an election is held.") Establishing a reasonable expectation of recurrence, moreover, is not difficult. The likelihood need not even rise to the level needed to establish standing in the first instance, and is not a probable-cause or more-probable-than-not standard. *See Honig v. Doe*, 484 U.S. 305 (1988) ("Our concern ... in all [cases] involving potentially moot claims [is] whether the controversy [is] capable of repetition and not ... whether

the claimant had demonstrated that a recurrence of the dispute was more probable than not."). The Supreme Court observed in *Honig*, 484 U.S. 319 n.6, that it routinely "found controversies capable of repetition based on expectations that, while reasonable, were hardly demonstrably probable." (Citations omitted); *see also Libertarian Party of Ohio*, 462 F.3d at 585 (observing that the recurrence standard is "somewhat relaxed" in election cases).

Defendant-LaRose and Defendant-BOE claim that Plaintiffs' case includes "unique circumstances" which render it unfit for the capable of repetition yet evading review exception, but that is incorrect on two levels. First, political bad faith, impure motives and electoral gaming are (unfortunately) not unique. Gaming ballots with "impure" political purposes happens all the time. *See* Rob Richie, *Gaming the ballot is real. The Alaska scandal is greatly overblown*, Election Law Blog, Oct. 31, 2026, https://electionlawblog.org/2026/rob-richie-gaming-the-ballot-is-real-the-alaska-scandal-is-greatly-overblown/. Because gaming is a constant, allegations and protests based on perceived gaming and impure motives occur frequently. Indeed, they will only increase if elections officials are given the authority to question the political purity and good faith of candidates. [13]

Next, the circumstances that Courts sometimes mention to justify mootness are only "unique" when they *cause* or *contribute to* mootness. It is not simply that a case's facts are unique from the very beginning, as claimed here. "Unique circumstances" are attached to the mootness. For example, the "unique circumstance" of a legislative repeal of a challenged election law was used in *Libertarian Party of Ohio v. Husted*, 497 Fed. Appx. 581, 583 (6th Cir. 2012) ("As the

---

[13] That the kind of charge formally leveled against Plaintiff-Ronan appears to be unique and rare is because Ohio law has been understood since 1995 not to require political good faith on the part of primary candidates.

LPO's target, H.B. 194, was no more, there was nothing to enjoin or declare unconstitutional."), to support mootness. That repeal obviously did not exist when the case began, it was unique because it came later and caused the mootness.

Similarly, the later repeal of a law that was connected to the constitutional violation was used to support mootness in *Blackwell*, 462 F.3d at 584 ("In August 2001, the Ohio legislature changed the election falsification notice that is required on a political party petition form."). The development of a vaccine that helped end the COVID pandemic offers another example. *See Thompson v. DeWine*, 7 F.4th 521 (6th Cir. 2021). So does a change in the plaintiff's domicile after an election. *See La Botz v. Federal Election Commission*, 2014 WL 3686764, *7 (D.D.C. 2014) (observing that the candidate had moved to New York after the election was over).[14]

In all of these cases, the unique circumstances that overcame the capable of repetition exception involved factual and legal <u>changes</u> that caused or contributed to mootness. None of that is true here. Here the election and only the election caused mootness. The alleged unique circumstances that Defendants point to existed when the case was filed. They have not contributed in the least to mootness.

Both Plaintiffs' as-applied and facial First Amendment challenges, moreover, are exempted from mootness by the capable of repetition exception. The Supreme Court in *Wisconsin Right to Life*, 551 U.S. 449, made this point crystal clear:

> We have recognized that the 'capable of repetition, yet evading review' doctrine, in the context of election cases, is appropriate when there are 'as applied' challenges as well as in the more typical case involving only facial attacks. Requiring repetition of every 'legally

---

[14] By way of contrast, before the plaintiff had moved to New York, the court ruled that the capable of repetition yet evading review exception saved his complaint from mootness, even though the election was over: "Electoral disputes are thus 'paradigmatic' examples of cases that cannot be fully litigated before the particular controversy expires." *La Botz v. Federal Election Commission*, 889 F. Supp.2d 51, 59 (D.D.C. 2012).

> relevant' characteristic of an as applied challenge—down to the last detail—would effectively overrule this statement by making this exception unavailable for virtually all as-applied challenges. History repeats itself, but not at the level of specificity demanded by the FEC.

*Id*. at 463-64 (citations and quotation marks omitted). Defendant-LaRose's suggestion that Plaintiffs must specifically allege in detail that they will do precisely what they did before, while admitting that they did so dishonestly and in bad faith, is not only incorrect, it is preposterous. The capable of repetition exception does not require that "level of specificity," and certainly does not require an admission of dishonesty.

**V. Neither *Pullman* Abstention Nor *Pennhurst* Supports Dismissal.**

Defendant-LaRose's claim that *Pullman* abstention supports dismissal is incorrect. "Ordinarily, the proper course in ordering '*Pullman* abstention' is to … stay the federal suit pending determination of the state-law questions in state court." *Harris County Commissioners Court v. Moore*, 420 U.S. 77, 88 (1975). *See also Sylvia Landfield Trust v. City of Los Angeles*, 2009 WL 10700867, *3 (C.D. Cal. 2009) ("Where the Court abstains under *Pullman*, the proper procedure is to not dismiss the case, but to stay all further proceedings until the state courts have the opportunity to decide on the state law issue."); Dvorske, et al., 1A Fed. Proc., L. Ed. § 1:523 (2026) ("*Pullman* abstention requires a stay pending a decision in the state-court action and the retention of jurisdiction, not a dismissal of the federal court action"). Defendant-LaRose states no reason for not following this accepted rule here, and Plaintiffs can find no cases supporting Defendant-LaRose's argument.

*Pennhurst State School & Hospital*, 465 U.S. 89 (1984), meanwhile, is not relevant here since Plaintiffs do not seek to enforce State law. *Pennhurst* holds that although the *Ex parte Young*, 209 U.S. 123 (1908), exception to the Eleventh Amendment allows official-capacity challenges to State laws and actions under the Constitution, it does "not allow injunctive relief against state

officials for violation of *state law.*" *Municipality of San Sebastian v. Puerto Rico*, 116 F. Supp.3d 49, 57 (D.P.R. 2015) (emphasis original and citations omitted). Plaintiffs here, however, do not seek injunctive relief against Defendants under Ohio law. Plaintiffs seek declaratory and injunctive relief under the First Amendment and the federal Elections Clause.

## Conclusion

Plaintiffs respectfully request that Defendants' motion to dismiss their First Amendment and Elections Clause claims be DENIED.

Respectfully submitted,

*Mark R. Brown*

Mark R. Brown (81941)
*Counsel of Record*
Newton D. Baker/Baker & Hostetler Chair
CAPITAL UNIVERSITY*
303 East Broad Street
Columbus, Ohio 43215
614.236.6590
mbrown@law.capital.edu

Oliver Hall
Legal Counsel
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
202.248.9294
oliverhall@competitivedemocracy.org

* For purpose of identification only

## CERTIFICATE OF SERVICE

I hereby certify that this Response was filed with the Court and notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance. Parties may access this filing through the Court's system.

*Mark R. Brown*

Mark R. Brown

Attorney for Plaintiff