**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SAMUEL RONAN, et al.,** Plaintiffs, v. **FRANK LAROSE, et al.** Defendants. | ) | Case No. 2:26-cv-00343-SDM-SCS<br>Chief Judge Sarah Morrison |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS PREISSE, FREEDHOFF, SHUMAKER AND SEXTON'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs Samuel Ronan and Ana Cordero respectfully submit this Response in Opposition to the Motion to Dismiss Plaintiffs' First Amended Complaint, ECF No. 74, which Defendants Preisse, Freedhoff, Shumaker and Sexton (collectively, "Defendant-BOE") filed on October 28, 2026 ("BOE Motion"). Plaintiffs incorporate herein by reference their Response (filed this same day) to Defendant-LaRose's Motion to Dismiss Amended Complaint, ECF No. 73. As established in that Response ("LaRose Response"), Plaintiffs have stated plausible Elections Clause and First Amendment claims against both Defendant-LaRose and Defendant-BOE. To the extent Defendant-BOE's motion to dismiss addresses Plaintiffs' First Amendment and Elections Clause claims, it should be denied for the reasons stated in Plaintiffs' LaRose Response: Plaintiffs' First Amendment and Elections Clause claims are well-pleaded and plausible. Further, those claims are justiciable under Article III both as proper pre-enforcement claims and under the capable of repetition yet evading review doctrine.

This Response addresses Defendant-BOE's motion to dismiss Plaintiffs' Due Process claim. That claim is based on Defendant-Freedhoff's and Defendant-Preisse's actual or apparent bias against Plaintiff-Ronan and in favor of his lone competitor on Ohio's 15th congressional district primary ballot, the incumbent Mike Carey. As set forth below, Plaintiffs' Due Process claim is properly pleaded, plausible and survives Rule 12(b)(6) scrutiny. It also presents a plausible and proper pre-enforcement challenge and is not moot because it falls under the capable of repetition yet evading review exception. Plaintiffs have continuing Article III standing and their case survives Rule 12(b)(1) scrutiny.

## Well-Pleaded Facts

Plaintiffs incorporate herein by reference the statement of well-pleaded facts contained in their LaRose Response. Accordingly, Plaintiffs here set forth only the following well-pleaded facts that are relevant to their Due Process claim against Defendant-BOE.

Plaintiff-Ronan timely moved to disqualify Defendant-Freedhoff, a GOP member of the BOE, from participating in the protest. Am. Com., ECF No. 71 at PageID# 1593, ¶ 16. Plaintiffs had discovered before the BOE hearing that Defendant-Freedhoff contributed financially to Ronan's lone primary opponent, Mike Carey, during his 2024 campaign for the same office, *id*. at PageID# 1593, ¶ 19, and established at the hearing that she served on the same Franklin County Republican Party ("FCRP") Committee that Marc Schare, the protestor, served on. *See* BOE Trans., ECF No. 26-1 at PageID# 253; Am. Com., ECF No. 71 at PageID# 1593, ¶ 17. Plaintiffs also discovered before the hearing that FCRP on August 26, 2025 contributed $500 to Carey's 2026 congressional campaign, *see id*. at PageID# 1593, ¶ 18, and after the hearing that Defendant-Preisse donated at least $1000 to Carey's 2026 congressional campaign. *See* id. at PageID# 1593-94, ¶ 20. Additionally, public records revealed that Carey's campaign on December 31, 2025 contributed over ¶$10,000 to FCRP, which Defendant-Freedhoff chaired. *See id*. at PageID# 1593,

¶ 18. FCRP also formally endorsed Carey before the 2026 Republican primary election and before Plaintiff-Ronan's hearing before the Franklin County BOE. *See id*. at PageID# 1594, ¶ 21.

In addition to discovering that the named protestor, Schare, served on the same FCRP Central Committee as Defendant-Freedhoff, *see* BOE Trans., Doc. 26-1, at PageID# 253; Stipulations, ECF No. 30 at PageID# 1233, ¶ 3,[1] Plaintiffs also learned that Defendant-Freedhoff vice-chaired the Ohio Republican Party. *See* Stipulations, ECF No. 30 at PageID# 1234, ¶ 8. This proved important (and telling) because Plaintiffs learned after the hearing that the Ohio Republican Party was the true party in interest: it financed and directed Schare's protest against Plaintiff-Ronan at the direction of Carey's campaign. *See* Am. Com., ECF No. 71 at PageID# 1595, ¶¶ 28, 29

Defendant-Freedhoff not only rejected Plaintiffs' motion to disqualify her at the hearing, *id*. at PageID# 1593, ¶ 16, but also, she failed to acknowledge that these potentially debilitating conflicts of interest—which if not apparent before the hearing had become "sufficiently apparent" during the hearing, *see Wood v. Georgia*, 450 U.S. 261, 272 (1981)—might be debilitating to her participation in the protest. In particular, rather than inquire as to the identity of the real parties in interest, Defendant-Freedhoff and Defendant-Preisse terminated the very questioning Plaintiff-Ronan was pursuing, which would have provided the answer. Over Schare's lawyers' repeated objections, BOE Trans., ECF No. 26-1 at PageID# 256, 260, 261, 262, Plaintiff-Ronan elicited from Schare testimony establishing that he did not sign the protest, did not write it, did not deliver

[1] The Sixth Circuit takes a "liberal view" of what pleadings, documents and records may be considered in response to a Rule 12(b)(6) motion and has stated that "if extrinsic materials merely 'fill in the contours and details' of a complaint, they add nothing new and may be considered without converting the motion to one for summary judgment." *Armengau v. Cline*, 7 Fed. Appx. 336, 344 (6th Cir. 2001) (citation omitted). Stipulations as to Schare's and Freedhoff's roles within the GOP and FCRP fill in the contours and details of Plaintiffs' complaint and thus may be considered here consistent with Rule 12(b). *See also Miller v. Sprint Spectrum*, 2007 WL 4358313, *2 (W.D. Wash. 2007) (considering factual stipulations under Rule 12(b)(6)).

it, *id*. at PageID# 250, had never seen it, *id*. at 253, and was not responsible for paying his lawyers. *Id*. at PageID# 256-62; *see also* Am. Com., ECF No. 71 at PageID# 1591, ¶¶ 8, 9.

In response to Plaintiff-Ronan's additional attempt to specifically uncover whether the Carey campaign, the Franklin County Republican Party or the Ohio Republican Party was involved or was paying Schare's lawyers, *see*, *e.g*., BOE Trans., ECF No. 26-1 at PageID# 255-56, Defendant-Preisse interjected that "the Board is not interested in the payment process," *id*. at PageID# 260, and Defendant-Freedhoff added "Let's move on." *Id*. at PageID# 261.

Plaintiff-Ronan's lawyer's repeated arguments that "this is extremely important to [Ronan's] constitutional defenses," *id*. at PageID# 260, "extremely relevant," *id*. at PageID# 254, 256, and "important for the Board to know this information," *id*. at PageID# 262, were ignored by Defendant-BOE, and his claim that the Carey campaign, the Ohio Republican Party, or someone else connected to them was likely involved, *see id*. at PageID# 255, 257, 263, were dismissed out-of-hand. The County Prosecutor concluded further attempted inquiries by stating that "the Board has already indicated they are not going to entertain any further questions regarding the issue of payment for lawyers' services and the representation." *Id*. at PageID# 263.

These facts support the inference that either Defendant-Freedhoff or Defendant-Preisse, or both, knew that an undisclosed client was behind the protest, and that this undisclosed client likely had ties to the Carey campaign, the Ohio Republican Party, or the Franklin County Republican Party. Still, neither inquired. Far from it, they and Defendant-BOE affirmatively discouraged and effectively terminated further inquiry.

Defendant-Freedhoff questioned Plaintiff-Ronan extensively during the hearing about his past political positions. Am. Com., ECF No. 71 at PageID# 1592-93, ¶¶ 14, 15. Defendant-Freedhoff stated that she found Plaintiff-Ronan's political positions to be incompatible with the

principles of the Republican party. *Id.*, ¶ 15. She ignored Plaintiff-Ronan's evidence demonstrating that (1) the vast majority of his political positions aligned with those of the Republican Party, *see* BOE Record, ECF No. 26-1 at PageID# 350-51; (2) he had run in Republican primaries in the past; (3) he presently identified with the Republican Party, Am. Comp., ECF No. 71 at PageID 1592, ¶¶ 12, 13; and (4) no longer considered himself a Democrat. *Id.*

Defendant-BOE tied 2 to 2 over whether to deny Schare's protest. *Id.* at PageID# 1594, ¶ 21. Defendant-Preisse and Defendant-Freedhoff both voted against Plaintiff-Ronan, *id.* at PageID# 1594, ¶25, seeking to remove him from the ballot, while the two Democratic members of the BOE, Defendant-Shumaker and Defendant-Sexton, voted to deny the protest and keep him on the ballot. *Id.*, ¶ 26.

Because the motion tied 2 to 2, the protest was referred to Defendant-LaRose under O.R.C. § 3501.11(X), which authorizes the Secretary of State to cast a vote breaking ties. *Id.* at PageID# 1594-95, ¶ 27. LaRose was notified by Plaintiff-Ronan on March 10, 2026 that the Ohio Republican Party had been identified by Schare's lawyers (after the BOE hearing) as the real party in interest and moved LaRose to disqualify Defendant-Freedhoff and remand the matter back to the BOE for further proceedings. *Id.* at PageID# 1595, ¶ 30. Defendant-LaRose on March 19, 2026, just one day before the March 20, 2026 deadline for finalizing overseas ballots in Ohio, rejected Plaintiffs' motion to disqualify Defendant-Freedhoff and instead voted to remove Plaintiff-Ronan from Ohio's primary ballot. *Id.* at PageID# 1596, ¶ 30.

To remove Plaintiff-Ronan from the ballot, Defendant-LaRose, Defendant-Preisse, and Defendant-Freedhoff, who are all final policymaking authorities under Ohio law, *id.* at PageID# 1598, ¶49, created an administratively enforceable political "good faith" requirement, *id.* at PageID# 1603, ¶ 69, something this Court and the Sixth Circuit expressly rejected in *Jolivette v. Husted*, 886 F. Supp. 2d 820, 835 (S.D. Ohio), *aff'd*, 694 F.3d 760 (6th Cir. 2012) ("there is no

requirement that the candidate make the change in good faith, unlike the rule that applies to a candidate who disaffiliates from a party"). Am. Com., ECF No. 71 at PageID# 1600, ¶ 59. Their creation of this administratively enforceable political good faith requirement for primary candidates in Ohio is unprecedented, with no judicial holding or other authority supporting it. *Id.* at PageID# 1605, ¶ 75.

Plaintiff-Ronan's removal from the ballot caused him and Plaintiff-Cordero constitutionally-based injuries-in-fact. *Id.* at PageID# 1596, ¶¶ 35, 36; *id.* at PageID# 1606, ¶¶ 83, 85-88. These injuries were caused not only by Defendants' violation of the First Amendment and federal Elections Clause, but also Defendant-BOE's violation of the Fourteenth Amendment's Due Process Clause. *Id.* Plaintiffs' injuries can be redressed by a favorable decision entered by this Court within the meaning of Article III of the United States Constitution. *Id.* But for Defendant-BOE's violations of the Due Process Clause, Plaintiff-Ronan would have officially appeared on Ohio's May 5, 2026 primary ballot. *Id.* at PageID# 1598, ¶¶ 45, 46.

Notwithstanding that the primary election has now concluded, Plaintiffs' complaint remains alive under the capable of repetition yet evading review exception. *Id.* at PageID# 1598, ¶ 48. Plaintiff-Ronan in his verified Amended Complaint asserts that he "intends to run in Ohio Republican Party congressional primaries in Ohio and in Franklin County in 2028 and in the future," *id.* at PageID# 1597, ¶ 37, and Plaintiff-Cordero states that she intends to vote for him. *Id.*, ¶ 39. Plaintiff-Ronan "intends to repeat the same political and ideological messages in his 2028 Ohio Republican Party congressional campaign and in the future when he runs in Ohio Republican Party congressional primaries in Ohio and in Franklin County." *Id.* ¶ 38. Plaintiff-Ronan has been branded by Defendants as a Democrat illegally seeking to run in Republican primaries, *id.* ¶ 40, and there is a substantial risk he will be protected again before the Franklin County BOE for this same reason.

In addition to Plaintiff-Ronan's credible risk of once again being protested and appearing before members of the Franklin County BOE, he is likely to appear before Republican members of Defendant-BOE who have potential conflicts of interest. Plaintiffs' challenge is an official capacity action and thus is not limited to any particular BOE members. It applies to whomever is serving on the BOE. Defendant-BOE's position, meanwhile, is that its members need not be politically unbiased when making decisions to remove candidates from ballots, can constitutionally contribute to the campaigns of candidates running against those they remove, can constitutionally serve on party committees with those individuals who are bringing protests, and can even constitutionally serve as high-ranking officials within the political parties that bring protests (secretly or not).

Defendant-BOE's legal position, which is the equivalent of Ohio law since Defendant-BOE members are being sued as final authorities acting in their official capacities, sufficiently ensures that protested candidates in Franklin County will risk facing adjudicators sitting as members of Defendant-BOE who are politically biased against them. Because Plaintiff-Ronan's Amended Complaint states that he intends to run again in Franklin County as a Republican, and is ready and able to do so, *id.* at PageID# 1598, ¶ 47, he too risks appearing in a protest hearing adjudicated by politically biased decisionmakers. His case is thus capable of repetition yet evading review.

Plaintiffs have also alleged a plausible pre-enforcement action against Defendant-BOE in their Amended Complaint. Plaintiff-Ronan intends to run again and "is ready, able and qualified to run in Ohio Republican Party congressional primaries in Ohio, including those in Franklin County, in 2028 and in the future." *Id.* at PageID# 1598, ¶ 47. Plaintiff-Cordero not only intends to vote for him but she is also "ready, able and qualified to vote for Plaintiff-Ronan in Ohio

Republican Party congressional primaries in Ohio, including those in Franklin County, in 2028 and in the future." *Id.*

Plaintiff-Ronan "suffers a substantial risk that because of Defendants' past, present and future actions he will be removed from Ohio Republican Party primary ballots in Ohio and Franklin County when he runs in those primaries in 2028 and in the future." *Id.* at PageID# 1597, ¶ 41. "Plaintiff-Ronan [also] suffers a substantial risk of future (albeit unconstitutional) criminal election-falsification prosecution because of Defendants' past, present and future actions." *Id.* ¶ 42. These past, present and future actions include the unconstitutional political bias that Ronan faced at the hands of Defendant-BOE this past election cycle. The "substantial" risks that Plaintiffs face are "caused by Defendants' past, present and future actions and can be redressed by a favorable decision of this Court within the meaning of Article III of the United States Constitution." *Id.* ¶ 43. Plaintiffs thus have Article III standing in this pre-enforcement action.

**Legal Standards**

Facial jurisdictional attacks under Rule 12(b)(1), which is the challenge Defendant-BOE makes here,[2] assume the truth of the plaintiff's allegations in the well-pleaded complaint. *See*, *e.g.*, *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). The same is true for all merits-based Rule 12(b)(6) motions. *See*, *e.g.*, *VCST Int'l B.V. v. Borgwarner Noblesville*, 142 F.4th 393, 399 (6th Cir. 2025). Consequently, for both the jurisdictional and merits-based motions under Rule 12(b), dismissal may be ordered "only if [the] complaint does not state a 'plausible' claim." *Id.*;

[2] Defendant-BOE does not claim that it is making a factual attack on jurisdiction and does not submit evidence beyond that found in the pleadings and administrative record. It is thus a facial attack. *See Williams v. Hooah Sec. Services*, 729 F.S.2d 1011, 1012 (W.D. Tenn. 2010) ("Defendants' Motion presents a 'factual attack' on the Court's subject matter jurisdiction *since it relies on the affidavit of Defendant Ric Bailey*, the owner of Hooah") (emphasis added).

*see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (same).

"When evaluating a complaint's plausibility, courts must accept its factual allegations as true and draw 'all reasonable inferences in' the plaintiff's favor. They also must restrict their review to the 'four corners' of the complaint and a limited set of other materials, such as documents that the complaint refers to and depends on." *Noblesville*, 142 F.4th at 399. Further, in deciding facial Rule 12(b)(1) motions and Rule 12(b)(6) motions "[c]ourts may also consider public records, matters of which a court may take judicial notice," *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), including formal, publicly available administrative records. *See*, *e.g*., *Resch v. Baydoun*, 2016 WL 8703616, *2 (E.D. Mich. 2016); *Ruffin v. Frisch's Restaurant*, 2009 WL 3055424, *3 n.2 (S.D. Ohio 2009).

## Argument

Plaintiffs have stated factually and legally plausible § 1983 claims against Defendant-BOE under the Due Process Clause. These claims have not been rendered moot by the conclusion of the primary election, since Plaintiffs have plausibly alleged that they fall into the capable of repetition yet evading review exception. Plaintiffs have also plausibly pleaded a proper pre-enforcement action against Defendant-BOE under § 1983 and the Due Process Clause.

### I. Plaintiffs' Due Process Claim Is Well-Pleaded.

Defendant-BOE incorrectly asserts that Plaintiffs' Due Process claim necessarily fails under the Due Process Clause. Contrary to Defendant-BOE's claim that "[c]andidates generally have no protected property or liberty interest in an elected position," BOE Mot., ECF No. 74 at

PageID# 1703 (citing *Snowden v. Hughes*, 321 U.S. 1 (1944)), more modern cases, including the Supreme Court's decision in *Bost v. Illinois State Elections Board*, 146 S. Ct. 513 (2026), establish that candidates possess protected interests and are entitled to fair procedures. In *Bost*, the Supreme Court ruled that "candidates also have an interest in a fair process. Candidates are not common competitors in the economic marketplace. They seek to represent the people." *Id*. at 519. Consequently, "the long-shot and shoo-in alike would suffer harm if a State chose to conduct its election by, say, flipping a coin." *Id*. at 519-20. *Bost*'s holding that candidates have "an interest in a fair process" flatly contradicts the reasoning and result in *Snowden*.

Even before *Bost*, The Sixth Circuit repeatedly assumed that candidates and ballot measures are entitled to procedural Due Process protections. *See Miller v. Lorain County Board of Elections*, 141 F.3d 252, 260 & n.18 (6th Cir. 1998); *Schmitt v. LaRose*, 933 F.3d 628 (6th Cir. 2019). Courts from sister Circuits, meanwhile, have either assumed *Snowden* is no longer good law or have expressly ruled that it does not survive more recent precedents, in particular *Board of Regents v. Roth*, 408 U.S. 564 (1972) (holding that any "legitimate claim of entitlement" deserves procedural Due Process protection). *See*, *e.g*., *Duke v. Massey*, 87 F.3d 1226, 1232 (11th Cir. 1996) ("Duke also has a procedural due process right to have his petition to be placed on the ballot to be free from a committee's 'unfettered discretion' in rendering a decision."); *Abrahamson v. Neitzel*, 120 F. Supp.3d 905, 920-21 (W.D. Wis. 2015) ("*Snowden's* statement is jarring to contemporary sensibilities"); *Rivera-Powell v. New York City Board of Elections*, 470 F.3d 458, 464-65 (2d Cir. 2006); *Berg v. Egan*, 979 F. Supp. 330 (E.D. Pa. 1997); *Leroy v. New York City Board of Education*, 793 F. Supp. 2d 533 (E.D.N.Y 2011).

Even if *Snowden* survived these modern decisions, the dicta on which Defendant-BOE relies applies only to candidates for *state*—not federal—office. *See Snowden*, 321 U.S. at 7 ("More than forty years ago this Court determined that an unlawful denial by state action of *a right to state*

*political office* is not a denial of a right of property or of liberty secured by the due process clause.") (emphasis added). The principles of comity and federalism that supported the Court's reasoning in *Snowden* therefore do not apply in this case, which involves a candidate for federal office. Courts accordingly have declined to extend *Snowden's* reasoning to candidates for *federal* office. *See, e.g.*, *Biener v. Calio*, 361 F.3d 206, 216 (3d Cir. 2004) ("We do not decide here whether the *Snowden* holding would extend to *federal* elective offices") (emphasis original).

Defendant-BOE further errs in claiming that Plaintiffs' allegations do not rise to the level of a plausible Due Process violation. Contrary to Defendant-BOE's argument, subjective bias, direct control and immediate financial interests are not needed to demonstrate debilitating conflicts of interest under the Due Process Clause. Instead, the constitutional question is whether "'the *probability* of actual bias on the part of the judge or decisionmaker" rises "too high to be constitutionally tolerable.'" *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868, 872 (2009) (citation omitted and emphasis added). This is an objective test, as made clear in *Caperton*, 556 U.S. at 883, which expressly disavowed any need to uncover subjective bias: "The difficulties of inquiring into actual bias, and the fact that the inquiry is often a private one, simply underscore the need for objective rules." There is thus no need for "proof of actual bias," *id*. (citations omitted), and the question is simply whether "'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Id*. at 883-84. (citation omitted). In short, hearing officers must maintain some semblance of impartiality because "[i]t is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'" *Id*. at 876 (citation omitted).

Courts have thus applied *Caperton* to state agencies that act in quasi-adjudicative capacities, which is exactly how Defendant-BOE acted when it heard the protest against Plaintiff-

Ronan. *See*, *e.g.*, *Holborn v. Deuel County Board of Adjustment*, 955 S.W.2d 363, 376 (S.D. 2021) ("the due process standard described in Caperton applies to judicial officers as well as those who are making quasi-judicial administrative decisions"); *No Laporte Gravel Corp. v. Board of County Commissioners*, 507 P.3d 1053, 1064 (Colo. Ct. App. 2022) (same). Defendant-BOE cites no authority to the contrary, and Plaintiffs have found none.

Here, Plaintiffs plausibly allege that Defendant-Freedhoff and Defendant-Preisse fail to measure up to the demands of *Caperton*'s objective Due Process test. That neither Defendant-Preisse nor Defendant-Freedhoff were employed by Carey's campaign, did not direct it, and did not receive bribes from it, as Defendant-BOE suggests, see BOE Mot., ECF No. 74 at PageID# 1704, does not mean that their ruling in his favor satisfied Due Process. The question turns on all the objective risks of bias, which in this case are numerous.

Plaintiffs' Amended Complaint, as outlined above, sufficiently and plausibly alleges facts that taken together required Defendant-Freedhoff's disqualification under the Due Process Clause. The Amended Complaint also adds a new allegation that Defendant-Preisse donated $1000 to the 2026 congressional campaign of Plaintiff-Ronan's Republican competitor, Mike Carey. *See* Am. Com. ECR No. 71 at PageID # 1593-94, ¶ 20. Defendant-Preisse, too, was therefore under a Due Process Clause duty to disqualify himself. Both claims are well-pleaded and plausible.

The basic facts supporting Plaintiffs' Due Process claim, as alleged in the Amended Complaint, supported by testimony submitted during the administrative hearing, and otherwise stipulated to, can be summarized as follows:

(1) Defendant-Freedhoff chaired the Central Committee of the Franklin County Republican Party (FCRP), *see* Am. Com., ECF No. 71 at PageID# 1593, ¶ 17;

(2) FCRP on August 26, 2025 contributed $500 to Carey's 2026 congressional campaign, *see id*. at PageID# 1593, ¶ 18;

(3) Defendant-Preisse donated $1000 to the 2026 congressional campaign of Plaintiff-Ronan's Republican competitor, Mike Carey, *see id*. at PageID # 1593-94, ¶ 20;

(4) Mike Carey's campaign (Plaintiff-Ronan's lone competitor in the Republican primary) on December 31, 2025 contributed to FCRP, which Defendant-Freedhoff chaired, over $10,000, *see id*. at PageID# 1593, ¶ 18;

(5) Defendant-Freedhoff personally contributed $500 to Carey's 2024 campaign for Ohio's 15th Congressional district, the exact same seat he is running for in 2026 as the incumbent, *see id*. at PageID# 1593, ¶ 19;

(6) FCRP formally endorsed Mike Carey before the 2026 Republican primary election and before Plaintiff-Ronan's hearing before the Franklin County BOE, *see id*. at PageID# 1594, ¶ 21;

(7) the named protestor, Schare, served on the same FCRP Central Committee with Defendant-Freedhoff, *see* BOE Record, ECF No. 26-1 at PageID# 253; Stipulations, ECF No. 30 at PageID# 1233, ¶ 3;

(8) Defendant-Freedhoff vice-chaired the Ohio Republican Party, *see* Stipulations, Doc. 30 at PageID# 1234, ¶ 8;

(9) the Ohio Republican Party financed and directed Schare's protest against Plaintiff-Ronan, *see* Am. Com., ECF No. 71 at PageID# 1595, ¶¶ 28, 29; and

(10) Mike Carey's campaign caused the Ohio Republican Party to protest Plaintiff-Ronan; *see id*.

Defendant-BOE's claim that Defendant-Freedhoff and Defendant-Preisse cannot be held accountable for the Carey campaign and Ohio Republican Party's involvement in the protest because they were "not told about that arrangement at or before the hearing," BOE Mot., ECF No. 74 at PageID# 1705, is not dispositive of Plaintiffs' Due Process claim. Putting to one side the credibility of Defendant-Freedhoff's claimed lack of knowledge,[3] which is a "fact-sensitive question" not fit for Rule 12(b) disposition, *see*, *e.g.*, Bledsoe v. Emery Worldwide Airlines, 258 F. Supp. 2d 780, 787 (S.D. Ohio 2003) (denying rule 12(b)(6) motion because of "fact-sensitive question"), the Due Process Clause places on decisionmakers a duty to inquire into potential conflicts of interest. *See Wood v. Georgia*, 450 U.S. 261, 272 (1981) (stating that when "the *possibility* of a conflict of interest was sufficiently apparent at the time of the … hearing [that possibility] impose[s] upon the court a duty to inquire further"). At bare minimum Defendant-Freedhoff and Defendant-Preisse had a duty to inquire who the real parties in interest were at the administrative hearing when Plaintiffs' questioning of Schare made it "sufficiently apparent" that he was not alone in filing the protest. Had they inquired, or allowed Plaintiff to continue his questioning, Defendant-Preisse and Defendant-Freedhoff would have discovered that Carey and the Ohio Republican Party were involved. They would have had no choice to recuse themselves, just as judges would have to recuse themselves under similar circumstances.

Rather than inquire, Defendant-BOE affirmatively avoided learning of these facts even though Plaintiff-Ronan attempted to uncover them at the hearing. Over Schare's lawyers' repeated

[3] Plaintiffs did <u>not</u> stipulate that Defendant-Freedhoff lacked knowledge of ORP's involvement. Plaintiffs merely stipulated that Freedhoff "*testified* that she had no knowledge of the Ohio Republican Party's paying Schare's lawyers for their actions in handling prior to the March 6, 2026 protest." Stipulations, ECF No. 30 at PageID# 1234 (emphasis added). The facts as alleged, including Defendant-Freedhoff's position as vice chair of the Ohio Republican Party—its second-highest ranking officer—support an inference that she was aware of the Ohio Republican Party's involvement. *See Noblesville*, 142 F.4th at 399.

objections, BOE Trans., ECF No. 26-1 at PageID# 256, 260, 261, 262, Plaintiff-Ronan elicited from Schare testimony establishing that he did not sign the protest, did not write it, did not deliver it, *id*. at PageID# 250, had never seen it, *id*. at 253, and was not responsible for paying his lawyers. *Id*. at PageID# 256-62. *See also* Am. Com., ECF No. 71 at PageID# 1591, ¶¶ 8, 9. In response to Plaintiff-Ronan's additional attempt to specifically uncover whether the Carey campaign, the Franklin County Republican Party or the Ohio Republican Party was involved or was paying Schare's lawyers, *see*, *e.g*., BOE Trans., ECF No. 26-1 at PageID# 255-56, after Schare's lawyers repeatedly objected, *id*. at PageID# 256, Defendant-Preisse interjected that "the Board is not interested in the payment process," *id*. at PageID# 260, and Defendant-Freedhoff stated "Let's move on." *Id*. at PageID# 261. Plaintiff-Ronan's lawyer's pleading that "this is extremely important to [Ronan's] constitutional defenses," *id*. at PageID# 20, and "[i]t is important for the Board to know this information," *id*. at PageID# 262, was disregarded. Plaintiffs' questions made plain there was a risk that the Carey campaign, the Ohio Republican Party, or someone else was paying Schare's lawyers and was the real party in interest, *see id*. at PageID# 255, 257, 263, but Defendant-BOE shut down the questioning and remained willfully blind. The County Prosecutor summed it up when she stated that "the Board has already indicated they are not going to entertain any further questions regarding the issue of payment for lawyers' services and the representation." *Id*. at PageID# 263.

Had Defendant-Freedhoff and Defendant-Preisse been judges, their allowing the proceedings to go forward with a "sufficiently apparent" risk of an undisclosed true party in interest would have violated their duty under *Wood v. Georgia*, 450 U.S. at 272, to inquire of potential conflicts of interest. Federal Rule of Civil Procedure 17(a) expressly seeks to avoid this problem by stating that "[a]n action must be prosecuted in the name of the real party in interest," and courts commonly allow parties to discover the identities of those who finance litigation. *See*,

*e.g.*, *Libertarian Party of Ohio v. Husted*, 2014 WL 3928293 (S.D. Ohio 2014). Secret clients are disfavored in judicial proceedings in no small part because of their potential for causing conflicts of interest. *See IA Labs CA v. Nintendo*, 946 F. Supp.2d 429, 432 n.2 (D. Md. 2013) ("Third-party litigation financing is highly controversial and for some raises core questions about legal ethics. *See* Maya Steinitz, The Litigation Finance Contract, 54 Wm. & Mary L. Rev. 455, 484 (2012)"). Litigants need to know who their adversaries are and judges need to know who is appearing before them. Secrecy is not an option.

Defendant-Freedhoff and Defendant-Preisse were acting as administrative judges here. As such, they were bound by the same Due Process restrictions that *Caperton* applies to judges. Schare's testimony at the protest hearing established that he was not the real party in interest behind the protest. He was not paying his lawyers, did not know who was, and had nothing to do with drawing up the protest. Defendant-Freedhoff and Defendant-Preisse knew this. It was made part of the administrative record. Warning bells were ringing that Mike Carey's campaign and the Ohio Republican Party were likely involved. The participation of either would have required a judge under similar circumstances to recuse herself under *Caperton*. A judge, moreover, would have inquired. Administrative judges are no different under the Due Process Clause.

Rather than direct answers from Schare and his attorneys, Defendant-Freedhoff and Defendant-Preisse quit the questioning. They either already knew that the Ohio Republican Party and/or Carey campaign were involved and wanted to keep it secret or wished to remain willfully blind to the possibility. Whichever is true, their action and inaction in this matter violate the Supreme Court's Due Process holding in *Caperton*.

## II. Plaintiffs' Due Process Claim Is Not Moot.

### A. Plaintiffs Pre-Enforcement Due Process Claim is Well-Pleaded and Plausible.

Plaintiffs have established pre-enforcement standing under Article III. As explained in their Response to Defendant-LaRose's motion to dismiss, Plaintiffs have alleged that Plaintiff-Ronan intends to run again in 2028 and beyond in Republican primaries held in Franklin County and intends to convey the exact same message. There is a substantial and credible risk that he will be protested again and appear before the Franklin County Board of Elections again. According to Defendant-BOE, the Franklin County Board of Elections' members are allowed to be politically biased because either the Due Process Clause does not apply to them or it applies with minimal force. Either way, a substantial risk exists that politically partial BOE members will again step in to remove politically nettlesome candidates, thus casting a chilling effect on candidates' (including Plaintiff-Ronan's) rights.

The Supreme Court long ago established that plaintiffs may establish standing based on "the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights." *Laird v. Tatum*, 408 U.S. 1, 11 (1972); *see also Chiles v. Salazar*, 607 U.S. 627, 637 n.* (2026) (holding that "chilling effect" supports pre-enforcement standing). Plaintiffs satisfy that standard here. The Amended Complaint is replete with detailed allegations that Plaintiff-Ronan intends to run for federal office in Ohio again as a Republican in future elections, including in Franklin County, and that he intends to engage in precisely the same political speech that has already subjected him to removal from the ballot by Defendant-BOE. *See* Am. Com., ECF No. 71 at PageID# 1597-98, ¶¶ 37-48. Plaintiff-Cordero alleges that she intends to vote for Plaintiff-Ronan in future elections. *Id*. at PageID# 1597, ¶ 39.

Plaintiff-Ronan risks appearing again before Defendant-BOE when he challenges a Republican in a Republican primary in the future, and that BOE has repeatedly stated in this official-capacity case that it is not bound by Due Process and even if it were its members could still: (1) financially contribute to protested candidates (or their competitors as here); (2) endorse

protested candidates (or their competitors as here); (3) serve as high ranking officers (such as Chair and vice-Chair) in political organizations that protest candidates (secretly as here or openly) appearing before them (like Plaintiff-Ronan here); (4) while accepting money from those protested candidates' competitors (like Mike Carey as here); and (5) be allowed to remain willfully blind (as here) and under no constitutional obligation to inquire or disclose any of this—even if it is made "sufficiently apparent" to them before or at the hearing within the meaning of *Wood v. Georgia*, 450 U.S. at 272.

By Defendant-BOE's own words, any of its board members can constitutionally do what Plaintiffs alleged Defendant-Freedhoff and Defendant-Preisse have done here, and none of them would be disqualified by the Due Process Clause. Indeed, Defendant-BOE admits that its members are extremely likely to engage in activities like these in the future, since "few members of a bipartisan election board could hear a protest involving a contested primary" if these conflicts were not tolerated. BOE Mot., ECF No. 74 at PageID# 1707. Those facts and Plaintiffs' plausible pleadings are sufficient to establish Plaintiffs' standing to assert their pre-enforcement Due Process claim.

Plaintiffs allege here that Ronan "intends to repeat the same political and ideological messages in his 2028 Ohio Republican Party campaign … in Franklin County." Am. Comp., ECF No. 57-1 at PageID# 1439, ¶ 38. Plaintiff-Ronan will say the same things in 2028 that he said in 2026 and before. He accordingly risks being removed from the ballot again by BOE members who under Ohio law and the Constitution, Defendant-BOE claims, are allowed to be politically biased. That Ronan's speech and the political biases of Franklin County BOE members in 2028 and beyond might not precisely mirror what happened in 2026 is of no constitutional moment. As the

Supreme Court stated in *Federal Election Commission v. Wisconsin Right to Life*, 551 U.S. 449, 464 (2007), "[h]istory repeats itself, but not at the level of specificity demanded by the FEC."

### B. Plaintiffs' Properly Plead that Their Due Process Claim Is Capable of Repetition Yet Evading Review.

As Plaintiffs argue in their LaRose Response, Plaintiffs properly plead that all their claims, including their Due Process claim against Defendant-BOE, fall comfortably within the exception to mootness for controversies that are capable of repetition yet evading review. *See* Am. Com., ECF No. 71 at PageID# 1598, ¶ 48. "The exception applies where (1) the challenged action is in duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Wisconsin Right to Life*, 551 U.S. at 462 (citation and quotation marks omitted). Both are satisfied here.

Defendant-BOE concedes that the first prong is satisfied, *see* BOE Mot., ECF No. 74 at PageID# 1699, while challenging only the second. But it is wrong about the second. As a threshold matter, the Supreme Court has recognized that the second prong is relaxed in the context of election cases. *See Wisconsin Right to Life*, 551 U.S. at 464 ("Requiring repetition of every 'legally relevant' characteristic of an as-applied challenge—down to the last detail—would … mak[e] this exception unavailable for virtually all as-applied challenges."). Defendant-BOE's effort to portray this case as arising from "a unique factual situation" thus fails, BOE Mot., ECF No. 74 at PageID# 1699, as this case is materially indistinguishable from *Wisconsin Right to Life.*

Like the plaintiff in *Wisconsin Right to Life*, Plaintiffs credibly allege that they will engage in "materially similar" conduct in 2028 and future elections, and like the defendant agency in that case, "there is no reason to believe" Defendant-BOE will refrain from enforcing its newfound "good faith" requirement against Plaintiff-Ronan when he does. *Wisconsin Right to Life*, 551 U.S.

at 464. "Under the circumstances … there exists a reasonable expectation that the same controversy involving the same party will recur." Indeed, it is a near certainty.

Defendant-BOE's effort to avoid that conclusion by insisting that this case necessarily depends upon "a specific sequence" of facts fails for the same reason the Court rejected it in *Wisconsin Right to Life*: the capable of repetition yet evading review exception does not require that level of specificity. *See id*. Defendant-BOE's invocation of a "speculative chain of independent decisions" fares no better. BOE Mot., ECF No. 74 at PageID# 1700. Plaintiffs need not prove that every step in a causal chain is likely to recur. They only need allege that they are likely to engage in the same conduct for which Defendant-BOE previously removed Plaintiff-Ronan from the ballot. *Wisconsin Right to Life*, 551 U.S. at 464. Not only have Plaintiffs made that allegation, but they have sworn to it.

Plaintiff-Ronan risks being removed from the ballot again by BOE members who under Ohio law and the Due Process Clause are, according to Defendant-BOE, allowed to be specifically biased in favor of a competing candidate. Defendant-BOE's position is that its members can be as biased as they want to be. Whether that position is correct and constitutionally proper presents a question that is capable of repetition yet evading review. No unique facts can change that.[4]

**Conclusion**

Plaintiffs respectfully request that Defendant-BOE's motion be DENIED.

---

[4] Defendant-BOE incorrectly claims that Defendant-Sexton and Defendant-Shumaker are entitled to dismissal for lack of claims against them. Defendant-Shumaker and Defendant-Sexton are joined in this action because this is an official capacity action under *Ex parte Young*, 209 U.S. 123 (1908), against the office of the BOE. In order for Plaintiffs to assert jurisdiction over the BOE and obtain full relief from the BOE all of its members must be joined as necessary parties under Federal Rule of Civil Procedure 19(a)(1). *See, e.g.*, *Donald J. Trump for President v. Bookvar*, 493 F. Supp.3d 331, 374-75 (W.D. Pa. 2020) (rejecting claim that boards of elections that had been joined but not specifically accused of constitutional violations should be dismissed).

Respectfully submitted,

/s/*Mark R. Brown*
Mark R. Brown (81941)
*Counsel of Record*
Newton D. Baker/Baker & Hostetler Chair
Capital University*
303 East Broad Street
Columbus, Ohio 43215
614.236.6590
mbrown@law.capital.edu

Oliver Hall
Legal Counsel
Center for Competitive Democracy
P.O. Box 21090
Washington, DC 20009
202.248.9294
oliverhall@competitivedemocracy.org

*Counsel for Plaintiffs*

*For purpose of identification only

**Certificate of Service**

I hereby certify that on November 18, 2026, I filed the foregoing document using the Court's CM/ECF system, which will effect service upon all counsel of record.

/s/Mark R. Brown
Mark R. Brown